**Karen O'Kasey,** OSB No. 870696
E-mail:  kok@hartwagner.com
**Ruth A. Casby**, OSB No. 944225
E-mail:  rac@hartwgner.com
**Zachariah H. Allen**, OSB No. 122729
E-mail:  zah@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

<u>Of Attorneys for Defendant Washington County</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY, | No. 3:24-cv-00235-SB |
| Plaintiffs, | **DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS** |
| v. | **ORAL ARGUMENT REQUESTED** |
| WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon, | |
| Defendants. | |

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## TABLE OF CONTENTS

MOTIONS ...................................................................................................................... 1

LEGAL MEMORANDUM ............................................................................................ 1

I.     INTRODUCTION ............................................................................................... 1

II.    LEGAL STANDARD ......................................................................................... 3

   A.   Motion to Dismiss ...................................................................................... 3

   B.   Motion to Strike ......................................................................................... 3

   C.   Motion to Make More Definite and Certain ............................................. 5

III.   BACKGROUND ................................................................................................ 5

   A.   Defendants' Integrated 911 Emergency Response System ........................ 5

   B.   Alleged Incidents of Discrimination ......................................................... 8

      1.   Plaintiff Joshua Wesley ...................................................................... 8

      2.   Plaintiff DRO's Jane Doe ................................................................. 10

      3.   Plaintiff DRO's John Doe ................................................................. 10

      4.   Plaintiff DRO's Mary Doe ................................................................ 10

   C.   Alleged Statutory Violations .................................................................... 11

LEGAL ARGUMENT .................................................................................................. 12

I.     MOTION TO DISMISS .................................................................................. 12

   A.   Statutory Standards .................................................................................. 12

   B.   Plaintiffs Do Not Allege Actionable Disability Discrimination Claims ...... 15

      1.   Plaintiffs Do Not Allege Discrimination on the Basis of Disability ........ 16

      2.   Inadequate Mental Health Care is Not Actionable Discrimination ......... 20

      3.   Plaintiffs Are Not Denied Meaningful Access to Emergency Services ....... 21

      4.   The County is Not Required to Provide New Services or Programs ......... 23

II.    ALTERNATIVE MOTIONS TO STRIKE AND MAKE MORE DEFINITE AND CERTAIN ...................................................................................................... 24

   A.   Immaterial, Impertinent, and Inflammatory Allegations Should be Stricken ...... 24

      1.   "Introduction" Allegations ................................................................ 24

      2.   Allegations under the heading - "Mental Health Experts Agree That Police Should Not Respond to Typical Mental Health Emergencies .......................... 25

      3.   Allegations under heading - "Non-Police Mobile Crisis Services Are the Appropriate Response to Mental Health Emergencies in the County." ................... 26

   B.   Vague Allegations Should be Clarified ................................................... 26

CONCLUSION .............................................................................................................. 27

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## **TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Choate.*, 469 U.S. 287, 303, 105 S. Ct. 712 (1985) .............................. 14, 15, 18, 22

*Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267-68 (D.C. Cir. 2008) ........................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................................... 3, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ....................................................... 3, 22

*Bird v. Lewis and Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002) .................................... 15, 22

*Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ......................................................... 14

*Buchanan v. Maine*, 469 F.3d 158. 174-75 (1st Cir. 2006) ................................................... 21

*Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)…………………………14

*City of Portland v. Iheanacho*, No. 3:17-CV-0401-AC, 2018 WL 1426564, at *3
  (D. Or. Mar. 22, 2018) ................................................................................................ 4

*Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014)...........................................15

*Doe v. Pfrommer*, 148 F.3d 73, 82 (2nd Cir.1998)..............................................................18

*Does 1-5 v. Chandler*, 83 F.3d 1150, 1151-52, 1153, 1155 (9th Cir. 1996)..................... 18, 19, 20

*Estate of Osborn-Vincent v. Ameriprise Fin., Inc.*, No. 3:16-CV-02305-YY,
  2019 WL 764029, at *2 (D. Or. Jan. 3, 2019) ............................................................... 5

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527, 1528 (9th Cir. 1993) .................................... 4, 24

*Figueira ex rel. Castillo v. Cnty. of Sutter*, No. 2:15–cv–00500–KJM–AC,
  2015 WL 6449151, at *8–9 (E.D. Cal. Oct. 23, 2015) .................................................... 14, 21

*Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) ........................................................ 3

*Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019) ..................................... 3

*Gonzalez v. Planned Parenthood of L.A.,* 759 F.3d 1112, 1115 (9th Cir. 2014)............................ 3

*Gordy v. Agamyan*, No. CV 18-2590-GW (JPR), 2018 WL 3129779, at *4
  (C.D. Cal. June 22, 2018) ............................................................................................. 21

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099, 1102
  (9th Cir. 2013).............................................................................................................. 14, 22

*Kirola v. City and Cnty. of San Francisco*, 860 F.3d, 1164, 1182, 1183 (9th Cir. 2017)............ 22

*Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012)............................................... 20

*Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) ........................ 22

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).............................................. 12, 13

*Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) ............................................... 22

*Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) .................................................... 14

*McGowan v. Washington Dept. of Labor and Industries*,
  213 Fed. App'x 556, 557 (9th Cir. 2006) ...................................................................... 18

*Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019)............................................... 13

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999).......................................... 23

*Olson v. Allen*, No. 3:18-cv-001208-SB, 2019 WL 1232834, *4
  (D. Or. March 15, 2019) ............................................................................................... 23

*Polk v. Legal Recovery Law Offices*, 291 F.R.D. 485, 489 (S.D. Cal. 2013)……………………..4

*Rodriguez v. City of New York*, 197 F.3d 611, 618 (2nd Cir. 1999) ........................................ 15

*Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996).................................... 17

*Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014) .................................... 13

*Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) ............................ 14, 21

*Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003)..................................................... 23

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

*Unigestion Holding, S.A. v. UPM Tech., Inc.*, 305 F. Supp. 3d 1134, 1140
(D. Or. 2018) ................................................................................................................ 4
*Updike v. Multnomah Cnty.,* 870 F.3d 939, 959 (9th Cir. 2017) ................................. 23
*Washington v. California Dep't of Corrections & Rehabilitation*, No. CV 19-169-VAP (KK),
2019 WL 1206487, at *3, 6 (C.D. Cal. March 14, 2019) ......................................... 21
*Weinreich v. Los Angeles County Metropolitan Transp. Authority*, 114 F.3d 976, 978, 979
(9th Cir.1997) ............................................................................................................ 16
*Weisbuch v. City of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) ................................. 3
*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) .................... 4
*Zukle v. Regents of Univ. of Calif.,* 166 F.3d 1041, 1045, n.11 (9th Cir. 1999) ........... 13

## Statutes

29 U.S.C. § 794 ................................................................................................................ 1
42 U.S.C. § 12131 ............................................................................................................ 1
ORS Chapter 190 ............................................................................................................. 5
ORS 426.228 ................................................................................................................ 9, 10
ORS 430.628 ..................................................................................................................... 5

## Other Authorities

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380
(3d. Ed.). ..................................................................................................................... 4

## Rules

F.R.C.P. 12(b)(6) ..................................................................................................... 1, 3, 20
F.R.C.P. 12(e) .................................................................................................................... 5
F.R.C.P. 12(f) ........................................................................................................ 1, 3, 4, 24
F.R.C.P. 8 .......................................................................................................................... 2
Local Rule 7-1 ................................................................................................................... 1
OAR 104-080-000 ........................................................................................................... 20

## Regulations

28 C.F.R. § 35.130(a), (b)(1) ......................................................................................... 16
28 C.F.R. § 35.130(b)(7) ........................................................................................... 15, 16
28 C.F.R. § 35.150 ......................................................................................................... 22

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## LR 7-1 CERTIFICATION

The undersigned counsel certifies that they have conferred with plaintiffs' counsel, and the court's ruling is required.

## MOTIONS

**Motion 1**:  Defendant Washington County moves to dismiss plaintiffs' Complaint for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

**Motions 2 and 3**:  In the alternative, Washington County moves to strike immaterial allegations from plaintiffs' Complaint pursuant to F.R.C.P. 12(f) and moves to make more definite and certain vague allegations against "defendants" that should plead the allegation specific to a defendant.

These motions are supported by the legal memorandum set forth below and the pleadings on file herein.

## LEGAL MEMORANDUM

## I.    INTRODUCTION

Plaintiffs Disability Rights Oregon ("DRO") and Joshua Wesley assert two claims for declaratory and permanent injunctive relief against Washington County and Washington County Consolidated Communications Agency (collectively "defendants") under Title II of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12131 and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 (together "the Acts"). Despite the lengthy complaint, plaintiffs' failure to accommodate claims rest on the single contention that defendants' 911 emergency response system discriminates against individuals experiencing mental health crises by dispatching law enforcement rather than mental health providers as first responders to mental health related emergencies.

Page 1 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Plaintiffs' disability discrimination claim is based on a comparison of services dispatched for physical health emergencies with those dispatched for mental health related emergencies. Plaintiffs do not allege unequal treatment or any difference in services provided to mentally disabled individuals as compared to non-disabled individuals. Rather, based on their faulty comparison of dissimilar types of emergencies, plaintiffs allege that individuals experiencing mental health crises are denied equal access to the emergency response system because they do not receive adequate and effective mental health treatment at the scene of the emergency. Plaintiffs seek to require Washington County to establish a new program that would dispatch mental health professionals as the only first responders to mental health related emergencies.

Plaintiffs' claims are not legally cognizable under either Act. The ADA and Rehabilitation Act do not provide a cause of action to challenge the adequacy of public programs or services being offered. Washington County is not required to create a *new* emergency response system to assist mentally disabled people with services that are not provided to other individuals.

Alternatively, Washington County moves the Court for an order striking immaterial allegations from the Complaint that violate F.R.C.P. 8's requirement of a plain and concise statement of the claims for relief. The Complaint contains unnecessary inflammatory allegations and extensive improper public policy arguments based on unauthenticated hearsay that are irrelevant to the statutory claims at issue.

Additionally, where the Complaint refers to "defendants" collectively in allegations that concern the "dispatch" of emergency services, over which the County has no control, Washington County moves the Court for an order requiring plaintiffs to plead the allegations specific to a defendant.

Page 2 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## II.    LEGAL STANDARD

### A.    Motion to Dismiss.

Under F.R.C.P. 12(b)(6), a motion to dismiss should be granted when the facts alleged fail to state a claim upon which relief can be granted.  This means that dismissal under Rule 12(b)(6) is required where a complaint lacks "a cognizable legal theory" or "sufficient facts alleged" to support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.,* 937 F.3d 1201, 1208 (9th Cir. 2019).

To survive dismissal for failure to state a claim, the complaint must plead sufficient facts, that when accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Legal conclusions need not be accepted, and pleading the elements of a cause of action, supported by mere conclusory statements, does not suffice.  *Iqbal*, 556 U.S. at 678.  The court need not accept as true allegations which are contradicted by documents referred to in the complaint.  *Gonzalez v. Planned Parenthood of L.A.,* 759 F.3d 1112, 1115 (9th Cir. 2014). Furthermore, a plaintiff pleads himself out of court if he pleads facts which establish he cannot prevail on his claim.  *Weisbuch v. City of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

Plaintiffs' Complaint should be dismissed because, as a matter of law, plaintiffs cannot plead facts sufficient to support a claim under either statute.  *See Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (leave to amend properly denied where the defects in the pleading cannot be cured).

### B.    Motion to Strike.

F.R.C.P. 12(f) authorizes the Court to "strike from a pleading * * * any * * * immaterial, impertinent, or scandalous matter."  The purpose of the rule is "to avoid the expenditure of time

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

and money that must arise from litigating spurious issues by dispensing with those issues prior to trial * * *." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Rule 12(f) is also designed to "reinforce the requirement in Rule 8(d) [originally Rule 8(e)] that pleadings be simple, concise, and direct." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d. Ed.).

Allegations are properly struck when they "have no possible relation or logical connection to the subject matter of the controversy" and may cause prejudice to one or more parties. *Id.* A motion to strike is proper if it makes the trial less complicated or the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration and that their presence will be prejudicial to the moving party. *City of Portland v. Iheanacho*, No. 3:17-CV-0401-AC, 2018 WL 1426564, at *3 (D. Or. Mar. 22, 2018).

An allegation is "immaterial" if it does not relate to the plaintiff's underlying claim for relief. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (*rev'd on other grounds*, 510 U.S. 517 (1994)) ("Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead."). An allegation is impertinent if it does not pertain to any harm alleged. *Id.* ("Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."). Impertinent (or immaterial) pleadings "are legally insufficient because they clearly lack merit 'under any set of facts the defendant might allege.'" *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 305 F. Supp. 3d 1134, 1140 (D. Or. 2018) (quoting *Polk v. Legal Recovery Law Offices*, 291 F.R.D. 485, 489 (S.D. Cal. 2013)).

An allegation is scandalous if it "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Estate of Osborn-Vincent v. Ameriprise Fin., Inc.*, No. 3:16-CV-02305-YY, 2019 WL 764029, at

Page 4 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

*2 (D. Or. Jan. 3, 2019) (quoting 2 MOORE'S FEDERAL PRACTICE § 12.37[3] (Bender 3d. ed.)).

C.    <u>**Motion to Make More Definite and Certain**</u>.

Under F.R.C.P. 12(e), the court may require a plaintiff to make a more definite statement of a pleading when the allegations are vague or ambiguous.

III.    **BACKGROUND**

A.    <u>**Defendants' Integrated 911 Emergency Response System**</u>.[1]

The Washington County Consolidated Communications Agency ("WCCCA" or the "Agency") operates the 911-emergency telecommunications dispatch center for Washington County (the "County") and other local jurisdictions.  (Comp., ¶83).  WCCCA is a separate entity from the County that was created by legislative design pursuant to Oregon Revised Statutes Chapter 190.  (*Id.* at ¶40).  WCCCA provides "public safety communications for police, fire, and emergency medical services for the participating jurisdictions."  (*Id.*)  "WCCCA receives all 911 emergency and non-emergency calls for service in the County" and is responsible for "rout[ing] the calls to an appropriate public or private safety agency" to "dispatch responding personnel to the scene."  (*Id.* at ¶83).

WCCCA's "call takers" "determine how to respond to 911 calls, including which services, if any, should be dispatched[.]" (*Id.* at ¶84).  In deciding which services to dispatch,

---

[1]  Plaintiffs challenge the emergency services dispatched in response to mental health related 911 calls only.  (Comp., ¶95).  Their pleading recognizes that alternative behavioral health crisis lines are available, including "Washington County Crisis Line, 988, Lifeworks NW," and the Veterans Crisis Line.  (*Id.* at ¶¶94, 146-47); *see* ORS 430.391 (requiring the Oregon Health Authority ("OHA") to establish a Behavioral Health Resources Network statewide telephone hotline to be staffed 24 hours a day, seven days a week, every day of the year); and ORS 430.628 (requiring OHA "to the extent funding is available" to consult with local community mental health programs and require "crisis stabilization services to individuals contacting the 9-8-8 suicide prevention and behavioral health crisis hotline").

Page 5 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

WCCCA's call takers "follow all applicable rules, regulations, policies and procedures" set forth in WCCCA's "Call Taking Manual[.]" (*Id.*)   As plaintiffs acknowledge, "*where* the Agency determines to route the call for service is critical in determining *what* personnel will actually respond."  (*Id.* at ¶87) (emphasis added).  To make this determination, a WCCCA call taker:

1.   Actively listens and gathers information about the emergency,
2.   Determines the nature and severity of the incident being reported,
3.   Categorizes and prioritizes the reported situation based on established Agency policy and procedure,
4.   Utilizes a computer-aided dispatch (CAD) system to create and distribute calls for service,
5.   Sends the call to a queue for a designated Agency dispatcher to route the call to a private or public agency, including police, fire, and emergency medical services (American Medical Response or "AMR")"

(*Id.* at ¶86) (footnotes omitted).  Plaintiffs recognize that the 911 emergency response system dispatches police, fire, and AMR services.[2]  (*Id.* at ¶86).

WCCCA discerns the nature of the emergency presented by the 911 caller, codes the emergency into a category "type", and uniformly dispatches responders based on the type of emergency.  (*Id.* at ¶¶106, 110).  For example, when a 911 call concerns a physical ailment, it is responded to as a "physical health emergency" for which AMR paramedics and EMTs are dispatched to the scene.  (*Id.* at ¶87).  When a 911 call is identified as mental health related, it is responded to as a "mental health emergency" for which law enforcement officers are dispatched.[3]  (*Id.*).  Plaintiffs acknowledge that, unlike physical health emergencies, mental

---

[2] This is consistent with Oregon Administrative Rule ("OAR") 104-080-000 (Purpose-Emergency Communications System Program).

[3] Plaintiffs allege that when 911 calls are identified as a "Behavioral Health Incident" ("BHI"), they are "coded as a "Dual Call-Type"—one that requires both Fire/EMS *and* law enforcement to respond."  (Comp., ¶111) (emphasis in original).

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

health emergencies typically involve public safety concerns, including the possible use of a weapon to inflict self-harm or harm to others.  (*Id.* at ¶¶148, 153, 169, 202).

Plaintiffs allege that under the current dispatch system, WCCCA routes 911 calls for mental health related emergencies to various law enforcement agencies in the County, including the Washington County Sheriff's Office ("WCSO"), and does not "directly dispatch" mobile crisis intervention teams to the scene.  (*Id.* at ¶15).  Plaintiffs allege that only after arriving at the scene, may law enforcement request assistance from WCSO's Mental Health Response Team ("MHRT")[4], a mobile crisis intervention team ("MCT")[5], EMTs or other County services."  (*Id.* at ¶87).  Plaintiffs acknowledge, however, that law enforcement are often not the only first responders because "Fire/EMS" may also be dispatched to mental health related 911 calls as "co-responders."  (*Id.* at ¶111).  Plaintiffs allege that between March 2022 and March 2023, 100% of the 911 calls that WCCCA coded as "Behavioral Health Incidents" were dispatched to both "law enforcement officers" and "ambulances" as primary responders "as a precaution."  (*Id.* at ¶119, n. 53).

///

///

---

[4]  According to plaintiffs, "the County, through its contractor, LifeWorks NW, primarily deploys its [MHRT]" which is **"a co-response team"** comprised of a law enforcement officer and a clinician[.]"  (Comp., ¶133.)

[5]  A "mobile crisis intervention team" is legislatively defined as "a team of qualified behavioral health specialists, as defined in ORS 414.025, and other health care providers * * * who provide timely, developmentally appropriate and trauma-informed interventions, screening, assessment, de-escalation, and other services necessary to stabilize an individual experiencing a behavior health crisis in accordance with requirements established by the [OHA] by rule."  ORS §430.626(4).  MCT may be referred to a mental health crisis via the County's 988 Crisis Line, LifeWorks NW, WCSO, local emergency departments, and emergency medical response staff.  (Comp., ¶94).

Page 7 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

There is no allegation that the emergency response services provided to individuals receiving assistance within the same group-type of emergency are administered differently or unequally to mentally disabled people as compared with non-disabled individuals.

**B.      Alleged Incidents of Discrimination.**

Plaintiffs are Joshua Wesley, a 28-year-old with diagnosed depression, PTSD and a history of suicidal ideation and substance-use psychosis. (Comp., ¶137). DRO is an organization advocating for the rights of individuals with mental illness, including three "unidentified persons" whose information is based solely on redacted WCSO police reports. (*Id.* at ¶35, footnotes 71, 78, 83).

Plaintiffs allege events that occurred when each of the four subject individuals received emergency services in response to 911 calls that were coded as mental health related emergencies. (*Id.* at pp. 35-49). Each narrative alleges that WCCCA's 911 call takers knew or reasonably should have known that these individuals were experiencing a mental health crisis and that dispatching law enforcement officers as first responders to the scenes provided "ineffective" mental health treatment. (*Id.* at ¶¶12, 140, 171, 206, 188).

**1.      Plaintiff Joshua Wesley.**

Plaintiffs allege that in a three-month period, Joshua Wesley received emergency response services for two 911 calls. (Comp., ¶¶139, 149-50.) The first incident occurred in August 2022, when Mr. Wesley's then-partner called 911 because he was experiencing suicidal ideation and was contemplating "law-enforcement-assisted suicide." (*Id.* at ¶139). According to plaintiffs, WCCCA dispatched WCSO deputies to the scene and thereafter Mr. Wesley was treated with prescribed medication and counseling from a program "operated by the County through LifeWorks NW." (*Id.* at ¶¶141-42).

Page 8 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

The second incident occurred on October 24, 2022, when Mr. Wesley called the Veterans Crisis Line and told the call taker that he was suicidal and had knives in his house. (Comp., ¶148). The Veterans Crisis call taker transferred the called to WCCCA, who coded the call as a "Priority 1" suicide attempt which means "an emergency where there appears to be an imminent threat to life." (*Id*. at ¶150, quoting WCCCA Call Taking Manual, Chapter 13: Police Call Types & Other Emergent Type Calls, at 1). "[T]he closest WCSO deputies [were dispatched] to Mr. Wesley's residence" and were informed that Mr. Wesley had "'poss[ible] weapons,' 'resists arrests,' and 'suicidal'." (*Id*. at ¶¶152-53).

The primary responding WCSO deputy first spoke with Mr. Wesley by telephone and Mr. Wesley agreed to go outside of his apartment to speak with the deputy in person. (Comp., ¶¶154-56). As authorized by ORS 426.228, the deputy placed Mr. Wesley on a Police Officer Hold ("POH") because there was evidence that he was cutting himself and presented a danger to himself.[6] (*Id*. at ¶157). An ambulance transported Mr. Wesley to a hospital. (*Id*. at ¶160). While under the care of the hospital's emergency department, Mr. Wesley tried to take the deputy's firearm while saying "Let me kill myself." (*Id*. at ¶164). During the struggle, the deputy used a knife "to prevent Mr. Wesley from taking his firearm" (*Id.*) and Mr. Wesley "suffered serious injuries" and was later "adjudicated by the Mental Health Court of Washington County" to five years of probation. ((*Id*. at ¶¶165-66).

///

///

---

[6] Plaintiffs recognize that the Oregon legislature has authorized law enforcement officers to "take into custody a person who the officer has probable cause to believe is dangerous to self or to any other person and is in need of immediate care, custody or treatment for mental illness." (Comp. ¶¶71, 76, n. 30 (citing ORS 426.228(1)).

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

      2.      **Plaintiff DRO's Jane Doe.**

On February 6, 2021, at 8:20 a.m., WCCCA received multiple 911 calls because "Jane Doe" was walking in traffic throwing things at passing cars on SW Farmington Road in Washington County.  (Comp., ¶169).  WCCCA dispatched WCSO deputies to the scene where Jane Doe was "blocking traffic", "'walking in the road'" and "'appear[ing] manic and [to] have either Bipolar or Schizophrenia.'"  (*Id.* at ¶¶172-74).  The deputies apprehended, handcuffed, and removed Jane Doe from the roadway, where "medical support" "sedate[d] her due to her very aggressive and resistive behavior."  (*Id.* at ¶¶180-81).  As authorized by ORS 426.228, a deputy placed Jane Doe on a POH, and she was taken by ambulance to St. Vincent Hospital.  (*Id.* at ¶182).

      3.      **Plaintiff DRO's John Doe**

On January 21, 2022, WCCCA received a 911 mental health related call regarding "John Doe" who "had been the subject of four previous calls for service in the prior three days, one of which resulted in the WCSO deputies placing John Doe on a police officer hold."  (*Id.* at ¶¶187-190).  After speaking with John Doe and his stepdaughter at the scene, a WCSO deputy determined that "John Doe was a danger to himself" and placed him on a POH as authorized by ORS 426.228.  (*Id.* at ¶¶193, 199).  John Doe was tased and handcuffed when he became "physically resistive" and perceived as a threat for violence.  (*Id.* at ¶¶196-98).  He was sedated by paramedics at the scene and taken by ambulance to St. Vincent's Hospital.  (*Id.* at ¶199).

      4.      **Plaintiff DRO's Mary Doe.**

On June 1, 2022, WCCCA received multiple 911 calls regarding "Mary Roe" because she was "running in the middle of Tualatin Valley Highway in Hillsboro, flagging down cars, and asking drivers to call 911."  (Comp., ¶202).  WCCCA dispatched "the closest available law

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

enforcement officers to the scene" (*Id.* at ¶204) and, when two Hillsboro police officers arrived,

they found Mary Roe "moving extremely quickly in random directions", "speaking rapidly about

threats" (*Id.* at ¶205) and running away from the officers when they tried to speak to her.  (*Id.* at

¶¶206).  The police officers requested assistance from the County's Mental Health Response

Team ("MHRT"), which was comprised of the following three professionals: (1) a WCSO

MHRT deputy, a Hillsboro Police MHRT officer, and a licensed clinician employed by

LifeWorks NW ('MHRT Clinician')."  (*Id.* at ¶¶207-08).  The MHRT Clinician placed Mary

Roe on a Director's Hold and she was taken by ambulance to Kaiser Westside Hospital.  (*Id.* at

¶214).

Plaintiffs allege that because WCSO deputies were dispatched as first responders for Mr.

Wesley's 911 call on October 24, 2022, rather than qualified mental health professionals, Mr.

Wesley was denied "the opportunity to be clinically assessed and stabilized at his home" and, as

such, received an emergency response service "unequal to the service provided to people

experiencing a physical health emergency in the County."  (*Id.* at ¶168).

### C. <u>Alleged Statutory Violations</u>.

Plaintiffs allege that Joshua Wesley and DRO's constituents are qualified individuals

with mental health disabilities that are protected by the ADA and the Rehabilitation Act.  (*Id.* at

¶¶233-34, 246-47).  They allege that defendants' 911 emergency response system is a "service,

program or activity" that discriminates against mentally disabled individuals because the

dispatch of law enforcement officers to mental health related emergencies deprived them of "the

immediate medical care they need[ed] and unnecessarily exposed [them] to substantial risk of

adverse outcomes," which they identify as including "citation, arrest, involuntary hospitalization,

and police uses of force."  (*Id.* at ¶¶236, 240 249).  They allege the four subject individuals were

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

harmed because they received "inadequate and unequal emergency dispatch [services]" (Comp., ¶18), and were "dependent on officers who are wholly unqualified to make critical medical treatment determinations, let alone administer stabilizing treatment themselves." (*Id.* at ¶107.)

Plaintiffs' discrimination theory rests on comparing the dispatch of "paramedics and EMTs as first responders" to "physical-health-related emergency calls for service in the County" with the dispatch of "law enforcement officers as primary responders" for "mental-health-related [emergency] calls for service in the County[.]" (Comp., ¶¶238-39). Plaintiff allege that "responding paramedics and EMTs are specifically trained to assess, stabilize, and treat the emergent health issue at the point of contact" (*Id.* at ¶¶238, 252), while "responding WCSO deputies are not qualified mental health professionals [and are ill-trained to] provid[e] on-site psychiatric assessment, stabilization, and treatment to individuals in crisis." (*Id.* at ¶¶60-64, 239, 253). Plaintiffs claim that the ADA and Rehabilitation Act entitle mentally disabled individuals "to a crisis response [that is] designed specifically to meet [their] emergency need to psychiatric care" from "qualified mental health professionals" as the sole first responders to a mental-health-related emergency. (*Id.* at ¶200).

Importantly, plaintiffs do not, because they cannot, allege any facts showing that emergency services provided for mental health related emergencies discriminate between disabled and non-disabled individuals.

## LEGAL ARGUMENT

## I.     MOTION TO DISMISS.

### A.     Statutory Standards.

Title II of the ADA and Section 504 of the Rehabilitation Act "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

2002).  The only difference is that the ADA applies to public entities and the Rehabilitation Act proscribes discrimination in all federally funded programs.  *Id.*  Title II of the ADA provides:

> "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act provides:

> "No otherwise qualified individual with a disability * * * shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance * * *."

29 U.S.C. § 794(a).  "Because the ADA was modeled on section 504 of the Rehabilitation Act, courts have applied the same analysis to claims brought under both statutes."  *Zukle v. Regents of Univ. of Calif.,* 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

To survive a motion to dismiss, the alleged facts must show that: (1) the plaintiff is an individual with a disability; (2) who was otherwise qualified to participate or receive the benefit of a public entity's services, programs or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of a public service, program, or activity or was otherwise discriminated against; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014).  The pleaded facts must plausibly suggest that disability is the "but-for" cause of discrimination.  *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (recognizing the overruling of the Ninth Circuit's OLD "motivating factor" standard for Title I and Title II ADA claims, holding that "an ADA discrimination plaintiff * * * must show that the adverse * * * action would not have occurred but for the disability").

Page 13 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

The purpose of the ADA and the Rehabilitation Act is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment for disabled and non-disabled individuals. *Alexander v. Choate.*, 469 U.S. 287, 105 S. Ct. 712 (1985).  The Ninth Circuit recognizes that the Acts cannot be used to litigate inadequate medical care claims.  "[T]he ADA prohibits discrimination *because of* disability, not inadequate treatment *for* disability."  *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1022 (9th Cir. 2010) (emphasis added), *overruled on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), *citing Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) (the ADA provides no remedy where the complaint is about "incompetent treatment" or failing "to attend to the medical needs of [a] disab[ility,]" rather than total exclusion from or impaired access to a program or service); *see Figueira ex rel. Castillo v. Cnty. of Sutter*, No. 2:15–cv–00500–KJM–AC, 2015 WL 6449151, at *8-9 (E.D. Cal. Oct. 23, 2015) (accord).

The Acts require public entities to provide disabled persons meaningful access to their programs and services.  *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013) (holding that to state a successful disparate treatment challenge under the Acts, "the policy must have the effect of denying meaningful access to public services"); *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008).  "Meaningful access" is not a guarantee that all recipients will receive the level of services "precisely tailored to his or her particular needs." *Choate*, 469 U.S. at 303.  As the Supreme Court explained in *Choate,* while the "general aim" of the Medicaid Program is to "assur[e] that individuals receive necessary medical care," "meaningful access" to "the benefit provided" remains access to the "individual services offered—not 'adequate health care.'"  *Id.*

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Meaningful access to services does not require a public entity to fundamentally alter

existing programs and services administered pursuant to policies that do not facially discriminate

against the disabled, nor are public entities required to create new programs that provide

heretofore unprovided services to assist disabled persons. *See Choate*, 469 U.S. at 303 (holding

the state was not required to extend Medicaid benefits "simply to meet the reality that the

handicapped have greater medical needs"); 28 C.F.R. § 35.130(b)(7); *Rodriguez v. City of New

York*, 197 F.3d 611, 618 (2nd Cir. 1999) ("[t]he ADA requires only that a particular service

provided to some not be denied to disabled people * * * New York cannot have unlawfully

discriminated against appellees by denying a benefit that it provides to no one.").

The Acts do not guarantee disabled individuals "equal results" from the services provided

nor require the services be provided in a manner preferred by a disabled individual. *Cohen v.

City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014); *Bird v. Lewis and Clark Coll.*, 303

F.3d 1015, 1019 (9th Cir. 2002). Rather, the inquiry is whether disabled individuals have an

opportunity to participate in and receive the services offered. *Bird*, 303 F.3d at 1019. "Where

the plaintiffs seek to *expand* the substantive scope of the program or benefit, they likely seek a

fundamental alteration to the existing program or benefit and have not been denied meaningful

access." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267-68 (D.C. Cir. 2008).

Here, plaintiffs do not and cannot allege facts that, if proven, would show that the

County's emergency service system discriminates against Mr. Wesley and other individuals

because of disability.

**B.    Plaintiffs Do Not Allege Actionable Disability Discrimination Claims.**

Plaintiffs do not state cognizable claims for relief under the ADA and Rehabilitation Act

because they fail to allege facts supporting a conclusion that disabled individuals are denied

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

equal access to any service by the County. Most fundamentally, plaintiffs do not, because they cannot, allege that the County unlawfully discriminates in how services are provided to disabled individuals as compared to non-disabled individuals.

Plaintiffs' claim that mental health emergency response services (which the County does not control) are ineffective and even defective to immediately treat mental health disabilities is a challenge to the *adequacy* of the services and is not a viable claim under the Acts. The same is true for plaintiffs' claim that the lack of qualified mental health treatment at the scene of mental health related emergencies denies mentally disabled people from meaningful access to the emergency response system. The Acts do not require the County to create new emergency services to disabled persons that are not provided to non-disabled persons.

**1.    Plaintiffs Do Not Allege Discrimination on the Basis of Disability.**

The duty to provide reasonable accommodation under the ADA and Rehabilitation Act arises only when a public service or program discriminates on the basis of disability. *Weinreich v. Los Angeles County Metropolitan Transp. Authority*, 114 F.3d 976, 978 (9th Cir.1997).[7] Plaintiffs must allege facts demonstrating that a program or service "prevents qualified disabled people from having 'meaningful access to a benefit *because of their disability.*'" *Id.* at 979 (emphasis in original); *see* 28 C.F.R. § 35.130(a), (b)(1) (describing prohibited discrimination "on the basis of disability" as unequal treatment in services, aid, and benefits provided to qualified individuals with disabilities as compared to others without the disability). Beyond insufficient conclusory allegations, plaintiffs do not allege facts showing that the County

---

[7] The implementing regulations to Title II of the ADA refer to "reasonable modifications" rather than "reasonable accommodations" but the terms are interchangeable. *Weinreich*, 114 F3d at 978, n.1 (citing 28 C.F.R. § 35.130(b)(7) (1993)).

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

excludes individuals with mental health disabilities from the services uniformly provided in response to 911 calls because of their disability.

Most problematic, plaintiffs have not alleged facts, as they must to state viable claims under the Acts, showing that the service, aid, and benefit provided to individuals with mental health disabilities is different, unequal, or substantially impaired *as compared to non-disabled individuals*.  Simply put, they do not allege that mentally disabled individuals are treated differently than others who receive mental health emergency services.  In fact, plaintiffs' pleading makes clear that the response services dispatched by WCCCA to distinct categories of emergencies are uniformly provided and the treatment afforded is evenhanded.[8]  (*See* Comp., ¶¶87, 106, 110).  Plaintiffs do not, because they cannot, assert that the reason distinct categories of emergencies receive different services is *because of* a perceived qualifying mental health disability.

Unable to allege an apt comparison between mentally disabled and non-disabled individuals, plaintiffs base their discrimination claim on a comparison of discrete services afforded in response to dissimilar emergencies.  Plaintiffs allege that because the services dispatched for mental health related emergencies are different than those dispatched for physical health crises and are ineffective for immediately treating individuals experiencing mental health crises at the scene of the crises, the County violates the ADA and Rehabilitation Acts.  This claim fails because the Acts do not require distinct programs to provide the same or similar

---

[8]  Plaintiffs do not target their challenge to the services provided to qualified mentally disabled individuals who are protected under the Acts.  Rather, they claim that all individuals who are the subject of mental health related 911 calls receive inadequate and ineffective mental health care.  However, individuals experiencing mental health crises are not an exclusive group of qualified disabled individuals under the Acts.  *See e.g., Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (temporary psychological impairment did not constitute a disability under the ADA).

Page 17 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

discrete services and does not guarantee equal results or best outcomes. *See Does 1-5 v. Chandler*, 83 F.3d 1150, 1151-52 (9th Cir. 1996) (discrepancy between benefits for dependent children and for disabled persons did not violate Title II because the "ADA does not require equivalent benefits in different programs"); *see also Choate*, 469 U.S. at 303 (because "the benefit provided through Medicaid is a particular package of health care services," the Acts protect the equal access to "individual services" and "not adequate health care").

Plaintiffs acknowledge that distinct types of emergencies uniformly receive different services. They allege that medical care by an AMR/EMT or paramedics is dispatched for 911 calls concerning physical health emergencies. (Comp., ¶99). However, plaintiffs are not seeking those same services for mental health related emergencies. Instead, they are critical of the law enforcement services WCCCA dispatches for mental health related 911 calls, which sometimes co-respond with an ambulance or a MHRT. (*Id*., ¶¶87, 107, 111). Rather than seeking equal access to AMR services, plaintiffs demand entirely different services by qualified mental health providers at the scene of mental health related emergencies, eliminating the services provided by law enforcement officers. (*Id.* at ¶200). What plaintiffs challenge is *not* illegal discrimination against mentally disabled individuals, but the substance of the service provided *for* mental health related emergencies.

Plaintiffs' comparison of the two distinct emergency service protocols asserts a programmatic challenge to the adequacy of the service provided for 911 calls coded as mental health related emergencies and does not support a plausible disability discrimination claim that is actionable under the ADA or the Rehabilitation Act. *McGowan v. Washington Dept. of Labor and Industries*, 213 Fed. App'x 556, 557 (9th Cir.2006) (unpublished) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2nd Cir.1998) (ADA and Rehabilitation Act do not provide a cause of action for

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

challenging the adequacy of state programs without showing disparate or discriminatory treatment)).

*Chandler* is instructive.  In *Chandler*, the Ninth Circuit affirmed the district court's ruling that the legislature's welfare amendments to provide eligible needy individuals with dependent children benefits for unlimited duration while providing needy disabled individuals benefits for only one year did not violate the ADA because disabled individuals' ineligibility for the longer term benefits did not turn on their disabled status.  83 F.3d at 1151-52.  The district court concluded that there was no "plausible basis" for arguing a violation of Title II because the factor distinguishing eligibility was "not one of disability, but rather one of having dependent children."  *Id.* at 1153.

Finding that the "key issue" was one of "characterization" of the "program", the Ninth Circuit rejected the plaintiffs' argument that the program "is essentially a single, unified program with the single essential purpose of providing income support for the needy."  *Id.* at 1155. Recognizing that non-disabled needy without dependent children were not entitled to funds under the program suggested the proper view was of two discrete forms of benefit providing for two discrete subgroups of the needy population.  *Id.*  The court concluded that the program was "functionally" a program of support for needy families and a program of support for the needy disabled and "the ADA does not require equivalent benefits in different programs."  *Id.*

Here, contrary to plaintiffs' characterization of the County as having the single essential purpose of providing immediate medical services to people experiencing emergencies, the 911-emergency response system—which the County does not control—is a public safety program with the recognized purpose to "[p]rovide consistent statewide access to police, fire, and medical service through the emergency communications system when an emergency call is made to 9-1-

Page 19 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

1.”  OAR 104-080-000 (Purpose-Emergency Communications System Program).  The benefit of the 911 system is immediate access to police, fire, and medical services for multifarious emergencies, and is not the immediate access to optimal care that is tailored to the particular needs of the individual who is the subject of the 911 call.

Like in *Chandler*, there is no "plausible basis" to assert violations of the Acts because the factor distinguishing the different immediate response services is not one of disability, but rather one of emergency type.  That medical aid is dispatched for physical health emergencies does not make it discriminatory that law enforcement is dispatched for emergencies that present mental health related safety concerns of a danger to self or others.[9]  As *Chandler* makes clear, the ADA does not require equivalent services in response to all 911 emergencies, only that the services are provided without distinction between disabled and non-disabled individuals.

Having failed to plead facts of discrimination because of disability in violation of the Acts, plaintiffs' Complaint should be dismissed.  Fed. R. Civ. Pro. 12(b)(6).

## 2.    Inadequate Mental Health Care is Not Actionable Discrimination.

Plaintiffs challenge the adequacy and effectiveness of mental health treatment provided at the scene of a mental health related emergency—again, without distinction between disabled and non-disabled individuals.  The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and services enjoyed by all, but do not provide a general federal cause of action for challenging the medical treatment of their underlying disabilities.  *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) (noting that a Title II claim "survives only if it truly alleges a 'discriminatory denial of services' and must be dismissed if it instead

---

[9]  *See supra* note 6 (citing ORS 426.228(1)).

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

concerns the 'adequacy' of the services provided") (quoting *Buchanan v. Maine*, 469 F.3d 158. 174-75 (1st Cir. 2006).

The relief that plaintiffs seek is not an "accommodation" for access to current emergency medical services, it is a request for adequate emergency mental health treatment *for* their disability, not *because of* their disability.  The ADA and Rehabilitation Acts prohibit "discrimination *because of* disability, not inadequate treatment *for* disability." *Simmons*, 609 F.3d at 1022; *see Figueira ex rel. Castillo v. Cnty. of Sutter*, No. 2:15–cv–00500–KJM–AC, 2015 WL 6449151, at *8–9 (E.D. Cal. Oct. 23, 2015) (dismissing ADA and Rehabilitation Act claims arising from suicide of mentally ill inmate following allegedly inadequate health care in custody, noting that "[t]he defendants cannot have violated the ADA by failing to attend to the medical needs of disabled prisoners"); *Gordy v. Agamyan*, No. CV 18-2590-GW (JPR), 2018 WL 3129779, at *4  (C.D. Cal. June 22, 2018) (dismissing ADA and Rehabilitation Act claims alleging mental health care received was inadequate in response to a mental-health crisis where mentally-ill prisoner pleaded that he was "excluded from the service, program, or activity of placement on suicide watch and [into a mental health crisis bed] MHBC); *Washington v. California Dep't of Corrections & Rehabilitation*, No. CV 19-169-VAP (KK), 2019 WL 1206487, at *3, 6 (C.D. Cal. March 14, 2019) (dismissing ADA and Rehabilitation Act claims alleging improper treatment during a mental health crisis and seeking injunctive relief to "replace correctional officers in CSP-LAC's Mental Health Services Delivery System * * * with Medical Technical Assistants").

Accordingly, plaintiffs fail to state cognizable claims for relief under the Acts.

### 3.      Plaintiffs Are Not Denied Meaningful Access to Emergency Services.

The' Complaint should be dismissed for the additional reason that plaintiffs' claim for

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

"reasonable accommodation" rests on the legally unsupportable allegation that mentally disabled individuals have been denied "meaningful access" to the County's emergency response system. Under *Iqbal* and *Twombly*, plaintiffs' mere conclusory allegations that mentally disabled individuals are denied "meaningful access", should be rejected.

To survive a motion to dismiss, plaintiffs must identify a particular service requiring accommodation to access. *Choate*, 469 U.S. at 303 (benefits provided are the individual services offered). Reasonable accommodations are evaluated by whether they provide a disabled individual with "meaningful access" to programs or services. *K.M. ex rel. Bright*, 725 F.3d at 1099 (applying meaningful access standard to determine reasonable accommodation under the ADA); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (applying "meaningful access" standard to determine reasonable accommodation standard under Section 504).

The "meaningful access" standard "requires a court to consider whether, 'when viewed in its entirety,' the program at issue is accessible." *Kirola v. City and Cnty. of San Francisco*, 860 F.3d, 1164, 1183 (9th Cir. 2017); *see id* at 1182 (challenges to programmatic access must be judged by the standard of "meaningful access to a program in its entirety") (citing 28 C.F.R. § 35.150); *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) (a "modification is necessary, if but for the modification, plaintiffs would be effectively excluded from the benefit at issue"). That is, meaningful access is *not* denied simply because individual aspects or elements of a program are not accessible to disabled individuals. *See Daubert*, 760 F.3d at 986-88 (inaccessible football field bleachers did not render school's football program in violation of the ADA when disabled patrons could watch the game from satisfactory alternative locations). Additionally, meaningful access does not require a defendant to provide services in the exact manner preferred by the plaintiff. *Bird*, 303 at 1019.

Page 22 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

The Acts ensure the equality of access to public programs, services, and benefits, and not the quality of the services provided. *See Updike v. Multnomah Cnty.,* 870 F.3d 939, 959 (9th Cir. 2017) (noting that a public entity may be liable under the Acts only "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons") (citation omitted). Plaintiffs do not allege they are *excluded* from receiving the County's emergency response services. Instead, they insufficiently allege that the services provided by law enforcement officers who are dispatched to mental health emergencies fail to provide adequate mental health treatment. Plaintiffs requested "accommodation" of dispatching only qualified mental health providers to the scene of mental health related emergencies with no police presence goes well beyond "meaningful access" and fails to support a claim for disability discrimination.

### 4.    The County is Not Required to Provide New Services or Programs.

Title II does not require government entities to create new programs to help disabled persons. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they may render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities."); *see accord Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("It is clear from the language of Title II and the integration regulation that public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons."); *Olson v. Allen*, No. 3:18-cv-001208-SB, 2019 WL 1232834, *4 (D. Or. March 15, 2019) (citing case law for proposition that "the ADA does not mandate the provision of new benefits").

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

Plaintiffs seek relief from alleged inadequate immediate emergency mental health services, and not from a discriminatory denial of services. Rather than correct illegal discrimination, plaintiffs improperly seek to overhaul the existing emergency response system for 911 calls that *may* be related to mental health crises. Plaintiffs do not contest that the current emergency response system uniformly provides emergencies services to all individuals who are the subject of 911 calls without distinction between disabled and non-disabled persons. Nor do they contest that current emergency services available for all crises include police, fire, and AMR services. A program that dispatches only qualified mental health professionals in response to any 911 call does not currently exist. As a result, the relief plaintiffs seek goes beyond what the Acts mandate.

Plaintiffs' Complaint should be dismissed as a matter of law.

## II.    ALTERNATIVE MOTIONS TO STRIKE AND MAKE MORE DEFINITE AND CERTAIN

### A.    <u>Immaterial, Impertinent, and Inflammatory Allegations Should be Stricken</u>

The following parts of the Complaint are immaterial to the claims at issue, inappropriately rely on unauthenticated hearsay, and assert impertinent and inflammatory allegations that unnecessarily detract from the relevant issues and the dignity of the court. The improper allegations incorporate irrelevant and collateral issues that would cause an unnecessary burden in discovery and confuse the issues. *See Fantasy, Inc.*, 984 F.2d at 1528. The County seeks an order striking the following allegations on that basis. Fed.R.Civ.P. 12(f).

#### 1.    "Introduction" Allegations

**Paragraph 10**: Alleging "Tragically, Mr. Wesley's horrific experience with Defendants' discriminatory emergency response system is not an anomaly." This paragraph includes

Page 24 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

inflammatory descriptions that are immaterial and distract from the discrimination claims at issue.

**Paragraphs 22-24**:  These paragraphs, including the footnotes contained therein, allege immaterial public policy arguments that rely on unauthenticated hearsay regarding the effectiveness of dispatching law enforcement officers to mental health crises and a purported relation to police killings of people with mental health disabilities.  The County is not in control of WCCCA's dispatch of emergency services.  These allegations have no relevance to the discrimination claims at issue and pose a risk of prejudice to the County.

> 2.  **Allegations under the heading - "Mental Health Experts Agree That Police Should Not Respond to Typical Mental Health Emergencies**."

**Paragraphs 42-59, 65-68, 72-73, 75-76**:  These paragraphs, including the footnotes contained therein, allege immaterial commentary and unauthenticated hearsay that do not pertain to the discrimination claims at issue and pose a risk of prejudice to the County.  The public policy contention that police should not respond to mental health emergencies is not relevant to the claim that the County has violated the ADA and Rehabilitation Acts by discriminating against qualified individuals with mental health disabilities.  The allegations that qualified mental health professionals are better trained than law enforcement to treat people with mental health disabilities is not an issue in this case.  Moreover, the allegations regarding "involuntary detentions", which plaintiffs acknowledge is governed by the Oregon state legislature, are immaterial to the claims of discrimination in access to emergency services.

///

///

///

Page 25 - DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

3.    Allegations under heading - "Non-Police Mobile Crisis Services Are the Appropriate Response to Mental Health Emergencies in the County."

**Paragraphs 220-230**:  These paragraphs, including the footnotes contained therein, allege immaterial commentary and unauthenticated hearsay regarding public policy issues and the implementation of programs in different jurisdictions that are not under scrutiny or in any way relevant to the claims raised in this case.

B.    <u>Vague Allegations Should be Clarified</u>.

Under the heading in plaintiffs' Complaint – **"Defendants' Public Safety Dispatch and Emergency Response Services Are Not Equally Effective for Members of the Public Who Have Mental Health Disabilities as They Are for Others"** – the following allegations are unclear because they do not specify the defendant that is the subject of the allegation.

**Paragraph 82 a**:  Alleging "*Defendants* Dispatch Safe, Appropriate, and Effective Responses for People Experiencing Physical Health Emergencies but *They* Do Not Do So for People Experiencing Mental Health Emergencies." (Emphasis added).  Because the County has no control over the dispatch of emergency services, this allegation should be clarified to identify the defendant to whom it pertains.

**Paragraph 98**:  Alleging "Because *Defendants* do not dispatch the MCT in response to 911 mental health crises calls * * *."  (Emphasis added).  Because the County has no control over the dispatch of emergency services, this allegation should be clarified to identify the defendant to whom it pertains.

**Paragraph 107**:  Alleging "As a result of *Defendants'* discriminatory policies and practices of dispatching law enforcement officers in response to mental health crises * * *."

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

(Emphasis added).  Because the County has no control over the dispatch of emergency services, this allegation should be clarified to identify the defendant to whom it pertains.

**Paragraph 107 b**:  Alleging "*Defendants* Dispatch Law Enforcement Officers to the Vast Majority of Mental Health Emergencies in the County."  (Emphasis added).  Because the County has no control over the dispatch of emergency services, this allegation should be clarified to identify the defendant to whom it pertains.

## <u>CONCLUSION</u>

For the above reasons, plaintiffs' Complaint should be dismissed with prejudice.  In the alternative, immaterial allegations should be stricken and vague references to "defendants" should be clarified to plead allegations specific to a particular defendant.

Respectfully submitted this 1st day of April, 2024.

HART WAGNER LLP

By:    */s/ Karen O'Kasey*

Karen O'Kasey, OSB No. 870696
Ruth A. Casby, OSB No. 944225
Zachariah H. Allen, OSB No. 122729
Of Attorneys for Defendant Washington
County

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of April, 2024, I served the foregoing **DEFENDANT WASHINGTON COUNTY'S RULE 12 MOTIONS** on the following parties at the following addresses:

Dave Boyer
Meghan E. Apshaga
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205-2748

Kelly Simon
American Civil Liberties Union
Foundation of Oregon, Inc.
PO Box 40585
Portland, OR 97240-585
    *Attorneys for Plaintiff*

Heather Van Meter
Liani Reeves
Ivan Resendiz
Miller Nash LLP
500 E Broadway Ste 400
Vancouver WA  98660
    *Attorneys for Co-Defendant*


by electronic means through the Court's Case Management/Electronic Case File system.



    */s/ Karen O'Kasey*
    Karen O'Kasey

Page 1 – CERTIFICATE OF SERVICE

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**