**Heather J. Van Meter**, OSB No. 983625
heather.vanmeter@millernash.com
**Iván Resendiz Gutierrez**, OSB No. 154617
ivan.resendiz@millernash.com
MILLER NASH LLP
1140 SW Washington Street, Suite 700
Portland, Oregon 97205
Telephone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendant*
*Washington County Consolidated*
*Communications Agency*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon, <br><br> Defendants. | Case No. 3:24-cv-00235-SB <br><br> DEFENDANT WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT <br><br> (Pursuant to Federal Rule of Civil Procedure 12(b)(6)) <br><br> **ORAL ARGUMENT REQUESTED** |

Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 1

II.   LEGAL STANDARD UNDER MOTIONS TO DISMISS UNDER FEDERAL
      RULE OF CIVIL PROCEDURE 12(B)(6) ................................................. 3

III.  INCORPORATION OF DOCUMENT BY REFERENCE ............................. 4

IV.   BACKGROUND ........................................................................................ 5

      A.    Factual Background ........................................................................ 5

            1.    The Plaintiffs ......................................................................... 5

            2.    Defendants' Integrated 911 Emergency Response System ...... 6

            3.    Alleged Incidents of Discrimination. ................................... 10

            4.    Alleged Statutory Violations ............................................... 11

      B.    Procedural Background ................................................................ 12

            1.    "a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and
                  Federal Rules of Civil Procedure 57, declaring that Defendants'
                  emergency response programs and services violate Title II of the
                  ADA and Section 504"; ........................................................ 12

            2.    "permanent injunctive relief requiring, at a minimum and within a
                  limited and reasonable period of time, that Defendants, their
                  agents, employees, and those persons acting in concert with them
                  implement and operate emergency response programs and services
                  that provide comparable responses to physical health emergencies
                  and mental health emergencies, and that ensure that mental health
                  professionals are the default first responders for typical mental
                  health emergencies;" ............................................................ 12

            3.    "costs, expenses, and reasonable attorneys' fees;" and .......... 12

            4.    miscellaneous relief to be determined by the Court. (Compl. at 58-
                  59 (Prayer for Relief).) ....................................................... 12

V.    ARGUMENT ........................................................................................... 12

      A.    Statutory Standards ..................................................................... 14

      B.    Plaintiff Disability Rights Oregon's Claims Fail Because Plaintiff
            Disability Rights Oregon Failed to Exhaust Its Administrative Remedies ......... 17

      C.    Plaintiffs Do Not Allege Actionable Disability Discrimination Claims ............. 20

            1.    Plaintiff Misidentifies the Service at Issue. ......................... 20

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

# TABLE OF CONTENTS
## (continued)

Page

2.    The Agency Does Not Deny Meaningful Access to Emergency Services. ..........................................................................................22

3.    Plaintiffs Are Not Denied Meaningful Access to Emergency Services. ..........................................................................................23

4.    Plaintiffs Do Not Allege Discrimination on the Basis of Disability; Plaintiffs Allege Different Treatment on the Basis of Different Emergencies. .......................................................................................25

5.    "Inadequate" Mental Health Care is Not Actionable Discrimination..........................................................................................28

6.    Plaintiffs' Request for a Higher Standard of Care Is Not Covered Under the ADA. ......................................................................................29

7.    Plaintiffs' Request for New Services Is Not Covered Under the ADA. .............................................................................................................32

VI.    CONCLUSION..........................................................................................34

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Choate,*
469 U.S. 287 (1985)..................................................................................... *passim*

*Am. Council of the Blind v. Paulson,*
525 F.3d 1256 (D.C. Cir. 2008) ...................................................................17, 22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................................3, 4, 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).........................................................................................3

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ...........................................................................3

*Bird v. Lewis and Clark Coll.,*
303 F.3d 1015 (9th Cir. 2002) .....................................................................16, 24

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,*
725 F.3d 1088 (9th Cir. 2013) .....................................................................16, 24

*Brooklyn Center for Independence of the Disabled v. Bloomberg,*
980 F. Supp. 2d 588 (S.D.N.Y. 2013).................................................................21

*Buchanan v. Maine,*
469 F.3d 158 (1st Cir. 2006) ...................................................................29, 30, 32

*Figueira ex rel. Castillo v. Cnty. of Sutter,*
2015 WL 6449151 (E.D. Cal. Oct. 23, 2015) ....................................................16, 29

*Cohen v. City of Culver City,*
754 F.3d 690 (9th Cir. 2014) ...........................................................................16

*Communities Actively Living Independent & Free v. City of Los Angeles,*
2011 WL 4595993 (C.D. Cal. 2011).................................................................20, 21

*Disability Rights New Jersey, Inc. v. Commissioner, New Jersey Department of
Human Services,*
796 F.3d 293 (3d Cir. 2015)......................................................................30, 31, 32

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

*Doe v. Pfrommer*,
  148 F.3d 73 (2nd Cir. 1998)..........................................................................27, 31, 33

*Does 1-5 v. Chandler*,
  83 F.3d 1150 (9th Cir. 1996) ...............................................................................26, 27

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ....................................................................................3

*Gordy v. Agamyan*,
  2018 WL 3129779 (C.D. Cal. June 22, 2018) ..........................................................29

*Hargrave v. Vermont*,
  340 F.3d 27 (2d Cir. 2003)........................................................................................22

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...................................................................................3, 5

*Kirola v. City and Cnty. of San Francisco*,
  860 F.3d (9th Cir. 2017) ...........................................................................................24

*Lane v. Kitzhaber*,
  841 F. Supp. 2d 1199 (D. Or. 2012) ........................................................................29

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
  370 F.3d 837 (9th Cir. 2004) ....................................................................................24

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir. 2002) .......................................................................14, 27, 28

*Mark H. v. Hamamoto*,
  620 F.3d 1090 (9th Cir. 2010) ..................................................................................24

*Mark H. v. Lemahieu*,
  513 F.3d 922 (9th Cir. 2008) ....................................................................................16

*Mashiri v. Epsten Grinnell & Howell*,
  845 F.3d 984 (9th Cir. 2017) ......................................................................................4

*Medlin v. PeaceHealth*,
  2024 WL 712692 (D. Or. Feb. 21, 2024)....................................................................4

*Murray v. Mayo Clinic*,
  934 F.3d 1101 (9th Cir. 2019) ..................................................................................15

Page ii -   Table of Authorities

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999)............................................................................................29, 32

*Olson v. Allen*,
    2019 WL 1232834 (D. Or. Mar. 15, 2019) ........................................................32

*Reyes v. United States*,
    2023 WL 2338059 (E.D.N.C. Feb. 2, 2023) ......................................................18

*Rodriguez v. City of New York*,
    197 F.3d 611 (2nd Cir. 1999).................................................................16, 20, 33

*Roell v. Hamilton Cnty.*,
    870 F.3d 471 (6th Cir. 2017) .............................................................................15

*Sheehan v. City & Cnty. of S.F.*,
    743 F.3d 1211 (9th Cir. 2014) ...........................................................................15

*Simmons v. Navajo County, Ariz.*,
    609 F.3d 1011 (9th Cir. 2010), *overruled on other grounds in Castro v.*
    *County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) ...................................16, 29

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...........................................................................3, 4

*Townsend v. Quasim*,
    328 F.3d 511 (9th Cir. 2003) .............................................................................32

*U.S. v. Richie*,
    342 F.3d 903 (9th Cir. 2003) .............................................................................3

*Updike v. Multnomah Cnty.*,
    870 F.3d 939 (9th Cir. 2017) .............................................................................24

*Washington v. California Dep't of Corrections & Rehabilitation*,
    2019 WL 1206487 (C.D. Cal. Mar. 14, 2019) ..................................................29

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*,
    114 F.3d 976 (9th Cir. 1997) ...................................................................15, 17, 25

*Weisbuch v. City of L.A.*,
    119 F.3d 778 (9th Cir. 1997) .............................................................................4

*Zukle v. Regents of Univ. of Calif.*,
    166 F.3d 1041 (9th Cir. 1999) ...........................................................................15

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

**Statutes**

28 U.S.C. § 2201 ..................................................................................................12

28 U.S.C. § 2202 ..................................................................................................12

29 U.S.C. § 794 ..............................................................................................1, 14

42 U.S.C. § 10801(b)(1) ........................................................................................5

42 U.S.C. § 10805 .......................................................................................1, 5, 18

42 U.S.C. § 10807 ................................................................................................18

42 U.S.C. § 12131 ................................................................................................14

42 U.S.C. § 12132 ..........................................................................................1, 14

Americans with Disabilities Act of 1990 Title II (ADA), 42 U.S.C. § 12132 ..................... *passim*

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 .......................................... *passim*

Oregon Revised Statutes Chapter 190 ....................................................................6

ORS 414.025 ..........................................................................................................8

ORS 430.391 ..........................................................................................................6

ORS 430.626(4) .....................................................................................................8

ORS 430.628 ..........................................................................................................6

Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C.
  §§ 10801-10807. ........................................................................................ *passim*

**Other Authorities**

28 C.F.R. § 35.130(a), (b)(l) ...............................................................................25

28 C.F.R. § 35.130(b)(7)..................................................................................16, 17

Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 4

Federal Rule of Civil Procedure 57 .....................................................................12

H.R. Conf. Rep. No. 576, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code
  Cong. & Admin. News 1377, 382-83 .............................................................19

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

S. Rep. No. 109, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong. &
Admin. News 1361, 1371 ............................................................................................19

OAR 104-080-000(1)(a) ...................................................................................................28

Page v -    Table of Authorities

## LOCAL RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for defendant Washington County Consolidated Communications Agency (the "Agency") certifies that on March 29, 2024, and on April 17-18, 2024, counsel conferred in good faith with counsel for plaintiffs Disability Rights Oregon ("DRO") and Joshua Wesley ("Wesley") (collectively, "plaintiffs") to resolve the issues described in this motion, but the parties have been unable to resolve the issues in dispute.

## MOTION[1]

Defendant Washington County Consolidated Communications Agency moves to dismiss plaintiffs Disability Rights Oregon and Joshua Wesley's Complaint, filed on February 5, 2024 (ECF 1), for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court should dismiss the Complaint and its two claims—unlawful disability discrimination under Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504" or the "Rehabilitation Act") (collectively, the "Acts")—because the Complaint does not have allegations sufficient to state a claim against the Agency on which relief can be granted.

This motion is supported by the legal memorandum below, the Declaration of Iván Resendiz Gutierrez ("IRG Decl.") and the pleadings and records filed with the Court.

## LEGAL MEMORANDUM

## I.     INTRODUCTION

DRO, the federally designated protection and advocacy system for Oregon under the Protection and Advocacy for Individuals with Mental Illness Act (the "PAIMI Act"), *see* 42 U.S.C. § 10805(a), and Wesley, an individual, assert two claims for declaratory and permanent injunctive relief against Washington County and the Agency (collectively,

---

[1] The Agency also joins defendant Washington County's alternative motions under Rule 12 to strike or to make more definite and certain, but the Agency does not agree with the contention that defendant Washington County does not have control over the "'dispatch' of emergency services" in Washington County, Oregon. (ECF 21, at 2.)

Page 1 -    Defendant Washington County Consolidated Communications Agency's Motion to Dismiss Plaintiffs' Complaint

"Defendants") under Title II of the ADA and Section 504. The lengthy Complaint is a challenge to the adequacy of Defendants' emergency response services to mental health emergencies. (ECF 1 (Complaint ("Compl.") ¶ 2).) Through this lawsuit, plaintiffs seek to change the type and method of emergency response services that are provided to individuals experiencing mental health crises. Plaintiffs' stated aim is to "provide comparable responses to physical and mental health emergencies" by "ensur[ing] that mental health professionals are the default first responders for typical mental health emergencies." (Compl., at 59 (Prayer for Relief).)

The Agency sympathizes with plaintiffs and believes in the goal of enhancing the mental health emergency response system of Washington County, which is already making great strides toward that end. However, plaintiffs' advocacy for the creation of new services and the enhancement of standards of care is a policy argument for the legislative branch of government; plaintiffs' lawsuit does not present a cognizable legal claim in the judicial branch of government.

As discussed in detail below, plaintiffs' allegations do not show that individuals with psychiatric disabilities are denied the benefits of any *existing* Washington County (or Agency) emergency response service or program due to their disability. Instead, the Complaint seeks to do one of two things: (a) heighten the level of the emergency response services Defendants currently provide to individuals experiencing a mental health emergency to a level preferred by plaintiffs; or (b) require Washington County to create and implement a *new* service or program that would allow the Agency to dispatch mental health professionals as the *only* first responders to mental health emergencies. Neither desire creates a viable claim under Title II of the ADA or the Rehabilitation Act. Because plaintiffs do not and cannot identify any *existing* emergency response services that are provided to non-disabled individuals but denied to individuals with disabilities, plaintiffs have failed to state an ADA or Rehabilitation Act claim. DRO's claims fail for an additional reason—namely, DRO failed to timely exhaust all of its administrative

Page 2 -    Defendant Washington County Consolidated Communications Agency's
            Motion to Dismiss Plaintiffs' Complaint

remedies in accordance with the PAIMI Act before filing this lawsuit. For these reasons, this Court must dismiss the Complaint with prejudice.

Plaintiffs' claims are untenably based on flawed legal theories and constitute mere policy arguments to be made to a legislative body. As a public entity, the Agency must and hereby does file this motion to limit the unnecessary expenditure of public resources to address claims that are not legally viable.

## II.    LEGAL STANDARD UNDER MOTIONS TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The tenet that the Court must accept as true all the allegations contained in the complaint "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The Court need not credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678-79. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In addition to facts alleged in the complaint, the Court may take judicial notice of documents incorporated by reference into the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *U.S. v. Richie*, 342 F.3d 903, 907–08 (9th Cir. 2003). The Court need not accept as true allegations which are contradicted by documents referred to in the complaint. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014). Furthermore, a plaintiff pleads themselves out of court if they plead facts

Page 3 -    Defendant Washington County Consolidated Communications Agency's Motion to Dismiss Plaintiffs' Complaint

which establish that they cannot prevail on their claim. *Weisbuch v. City of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir .1997).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

As explained below, plaintiffs' claims fail to state a claim that is plausible on its face under Rule 12(b)(6), and, therefore, this Court should dismiss the Complaint. And because any amendment would be futile, the Complaint should be dismissed with prejudice. *See Gardner v. Marino*, 563 F.3d 981, 900 (9th Cir. 2009) (leave to amend properly denied where the defects in the pleading cannot be cured).

## III.    INCORPORATION OF DOCUMENT BY REFERENCE

In considering a motion to dismiss under Rule 12(b)(6), the court may consider documents incorporated by reference in the complaint without converting the motion to dismiss into a motion for summary judgment. *Richie*, 342 F.3d at 907–08. Incorporation by reference is appropriate if the plaintiff refers extensively to the document, or the document forms the basis of the plaintiff's claim. *Id.* The doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002; *Medlin v. PeaceHealth*, 2024 WL 712692, at *1 (D. Or. Feb. 21, 2024) (granting the defendant's request for the court to

Page 4 -    Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint

consider the plaintiff's religious exception request form in resolving the motion to dismiss because the "Complaint certainly references [the plaintiff's] request for a religious exception").

Here, the Court should consider Agency's Call Taking Manual without converting this motion into a motion for summary judgment because the document forms the basis for plaintiffs' claims against the Agency. Indeed, plaintiffs refer extensively to the Call Taking Manual throughout the Complaint, *see, e.g.*, Compl. ¶¶ 84, 85, and 111, but plaintiffs did not include the Call Taking Manual with the Complaint. Therefore, it is an appropriate subject of incorporation by reference. At this time, plaintiffs take no position as to this request.

Accordingly, the Agency respectfully requests that the Court consider, as incorporated by reference into the Complaint, the Agency's Call Taking Manual (IRG Decl., Ex. 1).

## IV.    BACKGROUND[2]

### A.    Factual Background

#### 1.    The Plaintiffs

DRO is the Protection and Advocacy System for the state of Oregon, mandated under federal law to "ensure that rights of individuals with mental illness are protected" under the PAIMI Act. (Compl. ¶ 35; 42 U.S.C. § 10801(b)(1).) DRO's responsibilities and obligations are mandated by federal law. *See* 42 U.S.C. § 10805(a)(l)(B).

Wesley is a Washington County resident who lives with depression and post-traumatic stress disorder. Wesley alleges that he is "a qualified person with a disability within the meaning of the ADA and Rehabilitation Act." (Compl. ¶ 39.)

---

[2] The Agency relies on plaintiffs' allegations as stated in the Complaint for purposes of this motion only, in accordance with the standard that the Court construes all factual allegations within the complaint as true. *Iqbal*, 556 U.S. at 678. The Agency does not admit the truthfulness of any of plaintiffs' factual allegations, and expressly reserves the right to contest or deny plaintiffs' allegations in the future.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

## 2. Defendants' Integrated 911 Emergency Response System[3]

The Agency is a public entity, specifically an intergovernmental public entity created under Oregon Revised Statutes Chapter 190 by agreement of several local governments, including Washington County. (Compl. ¶¶ 40, 83 & n.32.) The Agency "is governed by a Board of Commissioners consisting of one appointed official from each participating jurisdiction. The Board is responsible for . . . establishment of Agency service levels [and] adoption of the annual budget . . . . A Chief Executive Officers Board consisting of the Chair of the Board of Commissioners, the representatives of the two largest participating agencies and two at-large members appointed by the Board meet monthly to address more timely issues, including policy changes, purchasing issues, and labor negotiations." (Compl., at 22 n.32.)

The Agency provides "public safety communications for police, fire, and emergency medical services for the participating jurisdictions." (*Id.*) The Agency "receives all 911 emergency . . . calls for service in the County" and is responsible for "rout[ing] the calls to an appropriate public or private safety agency" to "dispatch responding personnel to the scene." (Compl. ¶ 83.) "An emergency call is defined by NENA (National Emergency Number Association) as 'a telephone request for public safety agency emergency services which requires immediate action to save a life, to report a fire or to stop a crime; may also include other situations as determined locally.'" (IRG Decl., Ex 1, at 6.) "Emergencies can further be defined as an immediate threat to life safety such as potential for physical harm or medical emergencies and immediate threat to property safety such as fire, theft or robbery." (*Id.*)

---

[3] Plaintiffs challenge the emergency services dispatched in response to mental health related 911 calls only. (Compl. ¶ 95). Plaintiffs concede that alternative behavioral health crisis lines are available, including "Washington County Crisis Line, 988, Lifeworks NW," and the Veterans Crisis Line. (Compl. ¶¶ 94, 146-47); *see also* ORS 430.391 (requiring the Oregon Health Authority ("OHA") to establish a Behavioral Health Resources Network statewide telephone hotline to be staffed 24 hours a day, seven days a week, every day of the year); and ORS 430.628 (requiring OHA—"to the extent funding is available"—to consult with local community mental health programs and require "crisis stabilization services to individuals contacting the 9-8-8 suicide prevention and behavioral health crisis hotline").

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

The Agency's "call takers'" "primary responsibility" is to:

- Receive and process emergency, non-emergency, and business/informal telephone calls.
  - ○ NOTE: All calls received by WCCCA are recorded and electronically logged. Calls requiring response by Police, Fire or EMS are dispatched via CAD (computer aided dispatch). CAD will auto generate and incident number and calls for service are categorized by call type.
- Actively listen to and question callers to obtain, verify and analyze information.
- Accurately determine nature and severity of the incident being reported and the type of service being requested based on the information provided by the caller. It may be necessary to provide the caller with appropriate contact information for outside entities such as WC Animal Control or police records departments.
- Categorize and prioritize the reported situation based on established policy and procedure.
- Utilize the CAD system to accurately create calls for service – includes handling of emergency calls and adding updated information to active CAD incidents.
- Use a multi-line computerized phone and CAD system simultaneously while monitoring multiple computer screens.

(IRG Decl., Ex. 1, at 5; Compl. ¶ 84.) "The NENA standard for information gathering is that the telecommunicator will obtain the basic information from the caller. At a minimum, this information should include: • The address or exact location of the incident • Call back number • Type of emergency • Time of occurrence • Hazards, if any • Identity of those involved and their location." (IRG Decl., Ex. 1, at 7.)

"[W]here the Agency determines to route the call for service is critical in determining what personnel will actually respond." (Compl. ¶ 87.) In deciding which services to dispatch, the Agency's call takers "follow all applicable rules, regulations, policies and procedures" stated in the Agency's "Call Taking Manual[.]" (*Id.*) Plaintiffs' Complaint recognizes that the 911 emergency response system dispatches police, fire, and Emergency Response Services

Page 7 -    Defendant Washington County Consolidated Communications Agency's
           Motion to Dismiss Plaintiffs' Complaint

(commonly known as "EMS"), consistent with Oregon Administrative Rule ("OAR") 104-080-0000(1)(a). (Compl. ¶186.)

Crucially, after the Agency determines the nature of the emergency presented by the 911 caller, the Agency codes the emergency into a category "type" and *uniformly* dispatches emergency responders based on the type of emergency. (Compl. ¶¶ 106, 110.) For example, when a 911 call concerns a physical ailment, it is responded to as a "physical health emergency." For this type of emergency, EMS (e.g., paramedics from American Medical Response ("AMR")) is dispatched to the scene. (Compl. ¶ 87.) When a 911 call relates to mental health, it is responded to as a "mental health emergency." For this type of emergency, law enforcement officers are dispatched.[4] (*Id.*) Plaintiffs' Complaint concedes that, unlike physical health emergencies (e.g., a physical ailment), mental health emergencies typically involve public safety concerns, including the possible use of a weapon to inflict self-harm *or harm to others*. (Compl. ¶¶ 148, 153, 169, 202.) Indeed, Plaintiffs' Complaint makes multiple references to a dangerous tactic used by some individuals with suicidal ideations—"law enforcement-assisted suicide," "a form of suicide in which an individual experiencing suicidal ideation behaves in a manner intended to provoke a lethal response from a law enforcement officer." (Compl., at 4 n.1.)

Plaintiffs' Complaint claims that under the current emergency response system, the Agency routes 911 calls for mental health related emergencies to various law enforcement agencies in Washington County, including the Washington County Sheriff's Office ("WCSO"), and does not "directly dispatch" mobile crisis intervention teams to the scene. (Compl. ¶ 115.) Plaintiffs' Complaint alleges that only after arriving at the scene, can law enforcement request

---

[4] The Complaint alleges that when 911 calls are identified as a "Behavioral Health Incident" ("BHI"), the calls are "coded as a 'Dual Call-Type'—one that requires both Fire/EMS *and* law enforcement to respond." (Compl. ¶ 111 (emphasis in original).)

Page 8 -    Defendant Washington County Consolidated Communications Agency's Motion to Dismiss Plaintiffs' Complaint

assistance from WCSO's Mental Health Response Team ("MHRT")[5], a mobile crisis intervention team ("MCT")[6], EMTs or other County services." (Compl. ¶ 187.) Plaintiffs' Complaint admits, however, that law enforcement officers are often not the only first responders. Indeed, "Fire/EMS" may also be dispatched to mental health related 911 calls as primary "co-responders." (Compl. ¶ 110.) Plaintiffs' Complaint admits that between March 2022 and March 2023, 100 percent of the 911 calls that the Agency coded as "Behavioral Health Incidents" were dispatched to both "law enforcement officers" and "ambulances" as primary responders "as a precaution." (Compl. ¶ 119, n. 53.)

The Complaint further claims that Washington County is aware of "the need for reform" of its emergency response system and that the Agency's hands are tied due to Washington County's decisions and available funding (thus making this entire case one for the legislative branch to address). Specifically, the Complaint alleges that:

- "The County itself appears to recognize the need for reform. It created a Mobile Crisis Team ('MCT')—the sole non-police response available in the County—that is comprised exclusively of mental health clinicians. MCT is intended to be available 24/7, and provide a service to patients that police cannot—'face-to-face crisis evaluation, intervention, and stabilization.'" (Compl. ¶ 5 (footnote omitted).)

- "Yet, the County has failed to sufficiently fund and adequately staff the Mobile Crisis Team. In practice, this means that the only non-police crisis response option in the

---

[5] The Complaint alleges that "the County, through its contractor, LifeWorks NW, primarily deploys its [MHRT]," which is "a co-response team" comprised of a law enforcement officer and a clinician[.]" (Compl. ¶ 133.)

[6] The term "mobile crisis intervention team" is statutorily defined. It means "a team of qualified behavioral health specialists, as defined in ORS 414.025, and other health care providers . . . who provide timely, developmentally appropriate and trauma-informed interventions, screening, assessment, de-escalation, and other services necessary to stabilize an individual experiencing a behavior health crisis in accordance with requirements established by the [OHA] by rule." ORS 430.626(4). MCT may be referred to a mental health crisis via Washington County's 988 Crisis Line, LifeWorks NW, WCSO, local emergency departments, and emergency medical response staff. (Compl. ¶ 194.)

Page 9 -    Defendant Washington County Consolidated Communications Agency's
            Motion to Dismiss Plaintiffs' Complaint

County is largely unavailable—and certainly not at scale and available 24/7 like physical health emergency response services." (Compl. ¶ 14.)

- "Compounding this problem, the County has not incorporated the Mobile Crisis Team into the Agency's dispatch system. *Thus, the Agency cannot directly dispatch the Mobile Crisis Team to mental health crises.* As a result, the Agency routes mental health crises calls to the various law enforcement agencies in the County, including the Washington County Sheriff's Office ('WCSO')." (Compl. ¶ 15 (emphasis added).)

- "And *the County's failure to fully integrate its Mobile Crisis Team into the Agency's dispatch system* has deprived people with mental health disabilities in the County of direct, immediate, and meaningful access to the emergency medical services that are provided to people without such disabilities." (Compl. ¶ 19 (emphasis added).)

- "Structural barriers of *the County's own creation* also prevent appropriate responses to mental health crises." (Compl. ¶ 124 (emphasis added).)

- "Instead of providing all its statutorily-required services directly, the County elected to contract with a private company, LifeWorks NW, to provide a portion of these services, including 'behavioral health crisis and safety net services.'" (Compl. ¶ 127.)

Notably, all of plaintiffs' foregoing complaints relate to County funding for County-provided mental health services. Plaintiffs' Complaint does not allege that the emergency response services provided to individuals receiving assistance within the same type of emergency are administered differently or unequally to individuals with psychiatric disabilities as compared with non-disabled individuals.

### 3.    Alleged Incidents of Discrimination.

In the interest of efficiency, the Agency adopts and incorporates by reference the

Page 10 -  Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint

summary of the alleged incidents of discrimination stated in Washington County's Rule 12 motions, at 8-11, 13, n 6.

### 4.    Alleged Statutory Violations.

The Complaint alleges that Wesley and DRO's constituents are qualified individuals with psychiatric disabilities that are protected by the ADA and the Rehabilitation Act. (Compl. ¶¶ 233-34, 246-47.) The Complaint further alleges that Washington County's 911 emergency response system is a "service, program or activity" that discriminates against individuals with psychiatric disabilities because the dispatch of law enforcement officers to mental health related emergencies deprived Wesley and DRO's constituents of "the immediate medical care they need[ed] and unnecessarily exposed [them] to substantial risk of adverse outcomes," which they identify as including "citation, arrest, involuntary hospitalization, and police uses of force." (Compl. ¶¶ 236, 240 249.) Plaintiffs' Complaint also alleges that the four subject individuals were harmed because they received "inadequate and unequal emergency dispatch [services]." (Compl. ¶¶ 18, 107.)

Plaintiffs' discrimination theory improperly equates the dispatch of "paramedics and EMTs as first responders" to "physical-health-related emergency calls for service in the County" with the dispatch of "law enforcement officers as primary responders," along with fire/EMS, for "mental-health-related [emergency] calls for service in the County[.]" (Compl. ¶¶ 238-39.) Plaintiffs allege that "responding paramedics and EMTs are specifically trained to assess, stabilize, and treat the emergent health issue at the point of contact," Compl. ¶¶ 238, 252, while "responding WCSO deputies are not qualified mental health professionals [and are ill-trained to] provid[e] on-site psychiatric assessment, stabilization, and treatment to individuals in crisis," Compl. ¶¶ 60-64, 239, 253. Plaintiffs argue that the Acts entitle individuals with psychiatric disabilities "to a crisis response [that is] designed specifically to meet [their personal] emergency

Page 11 -  Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

need to psychiatric care" to be provided by "qualified mental health professionals" as the sole

first responders to a mental health related emergency. (Compl. ¶ 200.)

Significantly, plaintiffs do not, and cannot, allege any facts showing that emergency

services provided for mental health related emergencies unlawfully discriminate between

individuals with disabilities and non-disabled individuals.

### B.    Procedural Background

In February 2024, plaintiffs filed this case against Defendants, alleging that Defendants'

reliance on WCSO for mental health related emergencies discriminates against individuals with

psychiatric disabilities in violation of the Acts. In plaintiffs' view, the practice of deploying law

enforcement officers to respond to mental health crises falls short of national standards for best

practices in such situations.

The Complaint seeks the following relief:

1.    "a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57, declaring that Defendants' emergency response programs and services violate Title II of the ADA and Section 504";

2.    "permanent injunctive relief requiring, at a minimum and within a limited and reasonable period of time, that Defendants, their agents, employees, and those persons acting in concert with them implement and operate emergency response programs and services that provide comparable responses to physical health emergencies and mental health emergencies, and that ensure that mental health professionals are the default first responders for typical mental health emergencies;"

3.    "costs, expenses, and reasonable attorneys' fees;" and

4.    miscellaneous relief to be determined by the Court. (Compl. at 58-59 (Prayer for Relief).)

## V.    ARGUMENT

Plaintiffs contend that Washington County's and the Agency's "unified emergency

response services, including 911 service and other systems that receive information about

potential emergency situations and that dispatch or facilitate dispatch of personnel . . . to respond

Page 12 -  Defendant Washington County Consolidated Communications Agency's
         Motion to Dismiss Plaintiffs' Complaint

to those situations," discriminate against individuals experiencing mental health crises. Specifically, plaintiffs argue that the Agency discriminates against these individuals by not dispatching first responders to mental health crises who, in plaintiffs' view, have the same level of speed, skill, and training as the responders dispatched to individuals experiencing physical health crises. (*See* Compl. ¶¶ 64, 218, 236, 239-242.)

As explained below, plaintiffs' Complaint does not state cognizable claims for relief under Title II of the ADA or Section 504. First, DRO's claims suffer from a fatal flaw—namely, DRO failed to exhaust in a timely manner all administrative remedies in accordance with the PAIMI Act. If the Court agrees with the Agency's position on administrative exhaustion, then the Court can and should dismiss DRO's claims on this basis alone. Second, plaintiffs' novel discrimination theory suffers from several terminal defects. **First**, "emergency response" is not a singular "service or program at issue;" it is in fact, as plaintiffs plead, multiple services and programs dispatched depending on the type of call at hand. (*See* Background (explaining the various roles of the several agencies involved in emergency responses); Compl. ¶ 13, 15, 86-87.) **Second**, as alleged in the Complaint, Washington County, not the Agency, "has deprived people with mental health disabilities in the County of direct, immediate, and meaningful access to the emergency medical services that are provided to people without such disabilities." (Compl. ¶ 19.) **Third**, even if the Agency does control the emergency response responses in Washington County, Oregon, the Complaint fails to allege facts supporting a conclusion that individuals with disabilities are denied meaningful access to emergency response services. **Fourth**, plaintiffs do not, and cannot, allege that the Agency unlawfully discriminates in how it provides emergency response services to individuals with disabilities compared to non-disabled individuals; instead, plaintiffs allege different treatment by the Agency based on different emergencies. **Fifth**, to the extent plaintiffs' claim is based on alleged "inadequate" mental health care, the claim fails because that is not a basis for a viable discrimination claim. **Sixth**, by seeking a mental health

Page 13 -  Defendant Washington County Consolidated Communications Agency's
              Motion to Dismiss Plaintiffs' Complaint

crisis response tailored to the needs of mental health consumers in a way that is not currently provided, plaintiffs are seeking a different and higher standard of care, or, in other words, "a fundamental alteration to the existing program or benefit." This is not discrimination and is not required under the Acts. **Seventh**, to the extent plaintiffs claim that Defendants should provide new services to individuals experiencing mental health crises, the Acts do not compel any such outcome. For all these reasons, plaintiffs fail to state a claim under the ADA or Section 504, and this Court should dismiss the Complaint. And because amendment would be futile and not serve the goals of efficient and responsible stewardship of public funds, the Agency respectfully requests that the claims against it be dismissed with prejudice.

A.    **Statutory Standards**

Both Title II of the ADA and Section 504 of the Rehabilitation Act "prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). While the ADA applies to public entities, the Rehabilitation Act prohibits discrimination in all federally funded programs. *Id.* Title II of the ADA provides, in part:

> . . . [N]o qualified individual with a disability shall, by reason of such disability, *be excluded from participation in or be denied the benefits of* the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.[7] (Emphasis added.)

42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, *be excluded from participation in, be denied the benefits of, or be subjected to discrimination* under any program or activity receiving Federal financial assistance . . . . (Emphasis added.)

29 U.S.C. § 794(a). "Because the ADA was modeled on section 504 of the Rehabilitation Act,

---

[7] Under the ADA, a "public entity" includes "any State or local government." 42 U.S.C. § 12131(1).

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of Calif.,* 166 F.3d 1041, 1045, n.11 (9th Cir. 1999).

The term "qualified individual with a disability" means

an individual with a disability who, *with or without reasonable modifications* to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (emphasis added).

"Two types of claims are cognizable under Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017). This case does not involve intentional discrimination—it involves a claim for reasonable accommodation. To prove that a public service or program violates Title II of the ADA, a plaintiff must show that: (1) the plaintiff is an individual with a disability; (2) who was otherwise qualified to participate or receive the benefit of a public entity's services, programs or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of a public service, program, or activity or was otherwise discriminated against; and (4) such exclusion, denial of benefits, or discrimination was *because of* the plaintiff's disability. *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014) (emphasis added); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). The complaint must plausibly suggest that disability is the "but-for" cause of discrimination. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) (recognizing the overruling of the Ninth Circuit's former "motivating factor" standard for Title I and Title II ADA claims and holding that a plaintiff "must show that the adverse . . . action would not have occurred but for the disability"). The purpose of the ADA and the Rehabilitation Act is to eliminate discrimination on the basis of disability and to ensure equal treatment for individuals with disabilities and non-disabled individuals. *See Alexander v. Choate*, 469 U.S. 287, 304-305 (1985).

Page 15 -  Defendant Washington County Consolidated Communications Agency's Motion to Dismiss Plaintiffs' Complaint

Crucial to this case, the Ninth Circuit recognizes that the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds in Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (citation omitted); *see Figueira ex rel. Castillo v. Cnty. of Sutter*, 2015 WL 6449151, at *8-9 (E.D. Cal. Oct. 23, 2015) (accord).

The Acts require public entities to provide individuals with disabilities meaningful access to their programs and services. To state a successful disparate treatment challenge under the Acts, "the policy must have the effect of denying meaningful access to public services." *K.M ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013); *see also Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008).

Under established law, "meaningful access" does not guarantee that all recipients will receive the level of services "precisely tailored to his or her particular needs." *Alexander*, 469 U.S. at 303. Furthermore, meaningful access to services does not require a public entity to fundamentally alter existing programs and services administered under policies that do not facially discriminate against individuals with disabilities. *See Alexander*, 469 U.S. at 303. Additionally, public entities are not required to create new programs that provide previously unprovided services to assist individuals with disabilities. *See id.* (holding that the state was not required to extend Medicaid benefits "simply to meet the reality that the handicapped have greater medical needs"); 28 C.F.R. § 35.130(b)(7); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2nd Cir. 1999) ("The ADA requires only that a particular service provided to some not be denied to disabled people. . . . New York cannot have unlawfully discriminated against appellees by denying a benefit that it provides to no one.").

The Acts do not guarantee individuals with disabilities "equal results" from the services provided, nor do the Acts require that services be provided in a manner preferred by an individual with a disability. *Cohen v. City of Culver City*, 754 F.3d 690, 694-95 (9th Cir. 2014);

Page 16 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

*Bird v. Lewis and Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002). Instead, the question is whether individuals with disabilities can participate in and receive the services offered. *Bird*, 303 F.3d at 1019.

The "reasonable modification" or reasonable accommodation provision of the regulations implementing Title II of the ADA states:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination *on the basis of disability*, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity.

28 C.F.R. § 35.130(b)(7) (1993) (emphasis added).[8] "Where the plaintiffs seek to expand the substantive scope of the program or benefit, they likely seek a fundamental alteration to the existing program or benefit and have not been denied meaningful access." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267-68 (D.C. Cir. 2008).

In this case, plaintiffs do not allege, nor can they allege, that Washington County's emergency service system unlawfully discriminates against Wesley and other individuals by denying services because of disability. Indeed, Wesley and all other individuals referenced in the Complaint admittedly received a 9-1-1 response, their Complaint simply expresses plaintiffs' preference for different services. For these reasons, plaintiffs' Complaint fails to state ultimate facts sufficient to constitute any claims for relief.

### B.    Plaintiff Disability Rights Oregon's Claims Fail Because Plaintiff Disability Rights Oregon Failed to Exhaust Its Administrative Remedies.

The PAIMI Act, under which DRO exists, authorizes certain protection and advocacy systems to "pursue administrative, legal, and other appropriate remedies to ensure the protection

---

[8] The implementing regulations to Title II of the ADA refer to "reasonable modifications" instead of "reasonable accommodations," but the terms are interchangeable. *Weinreich*, 114 F.3d at 978, n.1 (citing 28 C.F.R. § 5.130(b)(7) (1993)).

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

of individuals with mental illness who are receiving care or treatment in the State." 42 U.S.C.

§ 10805(a)(1)(B), (C). The PAIMI Act authorizes only those legal actions "instituted . . . on

behalf of an individual with mental illness, an eligible system, or a State agency or nonprofit

organization which entered into a contract with an eligible system." 42 U.S.C. § 10807. Even

under this grant, however, DRO is required to exhaust administrative remedies. Section 10807

provides, in part:

> (a) Prior to instituting any legal action in a Federal . . . court on behalf of a [sic]
> individual with mental illness, an eligible system . . . *shall exhaust in a timely
> manner all administrative remedies* where appropriate. If, in pursuing
> administrative remedies, the system . . . determines that any matter with respect to
> such individual will not be resolved within a reasonable time, the system . . . may
> pursue alternative remedies, including the initiation of a legal action.

42 U.S.C. § 10807 (emphasis added). "[T]o sue under PAIMIA, plaintiffs must first exhaust their

administrative remedies." *Reyes v. United States*, 2023 WL 2338059, at *1 (E.D.N.C. Feb. 2,

2023), *report and recommendation adopted*, 2023 WL 2334416 (E.D.N.C. Mar. 2, 2023), *appeal

dismissed*, 2023 WL 10478382 (4th Cir. May 22, 2023).

The legislative history unquestionably expresses a preference for informal remedies over

litigation as a means of solving the problems of individuals with disabilities. The Senate Report

provides, in part:

> Prior to instituting any legal action in a Federal or State court on behalf of a
> mentally ill person, it is the Committee's intention that the eligible systems or
> programs under subcontract with them *should exhaust all administrative remedies*
> where appropriate. It is the further intention of the Committee that the exhaustion
> of administrative remedies be accomplished in a timely manner.
>
> It is the belief of the Committee that *conciliation, negotiation, mediation and
> other administrative procedures* can work effectively in providing protection and
> advocacy of the mentally ill, *especially because litigation in most instances is
> costly and time consuming.*

. . .

Page 18 -  Defendant Washington County Consolidated Communications Agency's
        Motion to Dismiss Plaintiffs' Complaint

> The Committee intends that the DDP & A System in its new role as the eligible protection and advocacy system for mentally ill persons under this Act *should continue the non-litigative approach to advocacy and dispute resolution and urges the continued use of administrative and alternative remedies prior to the initiation of a legal action.*
>
> It is not the intention of the Committee that the administrative remedies must be pursued for an unreasonable duration, but rather that *whenever possible there should be timely and reasonable attempts made to mediate and negotiate appropriate administrative remedies*. . . .

S. Rep. No. 109, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong. & Admin. News

1361, 1371 (emphasis added). The House Conference Report provides, in part:

> The conferees intend that administrative remedies be exhausted before legal action is initiated. . . . If legal action is initiated, courts retain their prerogative to determine that the issues are not ripe and to remand the matter for further administrative consideration.

H.R. Conf. Rep. No. 576, 99th Cong., 2d Sess., *reprinted in* 1986 U.S. Code Cong. & Admin.

News 1377, 1382-83.

Here, the Complaint assumes that Wesley and DRO's constituents "receiv[e] care or treatment in the State" when they are provided with emergency response services in Washington County. Assuming that is correct, DRO's claims fail because while DRO may be authorized to initiate a legal action on behalf of an individual with a disability, DRO has failed to allege that it exhausted all its administrative remedies, or that it even pursued the required administrative remedies in a timely manner. (*See generally* Compl.) Therefore, under the law governing DRO's authority, no legal action can be initiated unless and until administrative remedies are exhausted.

Accordingly, because DRO has failed to exhaust in a timely manner all administrative remedies, this Court should dismiss this case for failure to state a claim upon which relief can be granted.

Page 19 -  Defendant Washington County Consolidated Communications Agency's Motion to Dismiss Plaintiffs' Complaint

**C.    Plaintiffs Do Not Allege Actionable Disability Discrimination Claims.**

**1.    Plaintiff Misidentifies the Service at Issue.**

When evaluating claims under the ADA and Section 504, courts must focus on narrow programs and benefits offered by a public entity. *See Alexander*, 469 U.S. at 301 & n 21 ("Antidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit"). Plaintiffs contend that the "unified emergency response services, including 911 service and other systems that receive information about potential emergency situations and that dispatch or facilitate dispatch of personnel . . . to respond to those situations" constitutes "a service, program, or activity within the meaning of Title II." (Compl. ¶¶ 236, 249.) But "emergency response" is not a single "program" or a single service offered by the Agency. As alleged in the Complaint, there are several entities involved in emergency responses, and each entity provides its own set of services. (*See* Compl. ¶¶ 13, 86 & nn 33-24, 87.) The entities include Washington County (including the Mobile Crisis Team and WCSO), various law enforcement agencies, various fire departments, including Tualatin Valley Fire & Rescue, and American Medical Response (or AMR). (*See* Compl. ¶¶ 13, 15, 86-87.) And the Agency is the contracted call taker.

In other words, plaintiffs fail to identify one particular existing service for which they require an accommodation to access—is it AMR's ambulance services, or a city police department's law enforcement services? *See, e.g.*, *Alexander*, 469 U.S. at 303 (holding that an ADA claim involved a "package of services [that] has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered"); *Rodriguez*, 197 F.3d at 618 (defining the service at issue as "independently tasked safety monitoring" when the plaintiffs challenged the state's failure to include that service among its personal care services offerings). This shortcoming alone is fatal to plaintiffs' claims.

Two cases involving cities' emergency response services help illustrate the need to narrowly define the service or benefit at issue in an ADA lawsuit. In *Communities Actively*

Page 20 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

*Living Independent & Free v. City of Los Angeles*, 2011 WL 4595993 (C.D. Cal. 2011)
("*Communities*"), and in *Brooklyn Center for Independence of the Disabled v. Bloomberg*,
980 F. Supp. 2d 588 (S.D.N.Y. 2013), the plaintiffs challenged the cities' provision of particular
services offered to residents with disabilities and non-disabled residents during an emergency.
*Communities*, 2011 WL 4595993, at *2; *Brooklyn Center*, 980 F. Supp. 2d at 644. In
*Communities*, the district court found that the City of Los Angeles failed to provide
accommodations in the provision of services to notify, evacuate, transport, and shelter its
residents in the event of an emergency or disaster because those services lacked accommodations
that would provide emergency notifications to people with auditory impairments or cognitive
disabilities and transportation or temporary housing to people with disabilities. *Communities*,
2011 WL 4595993, at *13. Similarly, in *Brooklyn*, the court held that New York City did not
accommodate the needs of people with disabilities in responding to natural disasters by failing
"to ensure that people with disabilities are able to evacuate before or during an emergency," "to
provide sufficiently accessible shelters," and to "sufficiently inform people with disabilities of
the availability and location of accessible emergency services." *Brooklyn Center*, 980 F. Supp.
2d at 597. In sum, the courts in both cases found that the city government failed to provide
reasonable accommodations during an emergency or disaster that would allow for individuals
with disabilities to meaningfully access the same services that individuals without disabilities
would access when facing the same emergency. *Id.*; *Communities*, 2011 WL 4595993, at *13.

Here, however, plaintiffs ask the Court to unfairly compare emergency responses for
different types of emergencies involving different circumstances—some situations involving
weapons and suicidal behavior and other situations involving physical ailments—invoking quite
different services by vastly different entities. (Compl. ¶¶ 238-239, 252-253.) In essence,
plaintiffs rely on the mistaken belief that the ADA requires that a group of possible services
aimed at one type of emergency—mental health emergencies—must have similar resources and

Page 21 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

outcomes as a different group of possible services aimed at different kinds of emergencies—physical health emergencies. (*Id.*; *see also* Compl. ¶¶ 2-3.) In other words, if a person with a mental health condition is experiencing a heart attack, plaintiffs are not alleging that EMS will fail to show up to help that individual with the emergency. Instead, plaintiffs are alleging that if a person with a cardiac condition is experiencing a mental health crisis, plaintiffs want someone with completely different expertise to come to that person's aid. Because the emergencies are different and the services at issue would necessarily vary based on the particular emergency, the comparison is not appropriate. This is why plaintiffs' Complaint fails to state claims. The ADA offers a sensible approach to determining whether there is discrimination by requiring an examination of whether individuals with disabilities lack meaningful access to a particular service provided to individuals without disabilities. *Am. Council of the Blind*, 525 F.3d at 1267; *see Hargrave v. Vermont*, 340 F.3d 27, 36-37 (2d Cir. 2003) ("A program may discriminate on the basis of mental illness if it treats a mentally ill individual in a particular set of circumstances differently than it treats non-mentally ill individuals in the same circumstances.").

Here, because plaintiffs do not identify a particular service that treats non-disabled individuals differently than disabled individuals, their request for "emergency services" tailored for mental health crises is simply another way of asking for preferred services that plaintiffs believe would better suit mental health crises than the ones Washington County (not the Agency) currently has to offer. *See Alexander*, 469 U.S. at 303 (holding that Medicaid "benefits" under the Rehabilitation Act are "the individual services offered" not the "amorphous objective of 'adequate health care'"). Neither of these is a cognizable basis for an ADA claim.

### 2. The Agency Does Not Deny Meaningful Access to Emergency Services.

Plaintiffs' Complaint also should be dismissed against the Agency because the Complaint admits that the Agency does not discriminate against individuals with psychiatric disabilities. Although the Complaint includes allegations regarding the Agency's current dispatch system, it

Page 22 -  Defendant Washington County Consolidated Communications Agency's
         Motion to Dismiss Plaintiffs' Complaint

makes clear who is responsible for the emergency response services available in Washington
County, Oregon—Washington County. Indeed, the Complaint alleges that the Agency's hands
are tied due to Washington County's decisions and available funding. As noted above, the
Complaint alleges that "the County has not incorporated the Mobile Crisis Team into the
Agency's dispatch system. *Thus, the Agency cannot directly dispatch the Mobile Crisis Team to
mental health crises.* As a result, the Agency routes mental health crises calls to the various law
enforcement agencies in the County, including [WCSO]." (Compl. ¶ 15 (emphasis added).) The
Complaint also alleges that "*the County's failure to fully integrate its Mobile Crisis Team into
the Agency's dispatch system* has deprived people with mental health disabilities in the County of
direct, immediate, and meaningful access to the emergency medical services that are provided to
people without such disabilities." (Compl. ¶ 19 (emphasis added).) The Complaint adds that
"[s]tructural barriers of *the County's own creation* also prevent appropriate responses to mental
health crises." (Compl. ¶ 124 (emphasis added).)

Plaintiffs' Complaint is devoid of any allegations that the Agency controls the funding
for the services at issue in the Complaint. In other words, plaintiffs' own allegations show that
the Agency does not have control over the available responses and services available for mental
health crises.[9] Therefore, the Agency must be dismissed.

### 3.    Plaintiffs Are Not Denied Meaningful Access to Emergency Services.

Even if the Agency did control the available responses and services available for mental
health crises, which it does not, plaintiffs' claims against the Agency also must be dismissed
because plaintiffs' claim for "reasonable accommodation" rests on the legally unsupportable
allegation that individuals with psychiatric disabilities have been denied "meaningful access" to

---

[9] To be clear, the Agency is not arguing that Washington County is liable to plaintiffs for the alleged failure to
dispatch only mental health professionals to mental health crises.

Page 23 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

Washington County's emergency response system. This Court should reject plaintiffs'

conclusory allegations that individuals with mental disabilities are denied "meaningful access."

As noted above, to survive a motion to dismiss, plaintiffs must identify one particular

service requiring accommodation to access. *Alexander*, 469 U.S. at 303. Reasonable

accommodations are evaluated by whether they provide a disabled individual with "meaningful

access" to programs or services. *K.M ex rel. Bright*, 725 F.3d at 1099 (applying meaningful

access standard to determine reasonable accommodation under the ADA); *Mark H. v.*

*Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010) (applying "meaningful access" standard to

determine reasonable accommodation standard under Section 504).

The "meaningful access" standard "requires a court to consider whether, 'when viewed in

its entirety,' the program at issue is accessible." *Kirola v. City and Cnty. of San Francisco*,

860 F.3d, 1164, 1183 (9th Cir. 2017); *see id.* at 1182 (citing 28 C.F.R. § 35.150); *Lentini v. Cal.*

*Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) (a "modification is necessary, if

but for the modification, plaintiffs would be effectively excluded from the benefit at issue"). That

is, meaningful access is not denied simply because individual aspects or elements of a program

are not accessible to disabled individuals. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d

982, 986-88 (9th Cir. 2014) (inaccessible football field bleachers did not violate the ADA when

disabled patrons could watch the game from satisfactory alternative locations). Additionally,

meaningful access does not require a defendant to provide services in the exact manner preferred

by the plaintiff. *Bird*, 303 at 1019.

The Acts ensure the equality of *access* to public programs, services, and benefits, and not

the *quality* of the services provided. *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 959

(9th Cir. 2017) (noting that a public entity may be liable under the Acts only "if it intentionally

or with deliberate indifference fails to provide meaningful access or reasonable accommodation

to disabled persons") (citation omitted).

Page 24 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

Here, plaintiffs do not allege they are excluded from receiving Washington County's emergency response services—in fact, emergency response services arrived in all described instances. Instead, plaintiffs allege that the services provided by law enforcement officers who are dispatched to mental health emergencies fail to provide adequate mental health treatment.[10] Plaintiffs' requested "accommodation" of dispatching only qualified mental health providers to the scene of mental health related emergencies with no police presence goes well beyond "meaningful access" and fails to state a claim for disability discrimination.

4.    **Plaintiffs Do Not Allege Discrimination on the Basis of Disability; Plaintiffs Allege Different Treatment on the Basis of Different Emergencies.**

Under the ADA and the Rehabilitation Act, the duty to provide reasonable accommodation(s) arises only when a public service or program discriminates on the basis of disability. *Weinreich*, 114 F.3d at 978. To prevail on their claims, plaintiffs must allege facts demonstrating that a program or service "prevents qualified disabled people from having 'meaningful access to a benefit *because of their disability*." 114 F.3d at 979 (emphasis in original); *see* 28 C.F.R. § 35.130(a), (b)(l) (describing unlawful discrimination "on the basis of disability" as the provision of unequal treatment in services, aid, and benefits provided to qualified individuals with disabilities compared to the provisions of services, aids, and benefits to individuals without the disability).

Setting aside conclusory allegations, the Complaint does not allege facts showing that the Agency excluded individuals with psychiatric disabilities from the services provided uniformly in response to 911 calls *because of their disability*. The Complaint does not include any facts showing that the Agency call takers actually know that the callers are individuals with disabilities or that the subject(s) of the calls have a disability. On the contrary, the Call Taking Manual concedes that a call taker will be able to obtain limited information. (*See* IRG Decl.,

---

[10] The Agency does not agree that Washington County's emergency response services are inadequate.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

Ex. 1, at 7.) Notably, in most circumstances, including those described in the Complaint, the caller is not the person having a mental health crisis but instead is a third party observing concerning behaviors. (Compl. ¶¶ 139, 169, 187, 202.) The Complaint also does not include any facts showing that the service, aid, and benefit provided to individuals with psychiatric disabilities is different, unequal, or substantially impaired as compared to non-disabled individuals. On the contrary, the Complaint alleges that the emergency response services dispatched by the Agency to different categories or types of emergencies are provided uniformly and the treatment afforded is balanced. (*See* Compl. ¶¶ 87, 106, 110).

Plaintiffs' discrimination claims are based on an unfair comparison of discrete services provided in response to different emergency types. Plaintiffs argue that because the services dispatched for mental health related emergencies are different than those dispatched for physical health crises and are, in plaintiffs' view, ineffective for treating individuals experiencing mental health crises at the scene of the crises, Defendants have violated the Acts. These claims fail because the Acts do not require distinct programs to provide the same or similar discrete services, nor do the Acts guarantee equal results or preferred outcomes. *See Does 1-5 v. Chandler*, 83 F.3d 1150, 1151-52 (9th Cir. 1996) (the discrepancy between benefits for dependent children and for disabled persons did not violate Title II because the "ADA does not require equivalent benefits in different programs"); *see also Alexander*, 469 U.S. at 303.

Plaintiffs concede, as they must, that different emergency types uniformly receive different services. Plaintiffs allege that medical care by an EMS paramedic is dispatched for 911 calls concerning physical health emergencies. (Compl. ¶ 99.). But plaintiffs are not seeking those same EMS services for mental health related emergencies. Instead, plaintiffs are critical of the law enforcement services dispatched for 911 calls related to mental health, which, depending on the circumstances, involve the presence of an ambulance or an MHRT. (Compl. ¶¶ 87, 107, 111.) Instead of seeking equal access to EMS services, plaintiffs insist on Washington County creating

Page 26 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

and providing entirely different services by qualified mental health providers at the scene of
mental health related emergencies and eliminating the services provided by law enforcement
officers. (Compl. ¶ 200.) Even if plaintiffs are correct that, as a policy matter, this is the best
response to mental health emergencies, their claim is not one of unlawful discrimination against
individuals with mental disabilities; instead, it is a plea for the creation and provision of new
services for mental health related emergencies. Plaintiffs' plea for new services does not support
a viable disability discrimination claim under the ADA or the Rehabilitation Act. *See Doe v.
Pfrommer*, 148 F.3d 73, 82 (2nd Cir. 1998) (the Acts do not provide a cause of action for
challenging the adequacy of state programs without showing disparate or discriminatory
treatment).

The Ninth Circuit's decision in *Chandler* is instructive. There, the Ninth Circuit affirmed
the district court's ruling that the legislature's welfare amendments to provide eligible "needy"
individuals with dependent children benefits for *unlimited* duration while providing "needy"
disabled individuals benefits for only *one year* did not violate the ADA because disabled
individuals' ineligibility for the longer-term benefits was not based on their disability. *Chandler*,
83 F.3d at 1151-52. The district court concluded that there was no "plausible basis" for arguing a
violation of Title II of the ADA because the factor of the eligibility criteria was "not one of
disability, but rather one of having dependent children." *Chandler*, 83 F.3d at 1153. After
determining that the "key issue" was one of "characterization" of the "program," the Ninth
Circuit rejected the plaintiffs' argument that the program "is essentially a single, unified program
with the single essential purpose of providing income support for the needy." *Chandler*, 83 F.3d
at 1155. Recognizing that non-disabled "needy" without dependent children were not entitled to
funds under the program suggested the proper view was of two discrete forms of benefit
providing for two discrete subgroups of the needy population, *id.*, the court concluded that the
program was "functionally" a program of support for "needy" families and a program of support

Page 27 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

for the "needy" individuals with disabilities and "the ADA does not require equivalent benefits in different programs." *Id.*

Here, contrary to plaintiffs' characterization of Washington County having the single essential purpose of providing immediate medical services to people experiencing emergencies, the 911-emergency response system is a public safety dispatch program with the recognized purpose to "[p]rovide consistent statewide access to police, fire, and emergency medical service through the emergency communications system when an emergency call is made to 9-1-1." OAR 104-080-000(1)(a) (stating the purposes of the State of Oregon's 9-1-1 program). The benefit of the 911 system is immediate access to police, fire, and medical services for various emergencies—not the immediate access to *optimal* care that is tailored to the particular needs of the individual who is the subject of the 911 call.

Similar to *Chandler*, plaintiffs cannot assert plausible violations of the Acts because *the factor determining the immediate response services dispatched to an emergency is not one of disability, but rather one of emergency type*. The fact that medical aid is dispatched for physical health emergencies does not make it discriminatory that law enforcement is dispatched for emergencies that present mental health related safety concerns of a danger to self or others. The ADA does not require equivalent services in response to all 911 emergencies, only that the services are provided without distinction between disabled and non-disabled individuals.

Because the Complaint fails to plead facts of discrimination because of disability in violation of the Acts, this Court should dismiss the Complaint.

### 5.    "Inadequate" Mental Health Care is Not Actionable Discrimination.

Plaintiffs challenge the adequacy and effectiveness of mental health treatment provided at the scene of a mental health related emergency, without distinction between individuals with disabilities and non-disabled individuals. The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and services enjoyed by all, but those Acts do

Page 28 -  Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

not provide a general cause of action for challenging the medical treatment of their underlying disabilities. *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) (noting that a Title II claim "survives only concerns the 'adequacy' of the services provided") (quoting *Buchanan v. Maine*, 469 F.3d 158, 174-75 (1st Cir. 2006).

The relief that plaintiffs seek is not an "accommodation" or "modification" for access to current emergency medical services. Instead, it is a transparent request for what plaintiffs consider to be "adequate" emergency mental health treatment for their disability, not because of their disability. The ADA and Rehabilitation Acts prohibit "discrimination because of disability, not inadequate treatment for disability." *Simmons*, 609 F.3d at 1022; *see Figueira ex rel. Castillo v. Cnty. of Sutter*, 2015 WL 6449151, at *8-9 (E.D. Cal. Oct. 23, 2015) (dismissing ADA and Rehabilitation Act claims arising from suicide of mentally ill inmate following allegedly inadequate health care in custody, noting that "[t]he defendants cannot have violated the ADA by failing to attend to the medical needs of disabled prisoners"); *Gordy v. Agamyan*, 2018 WL 3129779, at *4 (C.D. Cal. June 22, 2018) (dismissing ADA and Rehabilitation Act claims alleging mental health care received was inadequate in response to a mental health crisis where mentally ill prisoner pleaded that he was "excluded from the service, program, or activity of placement on suicide watch and [into a mental health crisis bed] MHBC); *Washington v. California Dep't of Corrections & Rehabilitation*, 2019 WL 1206487, at *3, 6 (C.D. Cal. Mar. 14, 2019) (dismissing ADA and Rehabilitation Act claims alleging improper treatment during a mental health crisis and seeking injunctive relief to "replace correctional officers in CSP-LAC's Mental Health Services Delivery System . . . with Medical Technical Assistants").

Accordingly, plaintiffs fail to state cognizable claims for relief under the Acts.

### 6.   Plaintiffs' Request for a Higher Standard of Care Is Not Covered Under the ADA.

The ADA does not create an entitlement to a particular standard of care in the provision of services to individuals with disabilities. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603

Page 29 -  Defendant Washington County Consolidated Communications Agency's
          Motion to Dismiss Plaintiffs' Complaint

n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they may render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.").

In *Alexander*, the Court held that Medicaid's limitation of inpatient coverage to 14 days for all beneficiaries did not deny individuals "meaningful access" to the service, even though the plaintiffs argued that individuals with disabilities required additional days of coverage to obtain "adequate health care." 469 U.S. at 303. The Court reasoned that the state was not required to "guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs" and "the benefit provided remains the individual services offered—not 'adequate health care.'" *Id.* The Court explained: "We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'" 527 U.S. at 603 n.14 (citation omitted) (quoting *id.* at 623, 624 (Thomas, J., dissenting) (contending that "the type of claim approved of by the majority does not concern a prohibition against certain conduct (the traditional understanding of discrimination), but rather concerns imposition of a standard of care")).

Courts of appeals have routinely applied this standard. *See Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) (collecting cases). For example, in *Buchanan*, the plaintiff challenged the lack of procedures and training to assist officers in "successfully communicating" with mentally ill individuals. 469 F.3d at 177 (emphasis omitted). The First Circuit rejected this argument and affirmed summary judgment for the defendant because "the claim was not about . . . denial of services, but rather . . . [the] adequacy of treatment." *Id.* at 173. Similarly, in *Disability Rights New Jersey, Inc. v. Commissioner, New Jersey Department of Human Services*, 796 F.3d 293 (3d Cir. 2015), the plaintiff challenged a lack of judicial process before medication was forcibly administered to psychiatric patients. 796 F.3d at 304. The Third Circuit rejected an

Page 30 -  Defendant Washington County Consolidated Communications Agency's
         Motion to Dismiss Plaintiffs' Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

ADA challenge to the policy, in part, because the service at issue was not provided to nondisabled individuals and "allowing [the ADA claim] could improperly transform the ADA from an antidiscrimination statute into a law regulating the quality of care the States provide to the disabled." 796 F.3d 293, 307 n.5.

Here, plaintiffs seek a permanent injunction that would require (in their opinion) enhancing the care an individual receives in Washington County, Oregon. (*See* Compl. ¶ 31; Compl., at 59 (Prayer for Relief).) Plaintiffs acknowledge that law enforcement officers and an ambulance respond to calls seeking assistance with mental health emergencies. (Compl. ¶ 87.) But this response is not enough for plaintiffs because, according to plaintiffs, law enforcement officers are not the right people to be responding to mental health emergencies because law enforcements officers are not properly or sufficiently trained to handle mental health crises. Plaintiffs believe that mental health professionals could do it better. (Compl. ¶¶ 59-60, 64, 74.) To support this claim, plaintiffs extensively reference national experts discussing best practices in a mental health crisis requiring a different type of response. (Compl. ¶¶ 24, 43-49, 75.)

Put simply, plaintiffs' claim is that Defendants' current response to mental health emergencies is not good enough. But whether the services provided to individuals with disabilities are adequate is a question of standard of care, not discrimination. "Neither the ADA nor the Rehabilitation Act establish an obligation to meet a disabled person's particular needs vis-à-vis the needs of other handicapped individuals, but mandate only that the services provided . . . to non-handicapped individuals not be denied to a disabled person because he is handicapped." *Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998). Thus, the applicable question under the ADA is not, as plaintiffs suggest, whether an individual experiencing a mental health emergency receives care at the same level as a non-disabled individual experiencing a physical emergency. (*See* Compl., (Prayer for Relief) (seeking "parity" between physical and mental health responses).) Instead, the ADA asks whether an individual with a psychiatric disability

Page 31 -  Defendant Washington County Consolidated Communications Agency's
            Motion to Dismiss Plaintiffs' Complaint

experiencing a physical emergency can access the same care a non-disabled individual receives when experiencing a physical emergency or whether an individual with a psychiatric disability experiencing a mental health emergency can access the same care a non-disabled individual receives when experiencing a mental health emergency. *See Disability Rts. New Jersey, Inc.*, 796 F.3d at 305 ("[W]e are unaware of any case holding that a Title II violation can be stated in the absence of an allegation that a qualified person with a disability has been denied access to a public service, program, or activity to which nondisabled people have access."); *Alexander*, 469 U.S. at 303 (holding that "benefits" under the Rehabilitation Act are "the individual services offered" not the "amorphous objective of 'adequate health care'"). The Complaint does not allege that individuals with disabilities are denied access to any program available to individuals without such disabilities. Plaintiffs, therefore, fail to state a claim under the ADA.

### 7.    Plaintiffs' Request for New Services Is Not Covered Under the ADA.

Accepting the legal truism that the ADA does not require a particular standard of care, there is also the established principle that Title II of the ADA does not require public entities "to provide new programs or services to the disabled which it has not previously provided to any group." *Buchanan*, 469 F.3d at 173; *Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("It is clear from the language of Title II and the integration regulation that public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons."); *Olson v. Allen*, 2019 WL 1232834, *4 (D. Or. Mar. 15, 2019) (citing case law for the proposition that "the ADA does not mandate the provision of new benefits"). Instead, "[s]tates must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." *Olmstead*, 527 U.S. at 603 n.14. The ADA thus seeks to ensure "even handed treatment" in the services provided and does not require an increase in services to achieve "equal results." *Alexander*, 469 U.S. at 304. Plaintiffs' request that Washington County (and the

Page 32 -  Defendant Washington County Consolidated Communications Agency's
        Motion to Dismiss Plaintiffs' Complaint

Agency) provide new services for individuals with psychiatric disabilities fails to state a claim under this prong of the ADA.

Several cases support the Agency's position. In *Rodriguez*, the plaintiffs argued that the state's failure to provide safety-monitoring services to individuals with mental disabilities when the state provided other personal care services to Medicaid beneficiaries with physical disabilities violated the ADA. 197 F.3d at 614. The plaintiff argued that the additional services were necessary for individuals with mental disabilities to remain in their home, which was the state's aim in providing other personal care services for individuals with physical disabilities. *Id.* The Second Circuit rejected this argument and found that where the state did not provide safety-monitoring services to the physically disabled, the ADA did not compel the state to provide such services to the mentally disabled. *Id.* at 618–19. Similarly, in *Doe*, the Second Circuit rejected an ADA claim based on the plaintiff's argument that the state's vocational services for disabled individuals failed to provide a particular service tailored to the plaintiff's disability. 148 F.3d at 83. The court held that where the state did not already provide the requested service, the ADA did not compel the creation of such a service because "the central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded treatment' in relation to the able-bodied." *Id.*

Here, in addition to requesting a higher level of care for the services provided to individuals with disabilities experiencing mental health crises, plaintiffs also appear to demand the creation of new services. Like the *Rodriguez* plaintiffs, plaintiffs argue that Washington County needs to provide additional services tailored to psychiatric disabilities. Specifically, plaintiffs allege that "[t]he County itself appears to recognize the need for reform," Compl. ¶ 13, and Washington County should implement and operate an emergency response program that "ensure[s] that mental health professionals are the default first responders for typical mental health emergencies," Compl., at 59 (Prayer for Relief), a significant change in Washington

Page 33 -  Defendant Washington County Consolidated Communications Agency's
        Motion to Dismiss Plaintiffs' Complaint

County's current practice. At bottom, plaintiffs do not want law enforcement as the default responder to mental health emergencies. Plaintiffs want Washington County to replace a currently offered service with a new service that is not currently offered, whether to individuals with psychiatric disabilities or individuals without such disabilities. Plaintiffs want Washington County to make mental health professionals the default responders for mental health emergencies. (*See, e.g.*, Compl., at 59 (Prayer for Relief).) Put another way, plaintiffs do not allege that Washington County or the Agency is currently sending mental health professionals to respond to mental health emergencies experienced by individuals without a psychiatric disability and sending law enforcement to respond to mental health emergencies experienced by those with psychiatric disabilities. The point is this: Plaintiffs are seeking to tailor a new service for individuals with a specific disability. That is not an ADA or a Section 504 claim. This is a plea to the Oregon legislature. Accordingly, this Court should dismiss the claims with prejudice.

## VI.    CONCLUSION

For the reasons stated above, this Court should dismiss plaintiffs' Complaint with prejudice.

DATED this 19th day of April, 2024.

MILLER NASH LLP

*s/Iván Resendiz Gutierrez*
Heather J. Van Meter, OSB No. 983625
heather.vanmeter@millernash.com
Iván Resendiz Gutierrez, OSB No. 154617
ivan.resendiz@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendant Washington County*
*Consolidated Communications Agency*

4889-2955-4597.1

Page 34 -   Defendant Washington County Consolidated Communications Agency's
Motion to Dismiss Plaintiffs' Complaint