**Karen O'Kasey,** OSB No. 870696
E-mail: kok@hartwagner.com
**Ruth A. Casby**, OSB No. 944225
E-mail: rac@hartwgner.com
**Zachariah H. Allen**, OSB No. 122729
E-mail: zah@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

<u>Of Attorneys for Defendant Washington County</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon,<br><br>Defendants. | No. 3:24-cv-00235-SB<br><br>**DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Washington County submits the following reply in support of its Rule 21 Motions.

/ / /

/ / /

Page 1 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

## SUMMARY OF REPLY

Plaintiffs' arguments in opposition to Washington County's and co-defendant Washington County Consolidated Communications Agency's ("Agency") motions to dismiss do not save their legally invalid disability discrimination claims under the ADA and Rehabilitation Act ("Acts"). Plaintiffs inappropriately ask this Court to mandate that the 911 emergency response system for Washington County must dispatch qualified mental health professionals *only* as first responders to the scene of mental health related emergencies. The Acts do not authorize this court to compel the creation, funding, and implementation of this fundamental change to the operation of the 911 program.

Plaintiffs do not, because they cannot, allege facts showing discrimination based on disability. They also do not, because they cannot, plausibly allege that individuals with mental health disabilities are denied meaningful access to the public benefit served by the 911 emergency response program. Instead, their claims rest on the incorrect argument that the 911 program violates the Acts because mental health related emergencies are not treated solely as "health" emergencies and their "accommodation" is necessary for people with mental health disabilities to enjoy meaningful access to the benefit of the program, as if only mental health intervention is needed at the scene of the emergency.

Plaintiffs' arguments are without merit because they rely on a false construct of distinct and obvious "health" emergencies to claim that mental health related emergencies are like physical health emergencies and therefore it is discriminatory to dispatch medical services as first responders to physical health emergencies and not dispatch mental health services as first responders to mental health related emergencies. The difference in emergency responses for qualitatively different emergencies without distinction between disabled and non-disabled individuals does not support plaintiffs' claims.

Additionally, plaintiffs rely on the fallacy that 911 calls involving persons experiencing a mental health crisis present discernible "health" emergencies. Plaintiffs do not plead, because they cannot, that 911 callers always articulate specific reasons for the emergency in such a clear manner

Page 2 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

**HART WAGNER LLP**
**1000 S.W. Broadway,**
**Twentieth Floor**
**Portland, Oregon 97205**
**Telephone: (503) 222-4499**
**Facsimile: (503) 222-2301**

that 911 operators know that only mental health professionals should be dispatched. As plaintiff's allegations demonstrate, dispatch of emergency services is based on *the urgent safety concerns reported by the 911 caller*, and *not* on whether any individual involved in the situation has a mental health disability.

While plaintiffs' allegations recognize that the purpose of the program is to provide access to fire, police, and emergency medical services in response to 911 calls and their opposition correctly notes the interconnectedness of the various response services, their arguments go astray by focusing solely on emergency medical services and improperly identifying the public benefit as providing optimal medical treatment at the scene. Rather, the public benefit served—which is consistent with the broader purpose of the program—is providing immediate fire, police, and medical responses to address all issues presented in the exigent circumstances described by the 911 caller, and not entitlement to a singular response of optimal medical care in all emergency situations.

Plaintiffs challenge the adequacy of 911 response services to treat a mental health crisis at the scene and request a new response of mental health intervention only that the program does not offer to any individual in any type of emergency. Plaintiffs' conclusory allegations that the operation of the 911 emergency response system unduly burdens people with mental health disabilities do not state legally viable claims under the Acts because different responses to qualitatively different emergency situations does not raise an issue of unlawful disability discrimination.

**LEGAL MEMORANDUM**

I. **Plaintiffs' claims fail because they rely on the false construct of distinct and obvious "health" emergencies that require "health" intervention services only.**

Plaintiffs' claims rest on the argument that the 911 emergency response program violates the Acts by denying individuals with mental health disabilities equal access to the benefits of the program because dispatching law enforcement as first responders to mental health related emergencies "*impairs [the] purpose of providing appropriate responses [to] health emergencies of*

Page 3 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

*all types.*" Pls' Opposition, p. 2 (emphasis added). Their claims fail because the purpose of the 911 multi-service emergency response system is much broader than plaintiffs narrowly describe and the exigent circumstances of mental health related emergencies do not present obvious and distinct "health" emergencies that demonstrate a need for mental health intervention only.

The Oregon Department of Emergency Management has mandated that the purpose of the 911 emergency system program is to "[p]rovide consistent statewide access to police, fire, and emergency medical services * * * when an emergency call is made to 9-1-1." OAR 104-080-0000 (Purpose-Emergency Communications System Program). Plaintiffs' arguments contrive a narrow purpose of providing appropriate "health" emergency services that includes optimal treatment at the scene, yet correctly recognize the broader scope of the 911 system as providing police, fire, and AMR services. (Compl., ¶86).

Their complaint also correctly recognizes that Agency call takers must "determine how to respond to 911 calls, including which services, if any, should be dispatched[,]" and they do so based on the nature of the emergency presented by the 911 caller. (Compl., ¶¶84, 86, 106, 110); *see* Pl's Opposition, p. 4 ("dispatching emergency responders to those calls, based on the emergency described"). It follows from the broad purpose of the emergency response program that the benefit offered is the immediate access to "police, fire, and emergency medical services" to stabilize the safety issues presented in the exigent circumstances described by the 911 caller.

Plaintiffs' "failure to accommodate" claims are built on the false premise that mental health related emergencies can be packaged into a contrived "health" emergency box that presents a discernable "health" concern only. Plaintiffs also erroneously view the dispatch of "emergency medical services" in isolation and separate from the other emergency services that are integral parts of the 911 emergency response program. Based on these analytical flaws, plaintiffs implausibly contend that mental health related emergencies are "like physical health emergencies" and the Acts require mental health related emergencies to "receive an effective health response" only. Pls' Opposition, p. 1. The emergency response system does not serve the single purpose of providing emergency "health" responses, nor do the Acts require the 911 program to dispatch only mental

Page 4 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

health services when a 911 caller describes an emergency that appears to involve a mental health crisis.

Plaintiffs' claims rest on a broad (and incorrect) assumption that 911 callers articulate obvious "health" emergencies when the exigent circumstances involve a person that is or may be experiencing a mental health crisis. Their position ignores the reality that multiple safety concerns are typically presented by the 911 calls. Even plaintiffs' allegations of the mental health emergencies described in their complaint recognize the reality of co-existing criminal or dangerous acts, perceived threats or risks of violence, and safety concerns for persons or property, including the subject of the call, bystanders, and responders. (Compl., ¶¶139, 148, 169, 173, 202). Plaintiffs' concede that the Agency must determine the nature of the emergency and discern what the primary safety concerns are based on the caller's reported information. (Compl., ¶¶84-87, 106, 110). Plaintiffs do not allege, because they cannot, that 911 callers articulate reasons that support the dispatch of mental health intervention only.

In physical health emergencies, 911 callers are typically able to adequately explain that the circumstances involve the subject's physical safety and the need for emergency medical services is clear. In contrast, in emergencies that do or may involve a person experiencing a mental health crisis, 911 callers do not describe the circumstances as presenting a need for mental health services only. Typically, those emergencies include immediate safety concerns that are above and beyond the mental health of the subject individual. Plaintiffs' construct of mental health emergencies as presenting obvious and distinct "health" emergencies is not supported by the allegations of their complaint or the realities of the 911 emergency public service program that their complaint, in fact, recognizes.

By focusing narrowly on "health" emergency services only and ignoring the reality that 911 calls present different and often multifarious safety concerns, plaintiffs erroneously describe the benefit provided by the 911 program as dispatching emergency medical services only for "health" emergencies and argue that individuals with mental health disabilities are denied access to the response services that are provided for disabled and non-disabled individuals experiencing a

Page 5 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

physical health emergency. Under plaintiffs' flawed view, meaningful access to the program's benefits requires the dispatch of qualified mental health providers only to every mental health related emergency.

Setting aside that plaintiffs' claims fail because the 911 program does not currently offer mental health interventions only as first responders, plaintiffs' claims also fail because, properly viewed, the benefit of the 911 emergency services program is the dispatch of police, fire, and medical intervention interventions with the aim of stabilizing the urgent safety concerns that are communicated through a 911 call. Contrary to plaintiffs' premise, individuals with mental health disabilities are not denied this benefit. Rather, the benefit of dispatched emergency services to stabilize reported safety concerns is the same for all individuals and the response services offered are different because the safety concerns presented by the 911 caller are different, not because the subject of the 911 call may be a person with a mental health disability.

**II. Plaintiffs incorrectly define the purpose and benefit of the 911 emergency response service.**

Plaintiffs state that the purpose of the 911 emergency response system "is not defined by regulation," yet it is. Pl's Opposition, p. 10. They also incorrectly state that defendants view the 911 response system as more than one program with the purpose of providing separate services for physical health emergencies and mental health related emergencies. *Id.* at 13-15. Plaintiffs' arguments are off base and without merit.

As explained above, Oregon's Department of Emergency Management has, by regulation, defined the purpose of the 911 response program. That definition makes clear that the 911 emergency response system is a program that expansively serves the purpose and public benefit of dispatching fire, police, and emergency medical services to stabilize urgent public safety concerns communicated by a 911 caller. Contrary to plaintiffs' narrow focus on artificially designated "health" emergency services only, plaintiffs' opposition and cited case law acknowledge that a regulatory definition of a program's purpose will control (*Id.* at p. 10), and their complaint correctly alleges the broader scope of the 911 system. (Compl., ¶86). Accordingly, there is no basis to accept

Page 6 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

**HART WAGNER LLP**
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

plaintiffs' conclusory allegations that ignore the program's defined purpose and mischaracterize the public benefit as immediate access to optimal "health" care tailored to the particular mental health needs of the individual who is the subject of the 911 call.

Plaintiffs' narrow framing of the purpose and benefit served by the 911 program conflicts with the Department of Justice's (DOJ) Statement of Interest they rely on.  As plaintiffs' opposition states, the DOJ's position is that an emergency response system is "properly defined as a single service, program, or activity" and the types of emergencies should not be viewed in "rigid separation" because of "the interconnected nature of the [government entity's] system".  Pls' Opposition, p. 11 (citing DOJ Statement of Interest, pp. 12, 14).  Washington County agrees with this guidance, while plaintiffs' allegations and arguments conflict with it.  Plaintiffs improperly isolate mental health related emergencies and attempt to package them as obvious "health" emergencies.  In doing so, they disregard the interconnected nature of the 911 system that serves *all* emergency situations with immediate interventions to stabilize the primary safety concerns at the scene.  This benefit is indiscriminately provided to disabled and non-disabled individuals.

Despite their opposition argument, plaintiffs' allegations do not rely on a view of the 911 program "as a unified whole."  Pls' Opposition, p. 15.  Plaintiffs deny that they challenge emergency services dispatched in response to mental health related calls only, yet they do not coherently explain why and how their allegations consider the program in its entirety.  Instead, they argue that they have alleged that the 911 program is "one unified emergency response system that provides a variety of "responses" but, in the same sentence, they pivot to meaningless semantics suggesting that emergency "responses" are not "services" and retreat to their narrow focus solely on emergencies they self-designate as "health" emergencies.  *Id.* at p. 13.  This contradiction is further illustrated by plaintiffs' argument that the purpose of the 911 program is (1) to receive information about all potential emergency situations, (2) to respond to those situations with appropriate personnel, and (3) to provide "the benefit of emergency medical intervention to *all*."  *Id.* at p. 15 (italicized emphasis in original, underlined emphasis supplied).

Page 7 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

However, when properly viewed as a "whole" of "interconnected services", the benefit of the program is *not* a rigid response of emergency medical intervention to all. Rather, it is the dispatch of response services to stabilize the urgent public safety concerns communicated by the 911 caller. Contrary to plaintiffs' allegations and singular focus on emergency "health" interventions, it cannot be ignored that the program responds to a variety of different emergencies communicated by 911 callers, many of which involve multifarious public safety concerns, and—as plaintiffs' allegations correctly state—by dispatching three categories of services including fire, police, and emergency medical services. (Compl., ¶86). By ignoring the "interconnected nature" of the emergency response system to *all* emergencies and focusing solely on the contrived concept of "health" emergencies, plaintiffs rest their claims on invalid allegations of unequal access to an effective "health" emergency response as if only mental health intervention is necessary.

Plaintiffs incorrectly state that defendants rely on *Does I-5 v. Chandler*, 83 F3d 1150 (9th Cir. 1996) to support an argument that the 911 program "is actually two distinct services." Pl's Opposition, p. 14. Plaintiffs misunderstand the import of *Chandler* in this case. In *Chandler*, the Ninth Circuit noted the importance of correctly identifying the purpose of the program to determine whether there is a "plausible basis" to support allegations of unequal access to the benefits in violation of Title II of the ADA. *Id.* at 1153. The court rejected the plaintiffs' view that the purpose of the general assistance program was to provide benefits to all needy residents who could not receive federal aid because benefits were provided only to "those who are disabled or who have dependent children." *Id.* at 1155. They were not provided to non-disabled needed people without children.

Having properly framed the purpose, the court concluded that amendments to the welfare program that provided eligible needy individuals with dependent children benefits for unlimited duration and provided needy disabled individuals benefits for only one year, did not violate the ADA because ineligibility for the longer-term benefits did not turn on an individual's disabled status. *Id.* at 1151-52. Rather, eligibility turned on whether the needy individual had dependent children. *Id.* at 1153. Finding that the program functionally served two discrete subgroups of the

Page 8 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

needy population, the court affirmed the dismissal of the plaintiffs' claims because the ADA does not require equivalent benefits to the discrete subgroups. *Id.* at 1155.

*Chandler* rejects plaintiffs' arguments that misidentify the purpose of the 911 program as providing "the benefit of emergency medical intervention to *all*." Pl's Opposition, p. 15 (emphasis in original). When properly viewed as providing access to emergency services in response to public safety concerns described by a 911 caller, *Chandler* instructs that responses to different emergency situations need not be equivalent and the dispatch of different services based on the different safety concerns communicated does not violate the Acts.

Similarly, plaintiffs erroneously argue that defendants promote a "fragmented definition" of the 911 emergency response system that is inconsistent with *Alexander v. Choate*, 469 U.S. 287 (1985). Pl's Opposition, p. 15. However, unlike plaintiffs' narrow focus on "health" emergencies only, Washington County accepts the expansive definition provided by Oregon's Department of Emergency Management and the public benefit of access to response services that stabilize urgent safety concerns reported by 911 callers. Plaintiff have not, because they cannot, plausibly allege that qualified individuals with mental health disabilities are denied meaningful access to this benefit based on their disabled status.

**III.     Plaintiffs do not allege actionable disability discrimination by denial of meaningful access to the benefits of the 911 program.**

Providing different emergency services for different emergency situations does not demonstrate an "unequal emergency response" for mental health disabilities that denies or substantially impairs meaningful access to the benefit served by the 911 program as plaintiffs argue.[1] Pl's Opposition, pp. 9, n. 4, 17, 22. Importantly, plaintiffs do not, because they cannot,

---

[1] Plaintiffs argue that they effectively allege an independent basis for liability because they claim that the administration of the 911 program substantially impairs the ability of that system to fulfill its essential purpose. Pls' Opposition, p. 22. Plaintiffs' cite no case law to support this conclusion and their own argument admits that their deprivation of meaningful access and substantial impairment allegations are the same: "At their core, Plaintiffs' claims allege the disparate type of response that Defendants' Service assigns to health emergencies associate with mental health disabilities deprives them of an equal opportunity to benefit from the Service." *Id.* at 23 (emphasis omitted).

Page 9 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

allege any facts showing that emergency services provided for mental health related emergencies discriminate between disabled and non-disabled individuals. In fact, plaintiffs' pleading makes clear that the response services dispatched to distinct categories of emergencies are uniformly provided and the treatment afforded is evenhanded. (*See* Comp., ¶¶42, 58, 81, 107, 108, 158, 175, 192). The Acts ensure evenhanded treatment for disabled and non-disabled individuals and do not provide a cause of action for challenging the adequacy of government programs without showing disparate or discriminatory treatment. *Alexander v. Choate.*, 469 U.S. 287, 105 S. Ct. 712 (1985); *McGowan v. Washington Dept. of Labor and Industries*, 213 Fed. App'x 556, 557 (9th Cir.2006) (unpublished) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2nd Cir.1998)).

Plaintiffs' comparison of the response to physical health emergencies and mental health related emergencies fails to support a plausible unlawful discrimination claim under the Acts. Meaningful access under the Acts does not require a defendant to provide services in the manner preferred by the plaintiff. *Bird v. Lewis and Clark Coll.*, 303 F3d 1015, 1019 (9th Cir. 2002). To properly evaluate meaningful access to the benefit served by the 911 system, the program's cohesive purpose of providing "police, fire, and emergency medical services" to stabilize the reported safety concerns must be considered in its entirety. Indeed, plaintiffs' complaint admits that Wesley and all other referenced individuals received a 911 response. That they preferred different services that no 911 response provides does not support a claim for relief under the Acts.

Plaintiffs' comparison does not plausibly allege unequal access based on disability. If comparisons of emergency types are to be made, plaintiff's singular focus on physical health emergencies and "health" interventions only is baseless. In responding to a 911 "fire" call, fire or dual services will be dispatched depending upon the information articulated by the caller. (Declaration of Ivan Resendiz Gutierrez in support of Agency's Moton to Dismiss, Exhibit 1, pp. 54-64, 78-80). Even though the services provided in a typical "fire" emergency are different than those provided in a mental health related emergency, that difference does not demonstrate an inequality in access to the benefits of the system. Rather, the dispatch of different services is the practical result of qualitatively different emergency safety concerns.

Page 10 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Similarly, a 911 call that communicates an emergency involving a person who appears to be experiencing a mental health crisis and is engaging in or threatening to harm herself, others, or property, such as setting or threatening to set fire to a building must practically receive a different response than in a typical physical health emergency. Applying plaintiffs' reasoning, a reasonable accommodation under the Acts would require the dispatch of qualified mental health professionals only because dispatching fire or law enforcement services would be ineffective to clinically assess, stabilize and treat the mental health condition of the individual at the scene. That result is obviously not compelled by the Acts.

Plaintiffs' novel theory comparing mental health related emergencies and physical health emergencies does not state a cognizable claim under the Acts, and plaintiffs' cited case law does not support a contrary conclusion. Plaintiffs' reliance on *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) and *Rodde v. Bonta*, 357 F.3d 988 (9th Cir. 2004) is misplaced. They argue these cases show that providing "medical services" is "a discrete service and the recipients of that service are sufficiently similarly situated to permit a meaningful comparison." Pl's opposition, p. 12. That proposition is inapposite here and does not support their required showing that plaintiffs were excluded from the benefit served by the 911 program by reason of disability discrimination. *Sheehan v. City & Cnty. Of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014).

Plaintiffs primarily rely on *Rodde*, which found a likelihood of success on an ADA claim seeking to bar the County from going forward with its planned closure of a hospital dedicated primarily to providing rehabilitative care to disabled individuals without providing such medical services elsewhere. Distinguishing case law permitting reductions in medical services that are facially neutral and apply across the board for all patients, the court found that "the wholesale elimination of services relied upon disproportionately by the disabled because of their disabilities" and that could not be effectively provided anywhere else in the County, was impermissible. 357 F.3d at 997. The court further concluded that the wholesale elimination of services would disproportionately burden the disabled and deny certain disabled individuals' meaningful access to

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

government-provided services based on their disabilities "while others would retain access to the same class of services." *Id.* at 998.

This is not an elimination of services situation and plaintiffs' comparison of services provided in different types of emergencies does not support their mere conclusory allegations that physical health emergencies and mental health related emergencies are all obvious "health" emergencies that require the same services. As explained in the above sections, the different safety concerns presented in the qualitatively different types of emergencies do not require the same class of services. Indeed, plaintiffs do not ask for existing emergency medical services as the sole response to mental health related emergencies. They ask for a response provided by qualified mental health professionals that inappropriately seek to expand the scope of the program.

**IV.    Plaintiff's "undue burden" theory fails because it rests on allegations of inadequate mental health care and demands a new emergency service.**

Plaintiffs do not allege that individuals with mental health disabilities are excluded from the 911 emergency response system. Instead, they allege that the operation of the 911 program unduly burdens mentally disabled individuals because they do not receive effective on-scene treatment for their mental health conditions. They demand a special accommodation of services by a qualified mental health professional only as first responders to mental health related emergencies. Dismissal is appropriate because plaintiffs challenge the adequacy of the response to treat their disability and not illegal discrimination because of disability. The Ninth Circuit has made clear that "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo County Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); *see* Washington County's Motion To Dimiss ("MTD"), pp. 20-21 (citing supporting case law); Agency's MTD, pp. 28-29 (same).

Plaintiffs protest that they do not challenge the adequacy of mental health services, despite that their allegations do just that. (Comp., ¶¶ 19, 59, 108). They argue that the dispatch of law enforcement to the scene "does not constitute mental health treatment" and that means their claims are not invalid "inadequate mental health care" claims. Pls' Opposition p. 25. This argument is off base.

Page 12 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Plaintiffs allege that a law enforcement response is inadequate to treat mental health conditions at the scene of emergencies because it is not good enough to not meet their preferred treatment. The Acts do not require a particular standard of care to treat the disability nor enhanced care that is preferred by the plaintiffs. *Olmstead*, 527 U.S. at 603, n. 14 ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they may render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities."); *Alexander*, 469 U.S. at 303 (the government is not required to "guarantee that each recipient will receive the level of health care precisely tailored to his or her particular needs" and "the benefit provided remains the [access to] the individual services offered—not 'adequate health care.'"). Moreover, plaintiffs' argument that a law enforcement response provides no mental health treatment concedes that plaintiffs are seeking an expansion of services that is beyond the scope of the 911 program and not required by the Acts.

Plaintiffs deny that they "demand[s] a new type of emergency response, let alone a new service", arguing they merely seek to change access to an existing service that heretofore has been provided to no one. Pls' Opposition, p. 28 and p. 28, n. 8 (citing *Olmstead*, 527 U.S. at 603, n. 14 for proposition that governments "must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide" and other 9th Circuit and out of circuit cases for the same proposition). Plaintiffs' argument that they have alleged the program "deploys qualified mental health professionals to a (very small) portion of [mental health related emergencies]" does not fix the problem. The allegation quoted merely states the Mobile Crisis Team ("MCT") "is not summoned often" and in 2021 and 2022 law enforcement agencies referred MCT to the scene 106 times." (Compl., ¶ 96). This does not allege that only mental health interventions were dispatched as first responders in those instances, and no other allegation supports the inaccurate contention that plaintiffs requested "accommodation" is an existing 911 service.

Plaintiffs incorrectly rely on case law for the proposition that whether a requested accommodation fails because it is a "fundamental alteration" of the program is an affirmative defense that is not appropriate to consider at the pleading stage because it necessarily involves a

Page 13 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

fact-based inquiry. Plaintiffs' cited cases do not apply because their allegations do not present an issue of fact about whether the requested accommodation is an existing service offered to anyone, let alone on a discriminatory basis. As explained above, plaintiffs concede that emergency mental health treatment as the sole first response to a 911 call is not offered by the program. Plaintiffs' requested change seeks to implement an entirely new service that is not provided to anyone who is the subject of a 911 call.

Plaintiffs' reliance on *McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) and *Crowder v. Kitagawa,* 81 F.3d 1480 (9th Cir. 1996) is misplaced. In both cases, the plaintiffs sought accommodations that they were already eligible to receive and were merely exemptions from enforcement activity, and not the creation of any entirely new service. *McGary* challenged a facially neutral policy that unduly burdened his compliance with a nuisance abatement ordinance by reason of his disability. The court found that the benefit of the nuisance abatement program was the ability of the city resident to comply with the proscribed enforcement activities. *Id.* at 1269. The plaintiff sought the accommodation of simply being given additional time to comply with the ordinance in a manner consistent with his disability. Unlike here, the plaintiff was not asking for an entirely new service to be created, funded, and implemented to treat his disability condition in a manner that he preferred.

*Crowder* challenged Hawaii's facially neutral 120-day quarantine requirement on carnivorous animals entering the state as unduly burdensome on visually impaired persons who use guide dogs. The plaintiffs requested the exemption of their guide dogs from the requirement and proposed other means to prevent the dogs from importing rabies into Hawaii. The court concluded that the quarantine requirement discriminated against visually impaired individuals by denying them meaningful access to the states services, programs and activities that visually healthy individuals were able to enjoy while their animals were quarantined. 81 F.3d at 1485. Finding that the reasonableness of the alternative methods for preventing the transmission of rabies in those guide dogs could not be determined on the record before it, the court reversed summary judgment and remanded for determination of whether the accommodation requested was reasonable. *Id.* at 1486.

Page 14 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Again, unlike here, the plaintiffs were not seeking an accommodation that required the state to create, fund, and implement an entirely new program or service to treat their disability in a manner that they preferred.

Accordingly, plaintiffs' "failure to accommodate" claim does not state a claim for the relief they request under the Acts.

**VI.     Alternative Motions pursuant to F.R.C.P. 12(e) and (f).**

Washington County rests on the argument provided in support of their F.R.C.P. 12(e) and (f) motions to strike and to make more definite and certain.

## CONCLUSION

For the foregoing reasons, Washington County requests this Court dismiss plaintiffs' complaint or, alternatively, strike immaterial allegations and make vague allegations to "defendants" more specific to a defendant.

Respectfully submitted this 14th day of June, 2024.

HART WAGNER LLP

By:   /s/ Karen O'Kasey
      Karen O'Kasey, OSB No. 870696
      Ruth A. Casby, OSB No. 944225
      Zachariah H. Allen, OSB No. 122729
      Of Attorneys for Defendant Washington
      County

Page 15 - DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of June, 2024, I served the foregoing **DEFENDANT WASHINGTON COUNTY'S REPLY IN SUPPORT OF RULE 12 MOTIONS** on the following parties at the following addresses:

Dave Boyer
Meghan E. Apshaga
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205-2748

Kelly Simon
American Civil Liberties Union
Foundation of Oregon, Inc.
PO Box 40585
Portland, OR 97240-585

Daniel L. Brown
Laura L. Chapman
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
   *Attorneys for Plaintiff*

Heather Van Meter
Ivan Resendiz
Miller Nash LLP
500 E Broadway Ste 400
Vancouver WA  98660
   *Attorneys for Co-Defendant*

by electronic means through the Court's Case Management/Electronic Case File system.

　　　　　　　　　　　　　　　　　　　　　　/s/ Karen O'Kasey
　　　　　　　　　　　　　　　　　　　　　Karen O'Kasey

Page 1 – CERTIFICATE OF SERVICE

HART WAGNER LLP
1000 S.W. Broadway,
Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301