**Heather J. Van Meter**, OSB No. 29028
heather.vanmeter@millernash.com
**Iván Resendiz Gutierrez**, OSB No. 154617
ivan.resendiz@millernash.com
MILLER NASH LLP
1140 SW Washington St., Suite 700
Portland, OR  97205
Telephone: 503.224.5858
Fax: 503.224.0155

    *Attorneys for Defendant*
    *Washington County Consolidated*
    *Communications Agency*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY, | Case No. 3:24-cv-00235-SB |
| Plaintiffs, | **DEFENDANT WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | |
| WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon, | |
| Defendants. | |

Page 1 -    Defendant Washington County Consolidated Communications Agency's Reply
    in Support of its Motion to Dismiss Plaintiffs' Complaint

**INTRODUCTION**

Plaintiffs' Consolidated Response to Washington County's and the Agency's Rule 12 Motions (ECF 21 and ECF 25) (the "Consolidated Response" or "CR") confirms that Plaintiffs' claims are based on a novel, flawed argument. The argument is that the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") (collectively, the "Acts") require public entities with finite resources to allocate the same resources to services addressing mental health (or psychiatric) disabilities as those the public entities offer to address physical health disabilities or ailments  to achieve "equal opportunity to access the benefits of defendants' emergency response system." But Plaintiffs (and the U.S. Department of Justice (the "DOJ"), which Plaintiffs urge this Court to look to for guidance) fail to cite a single case that requires this of public entities. Put simply, the ADA and Section 504 do not require a 911 emergency response system to dispatch mental health professionals *only* as first responders to the scene of mental health related emergencies. Such a fundamental change to the operation of Washington County's emergency response system is unauthorized.

As explained below, and in the Agency's Motion to Dismiss (ECF 25), Plaintiffs' claims fail at every step. Before even reaching the merits of DRO's claims, DRO failed to exhaust its administrative remedies under the PAIMI Act. Plaintiffs misidentify the "service" at issue; the Agency does not discriminate against Plaintiff Wesley and DRO's constituents because of their disability or deny meaningful access to Washington County's emergency response services; and even if the Agency does have some control over the system, Plaintiff Wesley and DRO's

Page 2 -    Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

constituents are not excluded from participation or denied the benefits of the emergency response system at issue. Finally, Plaintiffs' reliance on the DOJ's *recent* advocacy is misplaced.

Accordingly, the Court should grant the Agency's Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice.

## ARGUMENT

### I. Plaintiff Disability Rights Oregon Failed to Exhaust All Required Administrative Remedies Before Filing this Lawsuit.

DRO's arguments in response to their failure to exhaust administrative remedies all miss the mark. DRO argues that the Agency's administrative exhaustion argument fails because

1. "the statutory requirement to exhaust administrative remedies applies only when, unlike here, a protection and advocacy network litigates an action on behalf of an individual, *see* 42 U.S.C. § 10807(a)";

2. "even if DRO was required to exhaust administrative remedies prior to filing, DRO satisfied that requirement"; and

3. "as a Protection and Advocacy System ("P&A")[,] DRO is exempt from the exhaustion requirement and may file immediately, when, as here, the lawsuit seeks to 'prevent or eliminate imminent serious harm to a mentally ill individual.' *Id.* § 10807(b)." CR, at 33-34.

All of these supposed arguments fail for the following reasons.

First, DRO's parade of horribles argument that "[i]f Defendant Agency's interpretation of PAIMI's requirements was accurate, DRO would be hamstrung in a way that would defeat its ability to effectively advocate for its disabled constituents, largely defeating the purpose of

Page 3 -     Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

P&As" fails. CR, at 34. Under the Agency's correct interpretation of the PAIMI Act, DRO can

advocate on behalf of its disabled constituents, but before DRO files a costly lawsuit (like this

one), DRO must exhaust its administrative remedies. This requirement makes sense; it helps

prevent the waste of public resources.

Second, DRO's argument that the ADA and Section 504 do not require any sort of

exhaustion is off base. CR, at 34. The issue raised by the Agency's Motion to Dismiss is not

whether the ADA or Section 504 require exhaustion; the issue is whether the PAIMI Act, which

affords organizational standing to DRO *with conditions*, requires exhaustion. The answer is

"yes."

Third, DRO argues that the PAIMI Act's exhaustion requirement applies only when DRO

litigates an action on behalf of an individual. CR, at 35. The PAIMI Act authorizes only those

legal actions "instituted . . . on behalf of an individual with mental illness, an eligible system, or

a State agency or nonprofit organization which entered into a contract with an eligible system."

42 U.S.C. § 10807. That is exactly what DRO is doing here; indeed, the Complaint's caption

states: "DISABILITY RIGHTS OREGON, on behalf of its clients and constituents." The

Complaint alleges "Plaintiff Disability Rights Oregon, on behalf of its clients and constituents

with mental health disabilities in Washington County," Complaint ¶ 30, and "[t]hese and other

statutes provide DRO with the ability to advocate on behalf of anyone with a disability in

Oregon," Complaint ¶ 36.

Fourth, in its Consolidated Response, DRO alleges for the first time that it satisfied the

PAIMI Act's exhaustion requirement, but the Complaint does not include a single allegation to

Page 4 -    Defendant Washington County Consolidated Communications Agency's Reply
            in Support of its Motion to Dismiss Plaintiffs' Complaint

that effect. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: . . .

(2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); 

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2006) (Although detailed factual allegations are not

required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face."); *see La Asociacion de Trabajadores de Lake Forest v. City*

*of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (stating that the plaintiff "may not

effectively amend its Complaint by raising a new theory of standing in its response to a motion

for summary judgment"). The Complaint and Plaintiffs' supporting declaration also do not allege

that DRO's requests were actually denied or ignored. *Michigan Prot. & Advocacy Serv., Inc. v.*

*Flint Cmty. Sch.*, 146 F. Supp. 3d 897, 905 (E.D. Mich. 2015).

Fifth, DRO argues for the first time that "due to the serious implications of the

Defendants' practices, and the dire outcomes faced by people in mental health crises in the

County, DRO is exempt from any exhaustion requirement per 42 U.S.C. § 10807(b)." CR, at 36.

But the Complaint does not include a single allegation that DRO's action was "instituted to

prevent or eliminate *imminent* serious harm to a [sic] individuals with mental illness," 42 U.S.C.

§ 10807(b) (emphasis added), nor can it. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)) (the standard under Rule 8(a)(2) "does not require 'detailed

factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation").

Accordingly, because DRO has failed to exhaust in a timely manner all administrative

remedies, this Court should dismiss DRO's claims.

Page 5 -    Defendant Washington County Consolidated Communications Agency's Reply
            in Support of its Motion to Dismiss Plaintiffs' Complaint

II.     **Plaintiffs Fail To Allege a Violation of the ADA or Section 504.**

A.     **The Correct Legal Standards**

Plaintiffs have not pleaded facts sufficient to state a claim under Title II of the ADA or Section 504. To establish a violation of Title II, a plaintiff must show that: (1) the plaintiff is an individual with a disability; (2) who was otherwise qualified to participate or receive the benefit of a public entity's services, programs or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of a public service, program, or activity or was otherwise discriminated against; and (4) such exclusion, denial of benefits, or discrimination was *because of* the plaintiff's disability. *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014); *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Regarding causation, relying on a 2013 Ninth Circuit decision, *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013), Plaintiffs argue that they "are only required to show disability was a motivating factor, not the 'but-for' cause of discrimination." CR, at 8. Plaintiffs' reliance is misplaced.

As explained by a sister district court:

> Earlier Ninth Circuit cases holding that Title II ADA discrimination claims should be evaluated under the less strict "motivating factor" standard, *see, e.g.*, *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013), appear to have been overruled by the Supreme Court. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (explaining that "because of," "by reason of," "on account of," and "based on" all indicate a but-for causal relationship).

*Uhuru v. Bonnifield*, 2021 WL 3870479, at *9, n.6 (C.D. Cal. June 21, 2021), *report and recommendation adopted*, 2021 WL 3857456 (C.D. Cal. Aug. 30, 2021). But even *K.M.* states plainly that "'[t]he causal standard for the Rehabilitation Act is even stricter,' . . . requiring a

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

plaintiff to show a denial of services 'solely by reason of' disability. 29 U.S.C. § 794(a)." *K.M.*,

725 F.3d at 1099.

**B.      Plaintiff Wesley and DRO's Constituents Are Not Discriminated Against Because of Their Disabilities or Excluded from Participation or Denied the Benefits of Services.**

**1.      The Question of What Constitutes a "Service" Under the ADA Is Not a Question of Fact Entitled to Deference at the Motion To Dismiss Stage.**

In its Consolidated Response, Plaintiffs contend that defining the scope of a service at

issue in an ADA claim is a question of fact and Plaintiffs' definition of that service must

therefore be accepted as true at the motion to dismiss stage. CR, at 10. But Plaintiffs' "rule" is

neither announced by any court nor gleaned from the cases Plaintiffs cite. *Id.*

Plaintiffs' contention that emergency response services are a "unified emergency

response system" under the ADA is a legal conclusion, not a question of fact. And, at the motion

to dismiss stage, the tenet that the Court must accept as true all the allegations contained in the

complaint "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. The Court need not

credit a plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at

678-79.

In support of their novel rule, Plaintiffs point to *Where Do We Go Berkeley v. Cal. Dep't

of Transp.*, 32 F.4th 852, 861–862 (9th Cir. 2022), noting that the district court "accepted

Plaintiffs' definition" of the scope of the program. CR, at 10. While it is true that the district

court in *Where Do We Go Berkeley* "accepted Plaintiffs' definition" of the program, the Ninth

Circuit was less generous. The Ninth Circuit did not find that the definition of the program was a

question of fact; the Ninth Circuit actually faulted the district court for accepting without

Page 7 -    Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

question the plaintiff's definition: "The district court never explicitly described the scope of Caltrans's 'program' that serves as the basis for Plaintiffs' ADA claim. It accepted Plaintiffs' definition: a 'program regarding the removal of homeless encampments (e.g., as reflected in the Interim Guidance).' *See id.* at *5. On its face, this tells us little about what Caltrans's programs do and do not entail—and therefore what could be a 'reasonable modification' of that program." *Where Do We Go Berkeley*, 32 F.4th at 860–61. The Ninth Circuit specifically determined that where, as here, the scope of the service is defined too broadly, it is within the court's discretion to redefine the scope of the service by narrowing it to the specific individual service at issue. *See Where Do We Go Berkeley*, 32 F.4th at 861.

Plaintiffs' reliance on *L.E. by & Through Cavorley v. Superintendent of Cobb Cnty. Sch. Dist.*, 55 F.4th 1296, 1303 (11th Cir. 2022), is similarly misplaced. CR, at 27. Plaintiffs argue that the Eleventh Circuit's holding that "the district court erred in 'redefining the scope of the program' from what 'the record clearly showed'" supports Plaintiffs' view that the definition of the service at issue is a matter of fact to be determined by the plaintiff. *Id.* (quoting *Superintendent of Cobb County*, 55 F.4th at 1303-04). But the case contains no such finding. Instead, the *Superintendent of Cobb County* court held that the "the district court erred by misconstruing the [s]tudents' argument as a right to education generally, despite the record clearly establishing that the [s]tudents are alleging a denial of access to in-person education—a specific service, program, or activity that [the public entity] provides to all students." 55 F.4th at 1304 (internal quotation marks omitted). The Eleventh Circuit further noted that the district court's finding was improper because "the Supreme Court instructs courts to focus on narrow

Page 8 -    Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

programs and benefits offered by a public entity when evaluating claims under the ADA and Section 504." *Id.* at 1302 (citing *Alexander v. Choate*, 469 U.S. 287, 301 & n.21 (1985) (citing the government's statement that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit")).

Plaintiffs also attempt to distinguish the Supreme Court's holding in *Alexander*—a case that rejected the respondent's broad definition of the service at issue—by arguing that the Supreme Court proscribes overly narrow definitions of programs. But there, the Court simply determined that the relevant government benefit under the Rehabilitation Act cannot be "the amorphous objective of 'adequate health care.'" *Alexander*, 469 U.S. at 303. Instead, in that case, the relevant "benefit provided through Medicaid [wa]s a particular package of health care services, such as 14 days of inpatient coverage." *Id.* The Court reiterated that while the "package of services has the general aim of assuring that individuals will receive necessary medical care, [] the benefit provided remains the individual services offered—not 'adequate health care.'" *Id.*

In addition to Plaintiffs' own citations, the weight of authority shows that defining the scope of the service at issue under the ADA is a legal determination, and courts frequently narrow the scope despite a plaintiff's attempt to define the scope broadly. *See, e.g.*, *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (internal quotation marks omitted), *abrogated in part on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc) (reversing the lower court's "conclusion" because the nature of the benefit at issue was "not appropriately defined as free downtown parking generally, but rather as the provision of all-

Page 9 -    Defendant Washington County Consolidated Communications Agency's Reply
            in Support of its Motion to Dismiss Plaintiffs' Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

day and one-hour parking in specific locations."); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) (reversing a district court's finding of an ADA violation because, in part, of a "fail[ure] to focus on the particular services provided by appellants"); *Wright v. Giuliani*, 230 F.3d 543, 546 (2d Cir. 2000) (affirming the district court's rejection of the plaintiffs' definition of the service at issue because "the relevant question is not the amorphous concept of emergency housing, but whether plaintiffs have access to the particular emergency housing granted to able-bodied, homeless New York City residents").

Here, Plaintiffs provide no authority supporting the position that defining the scope of the government benefit is a factual allegation that must be taken as true at the motion to dismiss stage. Accordingly, the Court should, as other courts have done, resolve the parties' dispute about the definition of the service at issue under the ADA by looking at the facts in the record and heeding the Supreme Court's direction to narrowly define the scope of the program at issue.

### 2.    Plaintiff Misidentifies the Service at Issue.

Having established that the Court can determine the scope of the program or service at issue under the ADA, we turn to the question of how to define the scope of the service here.

Plaintiffs state that the purpose of the 911 emergency response system "is not defined by regulation," but that is incorrect. CR, at 10. Plaintiffs are also incorrect that defendants view the emergency response system as more than one program with the purpose of providing separate services for physical health emergencies and mental health related emergencies. CR, at 13-15.

Oregon's Department of Emergency Management has, by regulation, defined the purpose of the emergency response system. OAR 104-080-0000 provides: "The purpose of the State of Oregon's 9-1-1 program in establishing the emergency communications system is to: . . .

Page 10 -  Defendant Washington County Consolidated Communications Agency's Reply
in Support of its Motion to Dismiss Plaintiffs' Complaint

(a) Provide consistent statewide access to police, fire, and emergency medical service through the emergency communications system when an emergency call is made to 9-1-1." In other words, Washington County's emergency response system is a program that serves the purpose and public benefit of dispatching fire, police, and emergency medical services to stabilize and treat urgent public safety concerns communicated by a 911 caller. As alleged in the Complaint, there are several entities involved in emergency responses, and each entity provides its own set of services. (*See* Compl. ¶¶ 13, 86 & nn.33-24, 87.) The entities include Washington County (including the Mobile Crisis Team ("MCT") and WCSO), various law enforcement agencies, various fire departments, including Tualatin Valley Fire & Rescue, and American Medical Response (or "AMR"). (*See* Compl. ¶¶ 13, 15, 86-87.) And the Agency is the contracted call taker.

Significantly, Plaintiffs' narrow framing of the purpose and benefits provided by Washington County's emergency response system conflicts with the DOJ's Statement of Interest they rely on. As the Consolidated Response states, the DOJ's position is that an emergency response system is "properly defined as a single service, program, or activity" and the types of emergencies should not be viewed in "rigid separation" because of "the interconnected nature of the [government entity's] system. CR, at 11 (citing DOJ Statement, at 12, 14). Similar to Washington County, the Agency agrees with this particular guidance, which conflicts with Plaintiffs' allegations and arguments. Specifically, Plaintiffs divorce mental health related emergencies from other types of health emergencies. In doing so, Plaintiffs ignore the fact that the emergency response system serves *all* emergency situations with immediate interventions to

Page 11 -  Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

stabilize and treat the *primary* safety concerns at the scene. This service is provided to

individuals with and without disabilities without regard to disability or any other protected trait.

    Plaintiffs' reliance on two district court cases involving two jurisdictions' disaster

responses—*Brooklyn Center for Indep. of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588

(S.D.N.Y. 2013); *Communities Actively Living Indep. & Free v. City of L.A.*, 2011 WL 4595993

(C.D. Cal. Feb. 10, 2011)—is misplaced. CR, at 10. As the Agency discussed in its Motion to

Dismiss, *Brooklyn Center* and *Communities Actively Living* support the Agency's argument that

Plaintiffs cannot identify "service" or "program" as broadly as emergency or "emergency

medical intervention." Agency's Motion to Dismiss, at 20-21. Plaintiffs' argument that the courts

in *Brooklyn Center* and *Communities Actively Living* viewed the "emergency preparedness

program" as a " unified program" disregards the courts' actual analyses in each case. CR, at 11,

15. Labeling a conglomerate of services as a single "program"—as Plaintiffs do here—does not

relieve Plaintiffs of the burden to identify specific services at issue that require an

accommodation to allow for meaningful access. *Brooklyn Center* and *Communities Actively

Living* illustrate this point. Even if those courts generally refer to emergency response systems as

a single program for the purpose of unifying claims about individual services under the umbrella

of a single federal case, both courts explained that the ADA's legal analysis applied to *each

individual* service within the emergency response system.

    For example, in *Brooklyn Center*, the court found that the city's emergency evacuation

services violated the ADA because the city offered evacuation assistance to residents but failed

to accommodate individuals with physical disabilities who required assistance exiting buildings.

Page 12 -  Defendant Washington County Consolidated Communications Agency's Reply
        in Support of its Motion to Dismiss Plaintiffs' Complaint

980 F. Supp. 2d 588 at 643. In a separate ADA analysis, the court found that the emergency

response plan's failure to provide for interim housing during an emergency did not violate the

ADA because it did not provide the service to anyone, and, therefore, it was not required to

provide the service to individuals with disabilities (even though they were more in need of such a

service). *Id.* at 643–54 ("The disabilities statutes do not require that substantively different

services be provided to the disabled, no matter how great their need for the services may be.

They require only that covered entities make 'reasonable accommodations' to enable

'meaningful access' to such services as may be provided, whether such services are adequate or

not.") (citation and quotation marks omitted). In contrast, Plaintiffs attempt to compare how an

orchestra of services utilized in responding to individuals experiencing a physical health

emergency (likely with no weapon involved) to how a different orchestra of services is utilized

in responding to a mental health emergency (likely with some sort of weapon involved (*see*

Compl. ¶¶ 148, 153, 169, 202)). As noted in the Agency's Motion to Dismiss, that is not how the

*Brooklyn Center* and *Communities Actively Living* courts applied the ADA framework, and

doing so would not be appropriate here. Agency's Motion to Dismiss, at 20-21.

Plaintiffs then suggest that the Court could save the Complaint from its defects by

evaluating individual "functions" of the emergency response system, such as "assessment,

stabilization, and treatment" under the ADA framework. CR, at 10-11. But Plaintiffs' Complaint

does not contain allegations about what those individual services entail such that the Court could

determine whether individuals with mental health disabilities have meaningful access to those

services compared to individuals without mental health disabilities. And Plaintiffs cannot amend

Page 13 -  Defendant Washington County Consolidated Communications Agency's Reply
in Support of its Motion to Dismiss Plaintiffs' Complaint

their complaint through briefing. *See Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (citing *Morgan Distributing Co, Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). Thus, Plaintiffs' theory cannot save its overly broad definition of the service at issue from this fatal deficiency. *See Wright v. Giuliani*, 2000 WL 777940, at *10 (S.D.N.Y. June 14, 2000), *aff'd*, 230 F.3d 543 (2d Cir. 2000) (finding that the plaintiffs were unlikely to succeed on their ADA claim because "[p]laintiffs have only presented evidence regarding the amorphous concept of emergency housing, and have not demonstrated a lack of access to the housing granted to able-bodied homeless New Yorkers").

Plaintiffs' additional attempts to tear down the Agency's arguments founder and only serve to illuminate the faults in Plaintiffs' arguments. Plaintiffs contend that "[w]hen the service at issue is properly analyzed as one unified service, it is clear Plaintiffs do not challenge 'the adequacy and effectiveness of mental health treatment provided at the scene of a mental health related emergency,' but the disparity in responses to physical and mental health emergencies.'" CR, at 23.[1] First, Plaintiffs' argument is belied by the Complaint and the Consolidated Response, which complain about the effectiveness of Washington County's emergency response system:

- "Defendants' emergency response programs and services are therefore ineffective for those experiencing a mental health crisis." Compl. ¶ 12.

- "Defendants' failure to provide County residents with mental health disabilities emergency response services that are as effective in affording equal opportunity to obtain the same benefit as provided to others and their practices in administering their

---

[1] "Indeed, it defies credulity to suggest that a police response that is 'more likely to exacerbate, rather than alleviate' mental health emergencies equates to mental health treatment. Nevertheless, Defendants' argument is inapposite because Plaintiffs seek not a particular kind or level of medical treatment but *access* to emergency medical intervention that the Service provides to others—the benefit of the Service." CR, at 25 (emphasis in original).

Page 14 -   Defendant Washington County Consolidated Communications Agency's Reply
    in Support of its Motion to Dismiss Plaintiffs' Complaint

crisis response services violate the rights of individuals with disabilities under Title II of the [ADA and Section 504]." Compl. ¶ 29.

- "A safe, effective, and non-discriminatory crisis response system that promotes positive outcomes for its patients requires mental health professionals to be the primary responders to calls for mental health crises." Compl. ¶ 42.

- "Defendants' Public Safety Dispatch and Emergency Response Services Are Not Equally Effective for Members of the Public Who Have Mental Health Disabilities as They Are for Others." Compl. at 21.

- "Because Defendants do not dispatch the MCT in response to 911 mental health crises calls, they do not provide direct, immediate, and equal access to effective emergency response for individuals with mental health disabilities." Compl. ¶ 98.

- "The Complaint demands that health emergencies associated with people with mental health disabilities receive an effective health response—not an ineffective law enforcement response—because like physical health emergencies, they are health emergencies." CR, at 1.

- "Mental health emergencies are uniquely and closely connected to mental health disabilities, and the systemic failure to provide equally effective responses to these emergencies discriminates based on these disabilities." CR, at 28.

Second, the relevant analysis when looking at whether a service violates the ADA is whether an individual with a disability has meaningful access to the same service provided to someone without a disability. For example, whether an individual with a mental health disability experiencing a cardiac event has meaningful access to the same treatment as a non-disabled individual experiencing a cardiac event. Plaintiffs' claim, on the other hand, is based on the incorrect notion that services offered for one type of disability must be equally resourced or provide the same level of benefit as services provided to address another type of health emergency. Under Plaintiffs' theory, a viable ADA claim could arise if there is any disparate level of treatment for different disabling conditions; a run-of-the-mill broken wrist would need to be treated with the same level of emergency service as a massive heart attack. Perhaps an individual who was provided substandard care for either condition could seek relief in the form of a tort action, but requiring that the response to those two scenarios be equal in all respects

Page 15 -  Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

makes no logical sense as a practical matter or for determining whether a public entity violated the ADA. Indeed, Plaintiff's tautological refrain that "a health emergency is a health emergency" (CR, at 3) is belied by the thrust of the entire case: *different emergencies require different services*.

### 3. The Agency Does Not Discriminate on the Basis of Disability and Does Not Deny Meaningful Access to Washington County's Emergency Response Services.

The lengthy Consolidated Response does not expressly address the Agency's argument that the Complaint should be dismissed against the Agency because the Complaint admits that the Agency does not discriminate against individuals with psychiatric disabilities on the basis of disability. Agency's Motion to Dismiss at 22-23. As explained in the Agency's Motion to Dismiss, "Plaintiffs' Complaint is devoid of any allegations that the Agency controls the funding for the services at issue in the Complaint. In other words, Plaintiffs' own allegations show that the Agency does not have control over the available responses and services available for mental health crises." The deafening silence could be construed as a concession that the Agency's argument has merit. *See Hakakha v. CitiMortgage, Inc.*, 2015 WL 4873561, at *8 (C.D. Cal Aug. 13, 2015) ("In his Opposition, Plaintiff fails to at all address those claims and/or CitiMortgage's arguments for their dismissal. The Court construes Plaintiff's failure to address those arguments as Plaintiff's concession that they are valid reasons to dismiss those claims.").

Accordingly, this Court should dismiss the Complaint against the Agency with prejudice.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

4.      **Plaintiffs Are Not Excluded from Participation or Denied the Benefits of Services Through a Lack of Equal Opportunity or Through the Agency's Methods of Administration.**[2]

The Consolidated Response makes clear that Plaintiffs long for the County's Mental Health Response Team ("MHRT") and MCT to be as equally well-resourced as Fire and Emergency Medical Services ("Fire/EMS")—services available in the event of physical *and mental health emergencies*[3]—and for those desired services to be the only dispatched services for mental health emergencies. Compl. ¶ 119 n. 53. Put another way, Plaintiffs seek access to an MCT service that achieves parity with the response provided by Fire/EMS to physical health emergencies (and mental health emergencies). CR, at 1, 18-19; Compl. (Prayer for Relief). But, for the reasons described below, Plaintiffs argument is not cognizable under the Acts.

"The ADA's and the Rehabilitation Act's prohibition on discriminatory methods of administration provides that a public entity may not utilize methods of administration that (1) subject disabled individuals 'to discrimination on the basis of disability' or (2) have the 'purpose or effect of defeating or substantially impairing the accomplishment of the objectives' of the program or activity with respect to individuals with disabilities." *Dyous v. Dep't of Mental Health & Addiction Servs.*, 2024 WL 1141856, at *19 (D. Conn. Mar. 15, 2024) (cleaned up).

Plaintiffs argue that people with mental health disabilities lack equal opportunity or access to benefit from Washington County's emergency response system and that defendants

---

[2] In the interest of efficiency, the Agency also adopts and incorporates by reference the arguments in Washington County's Reply in Support of Rule 12 Motions, at 3-6 and 9 n.1, and 9-12, rebutting Plaintiffs' argument that Washington County's emergency response system violates the Acts by denying individuals with mental health disabilities equal access to the benefits of the program because dispatching law enforcement as first responders to mental health related emergencies "impairs [the] purpose of providing appropriate responses [to] health emergencies of all types." CR, at 2, 22-23.

[3] Plaintiffs' Complaint admits that law enforcement officers are often not the only first responders. Indeed, "Fire/EMS" may also be dispatched to mental health related 911 calls as primary "co-responders." (Compl. ¶ 110.)

Page 17 -  Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

administer the system by methods that "substantially impair" the system's objectives as to people

with mental health disabilities. CR, at 2, 22-23. Setting aside that Plaintiffs cite no authority to

support this as an independent basis for liability, this argument suffers from the same fatal defect

explained above—namely, that the "benefit" Plaintiffs identify is not an individual benefit, but

rather the availability or efficacy of different individual services that Washington County might

offer through its emergency response system.

Plaintiffs rely heavily on the Ninth Circuit's holding in *Rodde v. Bonta*, 357 F.3d 988

(9th Cir. 2004), but that case is inapposite. In *Rodde*, a county consolidated care for individuals

with disabilities to a single hospital, and—when faced with budget shortfalls—decided to close

that hospital. *Id.* at 993. The lower court found that, because of the closure, patients with

disabilities who depended on the hospital would not be able to find substitute care elsewhere. *Id.*

The Ninth Circuit concluded that the county's actions violated the ADA because the county

singled out the part of its existing health care service offered to individuals with disabilities for

cuts. *Id.* The court attempted to distinguish the county's actions from the Supreme Court's

holding in *Alexander*, in which the Court held that a state did not violate Section 504 when it

made across-the-board cuts in the maximum number of hospital days, even though that cut

disproportionately burdened individuals with disabilities. *Id.* at 995–96. The court held the

county's action were not an even-handed treatment of benefit cuts, like in *Alexander*; instead, the

county was targeting individuals with disabilities in violation of the ADA. *Id.*

Here, there is no allegation of discriminatory targeting or elimination of existing services

for individuals with disabilities, and *Rodde* does not diminish the Agency's argument. Indeed,

Page 18 -  Defendant Washington County Consolidated Communications Agency's Reply
in Support of its Motion to Dismiss Plaintiffs' Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

*Alexander* is more closely aligned with this case. Plaintiffs acknowledge that the service Plaintiffs wish to access—namely, MCT—currently exists but not with the level or resources or staffing Plaintiffs believe is necessary to adequately handle Washington County's needs. CR, at 22-23. And Plaintiffs seek that MCT be funded and resourced in parity with the resources devoted to physical emergencies. CR, at 26. But, as *Alexander* and its progeny explain, that lack of parity is not an ADA claim. *See Olmstead*, 527 U.S. at 603 n.14 (declining to hold that the ADA imposes "on the States a 'standard of care' for whatever medical services they render" or that it "requires States to provide a certain level of benefits to individuals with disabilities").

The holding in *Modderno v. King*, 82 F.3d 1059 (D.C. Cir. 1996), supports the Agency's interpretation of *Alexander*:

> [Plaintiff's] broadest argument is that the Plan violates § 504 because it provides "unequal benefits" to persons with mental illness. Although [Plaintiff] does not offer a yardstick by which to measure inequality, we may fairly assume that the restrictions cause inequality, in some sense of the word, as between those disabled by mental illness and persons disabled only by physical impairments or not disabled at all. The question, however, is whether the probable inequality is the sort of harm the Rehabilitation Act was intended to redress. The Supreme Court has held unanimously that it is not. *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). The Court in *Alexander* concluded that Tennessee's generalized limitations on Medicaid payments, which fell disproportionately on disabled individuals because of their greater medical needs, were not subject to challenge under § 504 merely because of that disproportion.

82 F.3d 1059, 1060–61; *see Traynor v. Turnage*, 485 U.S. 535, 549 (1988) ("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons."). Thus, under the ADA, a lack of parity between different services addressing different mental and physical emergencies

Page 19 -  Defendant Washington County Consolidated Communications Agency's Reply
in Support of its Motion to Dismiss Plaintiffs' Complaint

does not constitute discrimination in any form.  Accordingly, Plaintiffs' claims should be dismissed.

> **5.      Plaintiffs' Complaint Seeks A Higher Standard of Care or New Services, Which Is Not Covered Under the ADA.**

In the interest of efficiency, the Agency reiterates its arguments on pages 29-34, and adopts and incorporates by reference the arguments in Washington County's Reply in Support of Rule 12 Motions, at 12-15, rebutting Plaintiffs' argument that Plaintiffs neither seek a higher standard of care nor a new service. CR, at 23.

> **6.      Plaintiffs' Reliance on the U.S. Department of Justice's Statement of Interest Filed in A Different Case is Misplaced.**

Plaintiffs rely heavily on the United States Department of Justice's (DOJ) statement of interest (the "DOJ Statement") filed in a different, yet equally flawed action in the U.S. District Court for the District of Columbia. *Bread v. District of Columbia*, No. 1:23-cv-01945 (D.D.C. Feb. 22, 2024), ECF No. 50, https://perma.cc/C8GA-97R. The DOJ Statement largely echoes the legal arguments and cases cited by Plaintiffs in their Consolidated Response. *See generally* DOJ Statement. And for all the reasons stated above and in the Agency's Motion, the DOJ's ADA analysis is incorrect.

In the last two years, the DOJ, through its 2022 guidance,[4] the DOJ Statement filed in *Bread*, and two of its recent reports investigating police departments,[5] has advanced a *novel*

---

[4] *See* DOJ and Dep't of Health & Human Servs., *Guidance for Emergency Responses to People with Behavioral Health or Other Disabilities* 3-4 (2023), *available at* https://www.justice.gov/d9/2023-05/Sec.%2014%28a%29%20-%20DOJ%20and%20HHS%20Guidance%20on%20Emergency%20Responses%20to%20Individuals%20with%20Behavioral%20Health%20or%20Other%20Disabilities_FINAL.pdf (last accessed June 14, 2024).

[5] *See* U.S. DOJ and U.S. Attorney's Office District of Minnesota, *Investigation of the City of Minneapolis and the Minneapolis Police Department*, *available at* https://www.justice.gov/d9/2023-06/minneapolis_findings_report.pdf (last accessed June 14, 2024); U.S. DOJ and U.S. Attorney's Office Western District of Kentucky, *Investigation of*

Page 20 -   Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint

theory of what "equal opportunity" looks like for an individual with a mental health disability's access to emergency behavioral health services.[6] Although the ADA has been on the books for *more than 30 years* (and Section 504 decades before that) and, if Plaintiffs' Complaint is correct, the discrimination alleged here is pervasive throughout the country, neither Plaintiffs nor the DOJ have identified *a single ADA (or Section 504) case* that has expanded the scope of the ADA to require parity between emergency services offered for mental and physical disabilities or "comparable responses to physical health emergencies and mental health emergencies." Compl. (Prayer for Relief). And, for the reasons explained in the Agency's Motion and here, the ADA does not apply to issues in the Agency's emergency response system Plaintiffs seek to address.

Notably, the DOJ's own technical assistance guides to state and local governments specifically address how local governments can ensure that their 911 operations and emergency response systems comply with the ADA. The guidance make no mention of local governments needing to take any action or create any services that would guarantee a particular type of response to mental health emergencies.[7] Instead, the guidance discusses many of the same issues the *Brooklyn Center* and *Communities Actively Living* courts considered, including ensuring that

---

*the Louisville Metro Police Department and Louisville Metro Government*, available at https://www.justice.gov/opa/pr/justice-department-finds-civil-rights-violations-louisville-metro-police-department-and (last accessed June 14, 2024).

[6] In its Statement, the DOJ states that it only takes a position on the narrow legal issues presented by the District of Columbia's Title II and Section 504 of the Rehabilitation Act. Statement, at 6 n.1. While the DOJ repeats the plaintiffs' allegations because of the requirement to take the plaintiff's allegations as true at the motion to dismiss stage, *see id.* at 9 n.2, it is notable that the DOJ has also recently awarded the public entities a grant to expand the agencies' co-response program, recognizing the program as a best practice for responding to individuals who may be experiencing a mental or behavioral health crisis. *See* Bureau of Justice Assistance, *Metropolitan Police Department_FY23 Law Enforcement Behavioral Health Response Program*, available at https://bja.ojp.gov/funding/awards/15pbja-23-gg-02170-ment (last accessed June 14, 2024).

[7] *See* U.S. Department of Justice, Civil Rights Division, *Emergency Planning*, https://www.ada.gov/topics/emergency-planning/ (last accessed June 14, 2023).

Page 21 -  Defendant Washington County Consolidated Communications Agency's Reply
          in Support of its Motion to Dismiss Plaintiffs' Complaint

shelters made available in the event of an emergency have accommodations that are accessible to those with mobility impairments. The guidance also discusses the need for 911 accommodations for individuals with hearing impairment to ensure that they can effectively communicate with 911 call takers. Before the last two years, the guidance from the DOJ has consistently advocated that individual benefits offered by a local government's emergency response programs contain accommodations that allow those individual benefits and services to be accessible to individuals with disabilities. Plaintiffs' and the DOJ's theory that the ADA requires services addressing a particular disability to achieve parity with services addressing a different disability or emergency is a departure from decades of case law and guidance. No such departure is warranted by the Acts and case law.

## III.    Alternative Motions Under Federal Rules of Civil Procedure 12(e) and 12(f).

The Agency rests on the argument provided in support of their joinder of Washington County's Rule 12(e) and (f) motions to strike and to make more definite and certain.

///

///

///

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OREGON 97205

## CONCLUSION

For the reasons stated above, the Agency respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

DATED this 14th day of June, 2024.

MILLER NASH LLP


*s/Iván Resendiz Gutierrez*

Heather J. Van Meter, OSB No. 29028
Iván Resendiz Gutierrez, OSB No. 154617
heather.vanmeter@millernash.com
ivan.resendiz@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendant Washington County Consolidated Communications Agency*

4887-5085-8177.1

Page 23 -  Defendant Washington County Consolidated Communications Agency's Reply in Support of its Motion to Dismiss Plaintiffs' Complaint