Julian Clark
Jenn Rolnick Borchetta
American Civil Liberties Union
Foundation, Inc.
125 Broad Street, 17th Floor
New York, NY 10004-2400
jclark@aclu.org
jborchetta@aclu.org (929) 969-4365

David Boyer, OSB # 235450
Meghan E. Apshaga, OSB #232137
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205-2748
dboyer@droregon.org
mapshaga@droregon.org
(503) 243-2081 ext. 301

Brian Dimmick
Westley Resendes
American Civil Liberties Union
Foundation, Inc.
915 15th Street NW Washington, DC
20005-2302
bdimmick@aclu.org
wresendes@aclu.org
(202) 638-2210

Wilson Baker
American Civil Liberties Union
Foundation, Inc.
425 California Street
San Francisco, CA 94104-2102
wbaker@aclu.org
(415) 570-8011

Kelly Simon, OSB #154213
American Civil Liberties Union
Foundation of Oregon, Inc.
PO Box 40585
Portland, OR 97240-0585
ksimon@aclu-or.org
(503) 227-3186

Daniel L. Brown
Laura L. Chapman
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
dbrown@sheppardmullin.com
lchapman@sheppardmullin.com
NY Telephone: (212) 634-3095
SF Telephone: (415) 434-9100

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY, | Case No. 3:24-cv-00235-SB |
| Plaintiffs, | CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO FINDINGS AND RECOMMENDATION |
| v. | |
| WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon, | District Judge Nelson Magistrate Judge Beckerman |
| Defendants. | |

## INTRODUCTION

The Complaint is based on a simple principle of equality: in Washington County's unified emergency response system, health emergencies associated with people with mental health disabilities must receive an effective health response—not an ineffective law enforcement response—just as physical health emergencies do.

Defendant Washington County ("Defendant County") and Defendant Washington County Consolidated Communications Agency ("Defendant Agency") (collectively, "Defendants") jointly operate this unified emergency response system ("Defendants' Service") but do not provide County residents with mental health disabilities equal opportunity to access its benefit. When a person in the County experiences a physical health emergency, such as a heart attack, a request for Defendants' Service prompts a response from qualified health professionals who assess and stabilize the individual and, if needed, connect them with follow-up services.

In stark contrast, when a person in the County experiences a mental health emergency, such as acute psychosis, a request for the Service by default prompts the dispatch of law enforcement officers, who are trained to investigate criminal activity and to forcibly subdue and detain suspects rather than to assess and stabilize a health emergency. A heart attack and acute psychosis are both health emergencies, but Defendants only treat the former as such.  As explained more fully in Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, ("Pls.' Opp'n"), ECF No. 28,[1] this inequality is discriminatory under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") (collectively "the Acts"). The

---

[1] References to ECF numbers without a preceding case number are to the case docket in the pending action. Page number pin citations are to ECF pagination, not the internal pagination of the documents referenced.

Acts require Defendants to ensure that their Service provide people with disabilities the same opportunity to benefit from them as people without disabilities.

Magistrate Judge Beckerman ("Judge Beckerman") diligently considered the motions before her and correctly determined that Plaintiff Disability Rights Oregon ("DRO") and Plaintiff Joshua Wesley (collectively, "Plaintiffs") plausibly alleged claims of disability discrimination under Title II of the ADA and Section 504. In reaching her determinations, Judge Beckerman had the benefit of a factually-detailed and well-pleaded complaint ("Compl."), ECF No. 1, five briefs, ECF Nos. 21, 25, 28, 32, 33, two declarations, ECF Nos. 26, 28-1, a memorandum of supplemental authority, ECF No. 38, and a live, hour-and-a-half hearing that produced a fifty-six-page transcript. *See* Tr. of Motions to Dismiss Hr'g, attached hereto as Exhibit 1 ("Transcript"). Judge Beckerman's careful and attentive consideration of this matter resulted in a well-reasoned and thoroughly-researched seventy-three-page Findings and Recommendation ("F & R") that correctly concluded that Plaintiffs plausibly alleged facts sufficient to support the asserted causes of action. ECF No. 40 at 2 ("[T]he Court recommends that the district judge deny both motions.").

Defendants used the opportunity to object to Judge Beckerman's F & R as an attempt to reargue the merits of their motions—arguments the F & R had expressly rejected. *Cf.* Fed. R. Civ. P. 72(b) (requiring specific objections to a magistrate's findings and recommendation); 28 U.S.C. § 636(b)(1). Thus, there is nothing new for the Court to consider that Judge Beckerman has not already thoroughly and ably addressed.

In reiterating their prior arguments, Defendants make numerous objections that are inaccurate, irrelevant, or otherwise without merit. Given the great liberties Defendants have taken

with the record,[2] and their attempts to reframe and mischaracterize Plaintiffs' allegations and arguments,[3] Defendants' objections should be summarily overruled. Relatedly, to the extent Defendant Agency objects to the F & R's "factual findings," *see* Agency's Objections at 10–16, they too should be immediately dispensed with because Judge Beckerman did not make factual findings—a decision on a motion to dismiss for failure to state a claim is purely a ruling on a question of law without any factual determination to be made by the trial court. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (a decision on a motion to dismiss for "failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is a ruling on a question of law[.]"); *see also George v. Dutcher*, No. 3:18-CV-00604-MMD-WGC, 2019 WL 1118562, at *1 (D. Nev. Feb. 21, 2019) ("Review under Rule 12(b)(6) is essentially a ruling on a question of law."), *R. & R. adopted*, No. 3:18-CV-00604-MMD-WGC, 2019 WL 1117904 (D. Nev. Mar. 11, 2019).  Instead, Judge Beckerman properly supported her legal conclusions about the sufficiency of Plaintiffs' factual allegations with accurate descriptions of them from the Complaint, as will be discussed further below.

---

[2] For example, Defendant Agency offers new alleged evidence in its Objections, *see, e.g.*, Defendant Agency's Objections ("Agency's Obj."), ECF No. 47 at 28 (citing the Defendant County's website). Such evidence is clearly impermissible as the Court's review of the F&R is strictly limited to the record. A decision on a motion to dismiss assesses the legal sufficiency of a civil complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

[3] *See, e.g.*, Defendant County's Objections ("Cnty.'s Obj."), ECF No. 46 at 11 (stating incorrectly that "Plaintiffs do not allege they are denied the benefits of the program's emergency medical services." *See* ECF No. 1 ("Compl.") ¶ 19); Agency's Obj. at 7 (stating incorrectly that Plaintiffs argued the Acts require public entities to allocate the same resources to address different types of medical emergencies).

For these reasons, as well as those set forth herein, Plaintiffs respectfully request that the Court overrule Defendants' Objections and adopt the F & R in full.[4]

## STANDARD OF REVIEW

The Court reviews de novo "any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). For findings and recommendations to be "*properly objected to*," the objecting party must "file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2) (emphasis added). When a party merely reiterates its prior arguments, the party fails to make "specific objections" in accordance with Rule 72. *See Kenneally v. Clark*, No. CV-10-67-BU-RFC-JCL, 2011 WL 4959672, at *1 (D. Mont. Oct. 18, 2011) ("Objections to a magistrate's Findings and Recommendations are not a vehicle for the losing party to relitigate its case."); *Chith v. Haynes*, C18-5342 BHS, 2021 WL 4744596, at *1 (W.D. Wash. Oct. 12, 2021) ("Objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge."); (citing *Fix v. Hartford Life & Accident Ins. Co.*, No. CV 16-41-M-DLC-JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017)); *K.K. v. San Bernardino Cnty.*, No. 5:24-CV-00123-FWS-AGR, 2024 WL 4165114, at *1 (C.D. Cal. Sept. 11, 2024) (same).

In the absence of proper objections, de novo review is not necessary. *McRae v. von Blanckensee*, No. CV-20-00510-TUC-RM, 2021 WL 2685686, at *2 (D. Ariz. June 30, 2021) ("Where objections raised 'are repetitive of the arguments already made to the magistrate judge, a de novo review is unwarranted.'"). Instead, the district judge need only satisfy itself that there is

---

[4] Plaintiffs also object to Defendant Agency's request for oral argument. The motions at issue have been thoroughly briefed and argued, such that oral arguments are not necessary. Nonetheless, undersigned counsel is prepared to appear and provide additional context, if the Court so desires.

no clear error on the face of the record in order to accept the recommendation, *see* 28 U.S.C. § 636(b)(1), and is permitted to overrule the objections without analysis. *See Kenneally*, 2011 WL at *1 ("Since there is no net efficiency in referring the matter to a magistrate judge if this court must still review the entire matter de novo because the objecting party merely repeats the arguments rejected by the magistrate, this Court follows other courts that have overruled general objections without analysis."); *Sullivan v. Schiro*, No. CV-04-1517-PHX-DGC, 2006 WL 1516005, at *1 (D. Ariz. May 30, 2006) (collecting cases)).

Even when reviewing a magistrate judge's ruling de novo, however, the Supreme Court has explained that "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980). Thus, a district court may defer to a magistrate judge's findings and recommendation. *See* U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Indeed, a decision based on the *de novo* review of a F & R can be as simple as, "Defendants have filed Objections. Plaintiff has filed a Response to Defendants' Objections. The Court has reviewed the record, the F&R, and the Objections, and Response and finds no error. The F&R is therefore ADOPTED." *Jeremiah v. Nooth*, No. 2:16-CV-00532-MK, 2023 WL 4199903, at *1 (D. Or. June 27, 2023) (citations to case docket numbers omitted).

## ARGUMENT

### I.   Judge Beckerman Properly Denied Defendants' Motions to Dismiss

In concluding that the Complaint plausibly alleges facts sufficient to state actionable claims of disability discrimination, the F & R correctly determined that Plaintiffs have met their burden at the pleading stage. *See* F & R at 65.

A. *The F&R Properly Applied the Correct Legal Standard in Evaluating and Denying Defendants' Motions to Dismiss*

Defendants' argument that Judge Beckerman erred in applying the pleading standard by failing to distinguish between well-pleaded factual allegations and legal conclusions is without merit. *See* Cnty.'s Obj. at 4–10; Agency's Obj. at 10–11. The standard to be applied upon a motion to dismiss a pleading for failure to state a cause of action is well established: A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when, as here, it "contain[s] sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The F & R also correctly stated that all well-pleaded allegations of material fact must be construed "in the light most favorable to the non-moving party." F & R at 4 n.1 (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)); *see* Ex. 1 at 18:12–15 ("Based on the complaint and the fact that the Court has to—based on the procedural posture, that it has to take [P]laintiffs' facts in the light most favorable to them") (quoting counsel for Defendant Agency). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663; *see also Moss v. U. S. Secret Serv.*, 572 F. 3d 962, 969 (9th Cir. 2009). Judge Beckerman's F & R both properly described this standard, F & R at 15, and properly applied it. *See id.*

Defendants focus many of their objections on Judge Beckerman's "Findings" regarding the facts alleged by Plaintiffs, apparently hoping that this Court will improperly conclude Judge Beckerman was required to reframe and reinterpret those allegations to suit Defendants. *Contra Daniels-Hall,* 629 F.3d at 998 (explaining facts must be construed in light most favorable to the

non-moving party). Unfortunately for Defendants, Judge Beckerman properly interpreted the allegations that Plaintiffs actually made in their Complaint—not those Defendants misconstrued in their favor—and properly applied the motion to dismiss standard to those allegations.  For example, Defendants argue that the F & R erred in concluding "the relevant service at issue here is the provision of consistent access to emergency medical service," F & R at 40, because "[t]he factual allegations do not allege any denial of the emergency medical services." Cnty.'s Obj. at 5; *see also* Agency's Obj. at 19 ("Plaintiffs are not—as stated in the F&R—complaining about not having access to AMR/EMS services or other emergency medical services at all.") Defendants here attempt to reframe Plaintiffs allegations to focus narrowly on access to AMR/ EMS. This construction of the Service is plainly contradicted by the record. The Complaint clearly alleges that Defendants' provision of the full range of emergency medical services is at issue, Compl. ¶¶ 19, 242, 256.  And the Complaint is also replete with plausible allegations that in regard to mental health emergencies, people with mental health disabilities in the County do not receive a primary response from *any* health professionals, EMTs or otherwise, and thus, are deprived of "direct, immediate, and meaningful access to the *emergency medical services* that are provided to people without such disabilities." *Id.* ¶¶ 19, 98; *see also id.* ¶¶ 2, 238–39 (explaining Plaintiffs seek the benefit of emergency medical intervention—"assessment, stabilization, and treatment" of an "emergent health issue at the point of contact") (emphasis added).

Defendants' remaining objections relating to Judge Beckerman's purported misapplication of the proper pleading standard are similarly meritless. For example, Defendant County's assertion that Judge Beckerman erred by disregarding or failing to consider many of the Complaint's factual allegations, *see* Cnty.'s Obj. at 6, is contradicted by the F & R. *See* F & R at 4 n. 1. Additionally, at this stage of the litigation, it was proper and well within Judge Beckerman's discretion to defer

the question of whether Plaintiffs' requested relief constitutes a fundamental alteration. *See infra* Section III. As demonstrated by the F & R, Judge Beckerman considered all of Plaintiffs' allegations to decide the dispositive legal question before her: whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); F & R at 15. In the F & R, Judge Beckerman construed as true Plaintiffs' factual allegations, *see* F & R at 4 n. 1, 5–14, then properly applied the pleading standard. *Id.* at 25–66. After doing so, Judge Beckerman concluded that Plaintiffs alleged sufficient factual allegations to permit the court to reasonably infer that Defendants are jointly liable for discrimination by reason of disability. *Id.* at 66. Therefore, the F & R's analysis was not in error.

> ### B. The F & R Properly Concluded that Plaintiffs Plausibly Allege That Defendants Do Not Afford People with Mental Health Disabilities Meaningful Access to Defendants' Service

To find a complaint has stated a plausible claim of disability discrimination under Title II of the ADA, a judge must conclude, as Judge Beckerman has in the F & R, that the complaint contains sufficient factual matter, accepted as true, to show that plaintiffs: (1) are "individual[s] with a disability;" (2) that they are "otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) that they were "either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [their] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (holding that neutral programs that unduly burden people with disabilities discriminate by "reason of [] disability"); *see* F & R at 25–27. The F & R also correctly concluded that the Complaint sufficiently pleads causation. *See id.* at 65–66.

Defendants do not meaningfully object to the F & R's conclusion that Plaintiffs meet the first two elements: that Plaintiff Wesley and Plaintiff DRO's clients are "qualified individuals with disabilities" or that they are "otherwise qualified to participate in and receive the benefit of Defendants' Service. *See* Cnty.'s Obj. at 4 ("Defendant Washington County's motion to dismiss does not dispute that Plaintiffs Wesley and DRO's represented constituents are individuals with disabilities who are qualified to participate in the emergency response program and receive 911 emergency dispatch services."); Defendant Agency's Motion to Dismiss, ECF No. 25 (arguing for dismissal on elements three and four of a Title II claim); Defendant Agency's Reply, ECF No. 33 (same); Ex. 1 at 10:22–23 ("They are bringing litigation on behalf of an individual with a disability.").[5] Defendants also do not contest that they are public entities as defined under Title II of the ADA, *see* 42 U.S.C. § 12132, or that they receive federal financial assistance as defined under Section 504. *See* 29 U.S.C § 794(a). Instead, Defendants only object to the F & R's conclusion that Plaintiffs' factual allegations satisfy elements three and four—that Plaintiffs were excluded from or denied the benefits of the Service, or otherwise discriminated against, by reason of disability. *See* Cnty.'s Obj. at 16–18; Agency Obj. at 9, 29–30.

    i.  The F&R Properly Defined the Relevant Service at Issue

---

[5] Although Defendant Agency's "Objection No. 3" states "[c]ontrary to the F&R, the Agency [d]isputes that Plaintiffs [h]ave [a]lleged that Plaintiff Wesley and Plaintiff DRO's [c]lients and [c]onstituents [h]ave [q]ualifying [i]mpairments[,]" Agency Obj. at 25, the Agency in fact makes no attempt to dispute Plaintiffs' factual allegations on these points. The Agency merely suggests that some individuals without mental health disabilities might have mental health crises, and that call takers may not always know which individuals have disabilities. *Id.* These facts are irrelevant to the first two elements of Plaintiffs' claim and are not a basis for challenging the allegations supporting them.

Contrary to Defendant County's assertion,[6] *see* Cnty.'s Obj. at 11–13, the F & R correctly found that the relevant service at issue is Defendants' provision of emergency medical service, which is defined by the common purpose of receiving information about emergencies and delivering the benefit of emergency medical intervention to patients facing *any* type of health emergency. *See* F & R at 46 ("In sum, the Court concludes that the relevant service at issue here is the provision of consistent access to emergency medical service through the emergency communications system."); s*ee also* Compl. ¶¶ 3, 108. Although Defendants' Service dispatches or facilitates the dispatch of personnel that respond to other potential emergency situations, *see* F & R at 41 ("Defendants offer consistent access to police and fire services and, as relevant here, emergency medical service through the emergency communications system when an emergency call is made to 911."), Compl. ¶ 236, the F & R correctly determined that the "gravamen" of Plaintiffs' claims is "that Defendants discriminatorily deny Plaintiffs meaningful access to the benefit of consistent access to emergency medical service through the emergency communications system." F & R at 60; Compl. ¶¶ 2, 58–59, 76, 81, 87, 99, 107, 120, 158.

The F & R properly reasoned that because "the relevant service is a mixed question of law and fact[,]" F & R at 38, the court should construe the service based on "[c]onsideration of Defendants' offerings and the benefits and purpose of Defendants' service[,]" which at the motion to dismiss stage, are informed by Plaintiffs' factual allegations. *Id.* at 40. The Complaint sufficiently alleges that the purpose of this Service is to allow individuals experiencing a health

---

[6] Defendant Agency attempts to reference the County's arguments that the F & R "erred when defining the relevant service at issue[,]" Cnty.'s Obj. at 11–13, but an objection by reference does not constitute a "specific written objection[]" as required by Fed. R. Civ. P. 72(b)(2). *See Edwards v. Niagara Credit Sols., Inc*., 586 F. Supp. 2d 1346, 1348 (N.D. Ga. 2008), *aff'd on other grounds,* 584 F.3d 1350 (11th Cir. 2009).

emergency to "call Defendants for emergency help[,]" "request and receive emergency response services[,]" *id.* ¶¶ 2, 104, that provide the benefit of emergency medical intervention—"assessment, stabilization, and treatment" of an "emergent health issue at the point of contact." *Id.* ¶¶ 238–39. Defendants would prefer to redefine their emergency response services as focused only on the dispatch of police, fire and EMS, Cnty.'s Obj. at 5, 11, but at this stage of the litigation Plaintiffs' complaint and its plausible allegations that Defendants jointly operate a unified emergency service controls.

Thus, contrary to Defendants' arguments, *see* Cnty.'s Obj. at 12 ("Plaintiffs do not allege the denial of the program's benefit of emergency medical services that dispatch an ambulance with EMTs and paramedics."); Agency's Obj. at 19 ("Plaintiffs are not—as stated in the F&R—complaining about not having access to AMR/EMS services or other emergency medical services at all."), it cannot be reasonably argued that Plaintiffs' claims do not pertain specifically to Defendants' responses to medical emergencies. As such, the F & R did not err in framing the relevant service as it did. *See* F & R at 45 n.19 ("Even if the Court were to define the service more narrowly, such as consistent access to AMR generally, consistent access to EMTs, or consistent access to paramedics through the emergency communications system, Plaintiffs have nonetheless alleged that Defendants do not consistently dispatch those services as a primary response to all mental health related emergencies. (*See* Compl. ¶ 87)").

      ii.  The F & R Properly Concluded Plaintiffs Plausibly Alleged Defendants' Service Discriminates Against People with Mental Health Disabilities by Reason of Disability

The F & R correctly concluded that Defendants' Service—which is available to *all* people for *all* health emergencies—discriminatorily provides a health-led emergency response to all health-related emergencies except for those emergencies uniquely associated with mental health

disabilities. *See* F & R at 65; *see also* Compl. ¶¶ 236, 238–39. The F & R found the Complaint adequately alleged that for mental-health-related medical emergencies, even those without criminal activity or any threat of violence, Defendants' Service provides a police-led response that does not provide the benefit of emergency medical intervention. *See* F & R at 60 ("Instead of EMTs, paramedics, or licensed mental health professionals, Defendants dispatch police officers, who according to the allegations in the complaint, do not provide *any* medical care (not merely negligent medical care)."); Compl. ¶¶ 2, 109, 239. Indeed, "[i]nstead of receiving medical training, officers are taught to command and control and always to be prepared to defend themselves." *See* F & R at 7; Compl. ¶¶ 63, 239. Unlike police officers, the training that mental health clinicians receive is especially critical when dealing with a mental health emergency.

Further, the Complaint plausibly alleged that typically, these mental health emergencies do not create any danger to other people, and, if there is ever a danger, it is to the person experiencing the emergency.[7] Accordingly, dispatching a police-led response to mental health emergencies is unwarranted[8] and prevents individuals with disabilities from receiving appropriate medical care. *See* F & R at 60 ("The Court concludes that Plaintiffs do not allege a medical malpractice claim but instead allege that Defendants discriminatorily deny Plaintiffs meaningful access to the benefit of consistent access to emergency medical service through the emergency communications

---

[7] *See* Compl. ¶¶ 52-55 ("[T]he overwhelming majority of people with mental illness are not violent and … the majority of people who are violent do not have identifiable mental illness. . . . Because an overwhelming percentage of people with mental illness are not violent, and because the occurrence of serious mental illness is relatively low, it is estimated that only about 4% of criminal violence can reasonably be attributed to mentally ill individuals." John S. Rozel & Edward P. Mulvey, *The Link Between Mental Illness and Firearm Violence: Implications for Social Policy and Clinical Practice* 448 (2017) (citations omitted)).

[8] The F & R explains that this is a factual question that is better assessed at a later stage of litigation, after the parties have had time to develop the record through discovery. *See* F & R at 55.

system."); Compl. ¶¶ 2, 11, 20, 21, 59, 70, 74, 77, 79. Defendants argue that the discriminatory use of law enforcement to respond to mental health emergencies results from allegedly inherent differences between physical and mental health emergencies, and not from discrimination. *See* Cnty.'s Obj. at 8; Agency's Obj. at 15-16. Here again, Defendants attempt to reframe Plaintiffs' allegations by focusing on the possibility that some small number of mental health emergency calls may also present legitimate safety concerns not based on stereotypes. But Plaintiffs' Complaint addresses the default response to all mental-health-related emergency calls, including the many calls that do not present such threats.

Plaintiffs allege plausible facts to show that Defendants treat people with mental health disabilities uniformly as "an immediate threat to people or property" regardless of a call's individual circumstances. Compl. ¶ 113–14; *see* Defendant Agency's Call Taking Manual ("Agency's Manual"), ECF 26 at 34 (instructing call takers to code all behavioral health calls as "[s]ituations that may lead to violence without immediate officer assistance."); Compl. ¶¶ 113–115. As reflected in the Agency's Call Taking Manual, *see* Agency's Manual at 79, and as Plaintiffs' counsel explained at oral argument, some mental-health-related emergency call types—including "BHI-Behavioral Health Incident"—are coded as "medical" calls, but unlike any other medical call types, receive a default primary response from law enforcement. *See* Ex. 1 at 33:4–14. Finally, contrary to the Defendants' continued insistence, s*ee* Cnty.'s Obj. at 17–18; Agency's Obj. at 15, at no time was a law enforcement response appropriate for the medical emergencies specifically described in the Complaint. S*ee* Compl. ¶¶ 16–25, 137–61.

Plaintiffs plausibly alleged that most mental health emergencies arise from mental health disabilities, which most commonly are depression, anxiety, and post-traumatic stress disorders. *See* Compl. ¶ 51. And as the F & R correctly identified, courts have recognized these conditions

as actual disabilities under the disability statutes. *See* F & R at 29–30 (citing *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1174–75 (9th Cir. 1998) ("noting that depression, PTSD, and panic attacks could constitute a disability under the ADA"); *Cal. Found. for Indep. Living Centers v. Cnty. of Sacramento*, 142 F. Supp. 3d 1035, 1061 (E.D. Cal. 2015) (same)); *see also* 28 C.F.R. §§ 35.108(d)(2)(ii)–(iii)(K) (noting that major depressive disorder and PTSD, among other mental impairments, "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity").

While Plaintiffs do not concede that a "but-for" standard of causation is appropriate and still maintain that a motivating factor standard of causation applies, *see* Pls.' Opp'n at 16–17 n. 3, Plaintiffs agree with Judge Beckerman's finding that "but for a disability, people [experiencing] a mental health crisis would receive meaningful access to the benefit and that they were denied meaningful access to a benefit solely by reason of disability."[9] F & R at 65. Contrary to Defendants' assertion, Cnty.'s Obj. at 18, Plaintiffs have plausibly alleged facts to satisfy this causation standard. *See* Compl. ¶¶ 137–51, 169–218. Plaintiffs need not show, as Defendant County suggests, that police are dispatched because of an individual's mental health disability. Cnty. Obj. at 18. Rather, but for the existence of their mental health disabilities, people like Plaintiff Wesley and Plaintiff DRO's constituents would not require a response to a mental health emergency, and thus would not receive an inappropriate one. As noted in Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, at least one court held that the plaintiff met the

---

[9] This is the correct standard by Section 504, however, Title II of the ADA does not require someone's disability status to be the *sole* factor for discrimination. Title II states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

"but-for" causation standard under Title I of the ADA when "the plaintiff stated the allegedly discriminatory action was 'because of his psychiatric disability' and alleged that he specifically informed the defendant about his disability." *See* Pls.' Opp'n at 16–17 n.3 (quoting *Gunzenhauser v. Garland*, No. 22-CV-03406-WHO, 2023 WL 2167387, at *6 (N.D. Cal. Feb. 21, 2023). Therefore, the F & R properly concluded that but for a disability, people experiencing a mental health crisis would receive meaningful access to the benefit of emergency medical intervention. F & R at 65.

## II. The F & R Properly Concluded Plaintiffs' Seek Neither a Higher Standard of Care nor a New Service

Judge Beckerman correctly rejected Defendants' mischaracterization that Plaintiffs' well-pleaded allegations: (1) seek a higher standard of care, *see* Cnty.'s Obj. at 13, Agency's Obj. at 22, and (2) seek a new service, program, or activity. *See* Cnty.'s Obj. at 14; Agency's Obj. at 8. Neither of Defendants' objections to the court's dismissal of these arguments is persuasive and both should be summarily rejected.

In rejecting Defendants' flawed argument that Plaintiffs seek a higher standard of care,[10] the F & R agreed with Plaintiffs that, at their core, Plaintiffs' claims allege the disparate *type of*

---

[10] Defendants cite *Greene v. City of New* York, No. 21-cv-05762, 2024 WL 1308434, at *1 (S.D.N.Y. Mar. 26, 2024) to support the proposition that "[t]he Acts do not mandate the 911 program to dispatch only mental health services," *see* Cnty.'s Obj. at 10, and to suggest Plaintiffs' claims are not cognizable. But the claims at issue in *Greene* are fundamentally different than the claims alleged here and thus, *Greene* is not instructive. In *Greene v. City of New York*, plaintiffs challenged the procedures for transporting individuals deemed "emotionally disturbed" to mental hospitals, not the city's emergency response program as a whole. *See Greene*, 2024 WL*; contra* Cnty.'s Obj. at 9 ("*Greene* dismissed a challenge to NYPD's dispatch system"). The court held transport procedures non-discriminatory because they applied solely to people with mental health disabilities. *Greene*, 2024 WL at *16. *Greene*'s analysis of a discrete emergency service exclusively for people with disabilities does not speak to Plaintiffs' claims alleging discrimination with respect to the Defendants emergency response program as a whole, that serves disabled and

*response* that Defendants' Service assigns to health emergencies associated with mental health disabilities deprives them of an equal opportunity to benefit from the Service. *See* F & R at 59; Pls.' Opp'n at 23. Judge Beckerman correctly found that Plaintiffs do not allege Defendants discriminate against them because of the unequal *outcomes* that result from Defendants' responses to their health emergencies, or the *inadequate treatment* the personnel assigned to those responses provide. F & R at 59. Instead, the court found the pleadings' inclusion of the common outcomes of Defendants' response to mental health emergencies serve to illustrate how Defendants deny people with mental health disabilities equal opportunity to access the Services' benefits that others receive. *See id.* at 60; *see also* Compl. ¶ 215 ("instead of benefiting from Defendants' emergency response services—like people experiencing a physical health emergency in the County routinely do—Mary Roe suffered an array of harms."); *see also id.* ¶¶ 158, 175, 192 (describing the steps police responders did not take to afford Plaintiffs an opportunity to benefit from Defendants' Service).

Relatedly, the F & R properly concluded that Plaintiffs do not seek "new services," as Defendants contend. *See* F & R at 55 ("Plaintiffs do not seek a new service but instead seek meaningful access to Defendants' existing service."). In search of a basis to object to Judge Beckerman's sound conclusion, Defendants argue that "there is no current provision for on-site treatment of mental health emergencies by qualified mental health professionals as first responders[,]" Cnty.'s Obj. at 14, *see* Agency's Obj. at 8, and therefore, a medical response to mental health emergencies would constitute a new service. Defendants' assertion is simply

---

non-disabled people alike. Demonstrating the difference, the *Greene* court granted the plaintiffs leave to amend, *id.* at *20, and the plaintiffs added new claims alleging discrimination in New York City's emergency response program in its entirety. *See* 3d Am. Compl., ECF 212 ¶¶ 444-52, Greene, 1:21-cv-05762 (June 7, 2024).

incompatible with Plaintiffs' factual allegations. The Complaint alleges Defendants' Service routinely responds to mental health emergencies. *See* Compl. ¶¶ 13, 87, 89–91, 96, 133) (alleging Defendants routinely respond to mental health emergencies and deploy qualified mental health professionals to a very small portion of them).[11] Accordingly, the F & R correctly found that expanding access to this existing component of an existing service does not constitute a request for a new service. *See* F & R at 55 ("Plaintiffs do not seek a new service but instead seek meaningful access to Defendants' existing service.").

**III.    The F & R Properly Concluded Defendants' Affirmative Defenses Are Premature**

Defendant County's objection that Judge Beckerman erred by "disregarding 'fundamental alteration' arguments as premature" is based on a mischaracterization of the F & R and is without

---

[11] In addition to the authorities cited in Plaintiffs' opposition to the motions to dismiss, Pls.' Opp'n at 6, a recent California district court opinion is instructive here.  In *Prado v. City of Berkeley*, No. 23-CV-04537-EMC, 2024 WL 3697037 (N.D. Cal. Aug. 6, 2024) the court denied a motion to dismiss on a claim that the city's outreach program to residents of homeless encampments discriminated because it did not include mental health professionals on the outreach teams.  In its analysis the court stated:

> The City argues that "the ADA does not require the City to offer mental health outreach" because "public entities are not required to create new programs" and "the City does not provide mental health services." … However, Plaintiffs are not asking the City to create a new mental health services program—they are asking for a modification to the City's existing homeless outreach program, by adding mental health professionals to the outreach team. On its face, the Plaintiffs have plausibly alleged they are being excluded from participation in an existing program – a "program" within the meaning of the ADA – that is directed at serving unhoused individuals such as themselves; they allege it would be a reasonable accommodation for the City's homeless outreach program to include mental health workers.

*Id.* at *24.

merit. Cnty.'s Obj. at 15–16; *accord* Agency's Obj. at 3 n. 1.[12] This objection appears to be based on the argument, already addressed above (*see supra* at Section I(B)(i)), that Plaintiffs are seeking the creation of a new service. *See* Cnty.'s Obj. at 15–16. The F & R noted that Plaintiffs made allegations in their Complaint that the requested services were not new, and properly concluded that "[t]o the extent that Defendants argue that they do not offer mental health clinicians as the *sole* first responders to anyone … the Court concludes that this fact is not dispositive at this stage of the litigation." F & R at 56. Defendants fail to cite any authority to support their contention that what Plaintiffs seek here—changes to the administration and operation of an existing service—could be deemed a new service and thus, arguably, a fundamental alteration. *See* Cnty.'s Obj. at 15–16.

Conversely, in their Response, Plaintiffs cite several cases supporting the proposition that it would be inappropriate for the court to consider the fundamental alteration defense at the pleading stage because Defendants bear the burden of proving this affirmative defense, *see* Pls.' Opp'n at 34–35, and whether a modification would constitute a fundamental alteration is "an intensively fact-based" inquiry that it is not appropriate to litigate at the motion to dismiss stage. *See id.* at 35 n.8. Because the F & R's conclusion on this point was well-supported by existing Ninth Circuit caselaw, the Court should reject Defendants' unsubstantiated objections.[13]

---

[12] Defendant Agency again attempts to incorporate by reference the County's objection that the F&R erred "by disregarding 'fundamental alteration' arguments as premature[,]" Cnty.'s Obj. at 15–16, but an objection by reference is not a "specific written objection" and thus, this objection should be overruled summarily. *See Edwards v. Niagara Credit Sols., Inc.*, 586 F. Supp. 2d 1346, 1349 (N.D. Ga. 2008), aff'd on other grounds, 584 F.3d 1350 (11th Cir. 2009) (stating purported incorporation by reference did not constitute "specific written objection" required by governing rule).

[13] Defendant Agency's argument that claims against it should be dismissed because the County, not the Agency, controls what emergency response services are available is without merit.

IV.    **The F & R Properly Concluded that Plaintiff Disability Rights Oregon Exhausted All Required Administrative Remedies Prior to Filing This Lawsuit**

Defendant Agency continues to assert incorrectly that Plaintiff DRO has a heightened pleading standard that requires it to exhaust an unspecified administrative remedy and to allege in its complaint that that it exhausted this administrative remedy. *See* Agency's Obj. at 11–12.

While the statute ("PAIMI Act") and regulation that govern DRO's work do include a requirement that DRO exhaust administrative remedies, that requirement is *de minimis*. The regulation "encourage[s]" techniques that aim to resolve disputes early, and the regulation contains an aspirational statement that "[d]isputes should be resolved whenever possible" using non-adversarial processes. 42 C.F.R. § 51.32(a)-(b). But that section of the regulation ends with "[t]he Act imposes no additional burden respecting exhaustion of remedies." *Id.* § 51.32(e).

In fact, DRO did attempt to use non-adversarial processes, and its Response to the Agency's Motion to Dismiss describes the letter and subsequent meetings held to attempt a resolution of the matter. *See* Decl. of David Boyer, ECF No. 28-1. This attempt at resolution is nearly identical to the attempt of Alabama's protection and advocacy organization with a similar fact pattern. *See Dunn v. Dunn*, 219 F. Supp. 3d. 1163 (M.D. Ala. 2016). Defendants have not identified any other administrative remedy Plaintiffs should have exhausted prior to the filing of the complaint.

Defendant Agency also alleges without foundation that DRO was required to plead that it met the exhaustion requirement. The PAIMI Act and the accompanying regulations do not contain

---

Agency's Obj. at 26. Plaintiffs allege that the County and the Agency together operate a uniform emergency response system, and are jointly liable for discriminatory emergency response. Compl. ¶ 83. Plaintiffs also allege the County contracts with the Agency for its provision of emergency telecommunications, an integral component of Defendants' emergency response program. *Id.*

such a pleading requirement.  Further, the Agency fails to cite any case law that would contradict the F & R's reliance on existing exhaustion precedent in the 9th Circuit.  See *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). Specifically, *Albino* stands for the proposition that failure to exhaust administrative remedies is an affirmative defense and is more appropriately argued at the summary judgement stage.  *See id.* at 1169.   The usual practice under the federal rules is to treat exhaustion as an affirmative defense and that practice should be followed unless there is substantial support to deviate.  That was not the case in *Albino*, and it is not the case here.

Plaintiff DRO fulfilled the minimal requirements to exhaust administrative remedies and was under no obligation to plead that in the Complaint.

## CONCLUSION

After construing all of the pleading's factual allegations as true and viewing them in light most favorable to Plaintiffs, Judge Beckerman correctly determined those facts plausibly gave rise to an entitlement to relief for the claims alleged. Thus, Plaintiffs respectfully submit that a review of the full record will support a finding of no error in the F & R's determinations, and therefore, respectfully request that the Court overrule Defendants' Objections and adopt the F & R in full.


Dated: October 25, 2024              Respectfully submitted,


                                     */s/* Julian Clark
                                     Julian Clark
                                     Jenn Rolnick Borchetta
                                     American Civil Liberties Union
                                     Foundation, Inc.
                                     125 Broad Street, 17th Floor
                                     New York, NY 10004-2400
                                     jclark@aclu.org
                                     jborchetta@aclu.org
                                     (929) 969-4365

David Boyer, OSB # 235450
Meghan E. Apshaga, OSB #232137
Disability Rights Oregon
511 SW 10th Ave., Suite 200
Portland, OR 97205-2748
dboyer@droregon.org
mapshaga@droregon.org
(503) 243-2081 ext. 301

Brian Dimmick
Westley Resendes
American Civil Liberties Union
Foundation, Inc.
915 15th Street NW Washington,
DC 20005-2302
bdimmick@aclu.org
wresendes@aclu.org
(202) 638-2210

Wilson Baker
American Civil Liberties Union
Foundation, Inc.
425 California Street
San Francisco, CA 94104-2102
wbaker@aclu.org
(415) 570-8011

Kelly Simon, OSB #154213
American Civil Liberties Union
Foundation of Oregon, Inc.
PO Box 40585
Portland, OR 97240-0585
ksimon@aclu-or.org
(503) 227-3186

Daniel L. Brown
Laura L. Chapman
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112-0015
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
dbrown@sheppardmullin.com
lchapman@sheppardmullin.com

NY Telephone: (212) 634-3095
SF Telephone: (415) 434-9100

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of October, 2024, I served the foregoing Plaintiffs' Consolidated Response in Opposition to Defendants' Objections to Findings and Recommendation on the parties below by electronic means through the Court's Case Management/Electronic Case File System.


Heather Van Meter
Ivan Resendiz
Miller Nash LLP
1140 SW Washington St., Suite 700
Portland, OR 97205
 *Attorneys for Co-Defendant Agency*

Karen O'Kasey
Ruth A. Casby
Zachariah H. Allen
Hart Wagner LLP
1000 SW Broadway, 20th Floor
Portland, OR 97205
 *Attorneys for Co-Defendant Washington County*

/s/ Julian Clark
Julian Clark
