IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, and JOSHUA WESLEY, | Case No.: 3:24-cv-00235-SB |
| Plaintiffs, <br> v. | ORDER |
| WASHINGTON COUNTY and WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, | |
| Defendants. | |

**Adrienne Nelson, District Judge**

United States Magistrate Judge Stacie Beckerman issued a Findings and Recommendation ("F&R") in this case on August 30, 2024, in which she recommended denying defendant Washington County's motion to dismiss for failure to state a claim and motion in the alternative to strike or make more definite certain allegations in the complaint and defendant Washington County Consolidated Communications Agency's motion to dismiss. The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

A district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). If any party files objections to a magistrate judge's proposed findings and recommendations, "the court shall make a de novo determination of those portions of the report[.]" *Id.* No standard of review is prescribed for the portions of the report for which no objections are filed, and no review is required in the absence of objections. *Thomas v. Arn*, 474 U.S. 140, 152-54 (1985). A district court judge is not, however, precluded from *sua sponte* review of other portions of the report, under a *de novo* standard or otherwise. *Id.* at 154. The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that, when no objection is filed, the recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

## BACKGROUND

Plaintiffs are Disability Rights Oregon ("DRO"), an organization that advocates for the rights of individuals with mental health disabilities as a Protection and Advocacy System designated under the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act, 42 U.S.C. §§ 10801-10851, and Joshua Wesley, a resident of Washington County who has depression and post-traumatic stress disorder. Compl., ECF [1], ¶¶ 35-39. They allege that defendants Washington County (the "County") and Washington County Consolidated Communications Agency (the "Agency") discriminate against people with mental health disabilities in the provision of defendants' emergency response services and programs. Specifically, plaintiffs allege that 911 callers who have physical health emergencies receive appropriate medical care from trained EMTs and paramedics, while callers who have mental health emergencies do not get medical care and instead receive a response from law enforcement officers. This kind of response, plaintiffs allege, can be extremely dangerous to a person in a mental health crisis and denies that person the medical care they need. They bring claims for discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *Id.* ¶¶ 231-257. Plaintiffs seek a judgment declaring that defendants' emergency response programs and services violate Title II of the ADA and Section 504 of the Rehabilitation Act and injunctive relief requiring defendants to implement emergency response programs and services that "provide comparable responses to physical health emergencies and mental health emergencies, and that ensure that mental health professionals are the default first responders for typical mental health emergencies." *Id.* at 59.

Defendants each filed separate motions to dismiss. The County argued that plaintiffs failed to state a claim because they do not allege discrimination on the basis of disability, but instead describe difference in services for dissimilar emergencies; that plaintiffs challenge the adequacy of defendants' mental health treatment, which is not actionable discrimination under the relevant statutes; that people with mental health disabilities have not been denied access to emergency services; and that plaintiffs impermissibly seek the implementation of a higher standard of care or a new service or program. *See*

County Mot. to Dismiss ("County MTD"), ECF [21], at 15-24. The County also moved, in the alternative, to strike certain allegations from the complaint as immaterial, impertinent, inflammatory, and relying on unauthenticated hearsay, and to clarify other allegations that it argues do not adequately state which defendant is the subject of the allegation. *Id.* at 24-27. The Agency raised similar arguments regarding the sufficiency of plaintiffs' claims and also argued that it does not control emergency services in Washington County and should be dismissed as a defendant. Agency Mot. to Dismiss ("Agency MTD"), ECF [25], at 20-34. In addition, the Agency argued that DRO failed to exhaust its administrative remedies as required by the PAIMI Act prior to filing this action. *Id.* at 17-19.

The F&R is lengthy and comprehensive, addressing each of defendants' arguments. Judge Beckerman first found that DRO was required to exhaust its administrative remedies pursuant to the PAIMI Act but that the Act does not require a plaintiff to plead exhaustion and "a failure to exhaust is not clear from the face of the complaint." F&R, ECF [40], at 22-24. Judge Beckerman further noted that the exhaustion requirement is not strict and that DRO had engaged in pre-litigation discussions with defendants and presented the results of a year-long investigation of the emergency response system. *Id.* at 23-24.

Turning to the arguments related to plaintiffs' claims, Judge Beckerman first found that plaintiffs sufficiently alleged that "Wesley and DRO's clients and constituents are individuals with a disability as that term is defined by the relevant statute" and defendants are public entities that receive federal funding, satisfying the requirements of the ADA and the Rehabilitation Act. *Id.* at 29-30. The parties disputed the proper definition of the service at issue. Judge Beckerman found that the relevant service was "the provision of consistent access to emergency medical service through the emergency communications system." *Id.* at 40, 46.

Judge Beckerman then found that plaintiffs adequately alleged that "people with mental health disabilities do not have an equal opportunity to participate in Defendants' service nor an equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement." *Id.* at 50. This is true even if people with mental health disabilities can access some of the dispatch benefits, like access to firefighters or paramedics, because "[p]laintiffs have adequately alleged that they do not have

equal opportunity to gain the benefits of consistent access to emergency medical service for all health emergencies" and because "[p]laintiffs allege facts suggesting that [d]efendants use criteria or methods of administration that defeat the purpose of the service" by administering dispatch "such that emergency medical services are never primary responders to mental health crises." *Id.* at 51-53. As a result, Judge Beckerman found that "[p]laintiffs have plausibly alleged that people suffering from a mental health crisis do not have meaningful access to a service: consistent access to emergency medical service through the emergency communications system." *Id.* at 53.

As to defendants' arguments that plaintiffs are asking for a new service or a higher standard of care, which is not a permissible claim under the relevant statutes, Judge Beckerman noted that as alleged in the complaint, defendants provide a service to all residents of Washington County that is, in practice, denied to residents with mental health disabilities. Accordingly, she found that plaintiffs do not seek a new service but instead seek relief in the form of access to the existing service. *Id.* at 55. Regarding defendants' argument that meaningful access to the program would fundamentally alter the existing program, Judge Beckerman noted that fundamental alteration is an affirmative defense that is not properly considered at the motion to dismiss stage. *Id.* at 56. She also pointed out that plaintiffs allege that defendants have already created mobile mental health response services that are contractually obligated to respond to mental health crises but only respond to a small portion at this time. *Id.* Similarly, Judge Beckerman found that plaintiffs do not allege medical malpractice or inadequate care, but rather that defendants discriminatorily deny them meaningful access to emergency medical services by choosing not to send any medical services at all, instead sending law enforcement, and that defendants' argument regarding a higher standard of care had no merit. *Id.* at 59-60.

Next, Judge Beckerman concluded that Wesley and DRO's clients and constituents are otherwise qualified individuals, "have plausibly alleged that they have been denied meaningful access to the relevant service," and therefore "have plausibly alleged that Wesley and DRO's clients and constituents are otherwise qualified to receive consistent access to emergency medical service through the emergency communication system." *Id.* at 60-61. She determined that plaintiffs had established but-for causation, as

required by the relevant statutes, by plausibly alleging that, "but for disability, people suffering from a mental health crisis would receive meaningful access to the benefit and that they were denied meaningful access to a benefit solely by reason of disability." *Id.* at 65. Accordingly, she recommended that this Court deny the motions to dismiss for failure to state a claim. *Id.* at 66.

Addressing the Agency's argument that the County, not the Agency, is responsible for the emergency response services available in Washington County, Judge Beckerman noted that plaintiffs allege that the Agency controls how to categorize and route calls to specific agencies, including routing calls to either emergency medical services or law enforcement agencies, and that while the Agency incorporates certain services, like the Washington County Sheriff's Office, into its dispatch system, it has not done so with LifeWorks NW, the mental health services provider contractor. *Id.* at 67. Accordingly, Judge Beckerman found that plaintiffs plausibly alleged that the Agency "has control over providing consistent access to emergency medical service through the emergency communication system" and recommended denying the Agency's motion to dismiss on that basis. *Id.*

As to the motion to strike, Judge Beckerman first noted that a motion to strike is an improper vehicle to raise evidentiary objections, such as to hearsay, and found that the paragraphs at issue are relevant to plaintiffs' claims because they provide context and background information. *Id.* at 70. Accordingly, she recommended denying the motion to strike. *Id.* at 71. Judge Beckerman also recommended denying the motion to make more definite and certain, finding that nothing in the complaint is so indefinite as to make the nature of the claims unclear and that plaintiffs clearly intended to reference both defendants as jointly liable for the dispatch of emergency services. *Id.* at 72-73.

## DISCUSSION

The County and the Agency each timely filed objections. The Court addresses each in the order in which the matter arises in the F&R. The Agency first objects to the factual finding that when a caller reports a mental health crisis, defendants send law enforcement officers to respond. Agency Objs. to F&R ("Agency Objs."), ECF [47], at 5-6. The Agency notes that pursuant to the Call Taking Manual, of which Judge Beckerman took judicial notice, fire and emergency medical services are dispatched alongside

law enforcement if weapons are reported and for behavioral health incidents. *Id.* at 6-7. The Agency also argues that the F&R improperly mischaracterizes the training that law enforcement officers receive. *Id.* at 7. While the Agency does not oppose assuming the truth of certain allegations, such as that law enforcement officers receive "command-and-control mentality" training, it states that nothing in the pleadings supports the factual finding that law enforcement officers are "ill-suited to address emergencies." *Id.* at 8. Finally, the Agency objects to the finding that mental health emergencies do not present a danger to others and that Wesley and other persons named in the complaint did not pose a risk of violence. The Agency notes that Oregon law permits a law enforcement officer to take a person who threatens self-harm into custody, which it argues demonstrates that the law enforcement responses to the persons described in the complaint were lawful and not discriminatory. *Id.* at 8-10. At the motion to dismiss stage, the court must accept as true all well-pleaded allegations of material fact and must construe all allegations in the light most favorable to the plaintiffs. After careful review of the complaint, the Court concludes that the F&R accurately describes and summarizes the allegations.

The Agency then objects to the recommendation that the motion to dismiss for failure to administratively exhaust under the PAIMI Act be denied. The Agency maintains that the complaint does not mention exhaustion and as a result, the complaint should be dismissed. *Id.* at 11-12.

As Judge Beckerman mentions in the F&R, there is little case law addressing the exhaustion requirement of the PAIMI Act. At least one other court has also noted that the exhaustion requirement "is not a strict one" and concluded that "pretrial efforts of [plaintiff] to bring its claims to the attention of defendants and seek to resolve them without litigation were sufficient to satisfy § 10807." *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1173-74 (M.D. Ala. 2016). DRO appears to have done as much in this case, having approached defendants with the results of an investigation and holding conferrals prior to commencing this lawsuit. Regardless, the Court is persuaded that because administrative exhaustion is an affirmative defense appropriately raised at summary judgment in the PLRA context, because the Ninth Circuit has held that this procedure is appropriate in the context of other statutes that require administrative exhaustion, and because the PAIMI Act does not explicitly require a plaintiff to plead exhaustion, dismissal

6

on this basis is not proper here.  *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014).

      Turning to the sufficiency of the claims, the County argues that the F&R misapplied the motion to dismiss standard in concluding that the relevant service was consistent access to emergency medical service through the emergency communications system, arguing that the complaint instead alleges that people with mental health disabilities are denied "'meaningful access' to the emergency response program because police services are dispatched as default first responders rather than emergency qualified mental health services."[1]  County Objs. to F&R ("County Objs."), ECF [46], at 5.  The County also argues that Judge Beckerman erred by finding that a mental health emergency constitutes a medical emergency, wrongly assuming that physical and mental health emergencies require equivalent emergency services.  *Id.* at 6-7.  Defendants maintain that there are clear reasons, codified in legislature, for sending law enforcement officers to respond to a mental health emergency.  *Id.* at 10.

      Upon careful review of the complaint, and noting that no party has objected to Judge Beckerman's determination that the matter of defining the relevant service is a mixed question of law and fact, this Court finds that the relevant service as defined in the F&R is proper.  "The benefit . . . cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled[.]"  *Alexander v. Choate*, 469 U.S. 287, 301 (1985).  Defendants propose an excessively narrow definition that would limit access to emergency medical services.  Defining a mental health emergency as a separate, distinct type of health emergency from a physical health emergency acts to deny people with mental health disabilities of meaningful access to healthcare.  This definition is in line with Oregon Administrative Rule 104-080-0000, cited by the County, which states that the purpose of the 911 program is to "[p]rovide consistent statewide access to police, fire, and emergency medical service through the emergency communication system."  The statute does not differentiate between mental and physical medical services.

      The Agency objects to the finding that plaintiffs sufficiently alleged that Wesley and DRO's

---

[1] The Agency does not object to the F&R's finding that the relevant service at issue is consistent access to emergency medical service through the emergency communications system.  Agency Objs. 11.

clients and constituents are persons with a qualifying mental impairment because people who do not have a mental health disability can also experience a mental health crisis, and a call taker might not be able to discern a mental health disability over the phone. Agency Objs. 19. This Court finds that it is clear from the face of the complaint that Wesley and DRO's clients and constituents are persons with a qualifying mental impairment and are regarded as such, an allegation unchanged by the assertion that some subset of people who do not have a mental health disability might experience a mental health crisis.

Next, the County argues that the F&R wrongly finds that plaintiffs sufficiently plead a claim for denial of meaningful access to a benefit or service. The County again takes issue with Judge Beckerman's definition of the service at issue, arguing that it is too narrowly construed, and with the conclusion that mental health emergencies are a type of health emergency. County Objs. 11-12. The County maintains that plaintiffs do not allege that they are denied emergency physical medical services, but rather the discriminatory use of law enforcement officers, rather than qualified mental health professionals, to respond to mental health emergencies. *Id.* at 12. The Agency joins on this point and argues that the correct characterization of the claim is that defendants are violating the ADA and the Rehabilitation Act by sending law enforcement officers rather than mental health professionals. Agency Objs. 13. They assert that plaintiffs do not seek the same response as that provided for physical health emergencies, but instead want mobile mental health services to be provided that are equal with fire and emergency medical services responses. *Id.* at 15-16. Defendants maintain that the emergency response program is not a single program, but rather a package of separate emergency services. County Objs 12-13.

As discussed above, the Court adopts the relevant service definition from the F&R. Defendants are correct that the relevant statutes do not require distinct programs to provide the same or similar services. However, in this case, the dispatch service provides emergency medical services, including physical and mental health services, to all callers. Because defendants offer this service to everyone, they cannot do so in a discriminatory manner. The Court does not understand the allegation to be that defendants violate the ADA and the Rehabilitation Act by sending law enforcement officers to respond to mental health crises. Rather, plaintiffs allege that persons with mental health disabilities are not

given equal access to emergency medical services. The fact that law enforcement officers, rather than mental health professionals, are dispatched to mental health emergencies means that people with mental health disabilities are denied access to medical care.

The County also objects to the findings that plaintiffs do not seek a new service or a higher standard of care. It maintains that "specialized mental health services are not provided by the program to anyone" and that "there is no current provision for on-site treatment of mental health emergencies by qualified mental health professionals as first responders," such that plaintiffs demand the creation of an entirely new service. County Objs. 14. Relatedly, the County argues that Judge Beckerman wrongfully determined that the fundamental alteration affirmative defense was premature to consider at the motion to dismiss stage. *Id.* at 15-16.

This objection again reaches the relevant service definition. As discussed above, this Court agrees with Judge Beckerman's thoughtful analysis and concludes that the relevant service is the provision of consistent access to emergency medical service through the emergency communication system. In this definition, emergency medical service is not segmented into different kinds of medical care as defendants desire. Plaintiffs seek access to emergency medical services, which defendants provide to all residents of Washington County, rather than the creation of a new service.

The County next argues that the F&R wrongly concludes that plaintiffs established but-for causation, again arguing that the F&R wrongfully conflates mental health emergencies and physical health emergencies and fails to adopt defendants' position that the emergency response program is not a single program, but a package of programs, and that within those programs defendants have justifications for sending law enforcement officers to respond to mental health emergencies. *Id.* at 16-17. Because this Court finds that the relevant service is the provision of consistent access to emergency medical service through the emergency communication system, it rejects defendants' arguments that the F&R has improperly conflated mental and physical health emergencies or that it should have treated the emergency medical response dispatch service as a package of programs. Plaintiffs plead that mental health crises are health emergencies and that they do not generally involve criminal conduct or violence but receive a

different response than other medical emergencies. Accordingly, they have plausibly alleged but-for causation.

The Agency renews its argument that it did not create the mobile mental health services and that it does not have control over emergency medical services in Washington County. It maintains that the County is responsible for dispatch decisions and the emergency response system services more generally. Agency Objs. 21. However, the complaint alleges that the Agency routes calls, that the Agency incorporates some services into its dispatch system, such as the Washington County Sherriff's Office, and that the Agency has the capability to integrate the LifeWorks NW call center into its dispatch system but has not done so. Compl., ECF [1], ¶¶ 83-93.

Finally, the County states that the Court should not follow the recommendation to deny the motion to strike because "[t]he Magistrate Judge denied Defendant's motions to strike vague allegations only" and "did not address Defendant's other motions to strike." County Objs. 3. This is factually untrue, as the F&R makes findings regarding the paragraphs the County moved to strike related to evidentiary objections, relevance, and the provision of context and background information. F&R 70-71. Upon review, the Court agrees with the F&R's analysis of the motion to strike and adopts it.

## CONCLUSION

Accordingly, the Court ADOPTS Judge Beckerman's thorough and well-reasoned Findings and Recommendation, ECF [40].  Defendant Washington County's Motion to Dismiss for Failure to State a Claim and Alternative Motion to Strike and Make More Definite and Certain, ECF [21], is DENIED. Defendant Washington County Consolidated Communications Agency's Motion to Dismiss for Failure to State a Claim, ECF [25], is DENIED.

IT IS SO ORDERED.

DATED this 27th day of March, 2025.

Adrienne Nelson
United States District Judge