IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DISABILITY RIGHTS OREGON, on behalf of its clients and constituents, | Case No. 3:24-cv-00235-SB |
| Plaintiff, | **DISCOVERY ORDER** |
| v. | |
| WASHINGTON COUNTY, a political subdivision of the State of Oregon; and the WASHINGTON COUNTY CONSOLIDATED COMMUNICATIONS AGENCY, an intergovernmental entity in the State of Oregon, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Disability Rights Oregon ("DRO") alleges violations of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 against Defendants Washington County (the "County") and Washington County Consolidated Communications Agency ("WCCCA") (together, "Defendants"). The parties submitted discovery disputes to the Court for resolution pursuant to the Court's required informal discovery dispute resolution protocol. The Court held a telephonic discovery hearing on April 21, 2026, ordered the parties to continue conferral efforts with respect to noticed Rule 30(b)(6) depositions, and ordered

PAGE 1 – DISCOVERY ORDER

supplemental briefing addressing the scope of the relevant "service" at issue and its impact on DRO's pending discovery requests. (ECF No. 90.) DRO and the County filed supplemental briefing on April 28, 2026. (*See* Def. Wash. Cnty.'s Br. ("Def.'s Br."), ECF No. 94; Decl. Karen O'Kasey Supp. Def. Wash. Cnty.'s Br. ("O'Kasey Decl."), ECF No. 95; Pl.'s Br., ECF No. 96.)

In its Findings and Recommendation on Defendants' motions to dismiss, which the assigned district judge at the time adopted (ECF No. 52), the Court held that "the relevant service at issue here is the provision of consistent access to emergency medical service through the emergency communications system when an emergency call is made to 911." (F&R at 40, ECF No. 40; *see also id.* at 53, "Plaintiffs have plausibly alleged that people suffering from a mental health crisis do not have meaningful access to a service: consistent access to emergency medical service through the emergency communications system.") The County now argues that the discovery DRO seeks regarding the County's *non*-emergency mental health services unrelated to 911 emergency responses is not relevant to the service at issue as defined by the Court. (*See* Def.'s Br. at 6-8.) The County explains that WCCCA is responsible for the transfer of emergency 911 calls to the Multnomah County Crisis Line if certain criteria are met but does not dispatch any service providers in connection with those transferred calls. (*Id.* at 6.) The County asks the Court to limit the scope of discovery to 911 emergency responses and not allow discovery relating to the County's mental health programs tied to a different statutory obligation. (*Id.* at 9.)

In contrast, DRO argues that discovery relating to any "emergency medical service" provided through the County's "emergency communications system" following a 911 emergency call is relevant to its claims. (*See* Pl.'s Br. at 2.) In response to the County's position that potential mental health responders such as the Mobile Crisis Team, the County's Crisis Line, and the Multnomah County Behavioral Health Call Center (the "Call Center") (together, the "Mental

PAGE 2 – DISCOVERY ORDER

Health Responders") are not dispatched by WCCCA (Def.'s Br. at 4), DRO points out that the intergovernmental agreement between the County and the Call Center requires the Call Center to respond to "all calls and direct referrals from" WCCCA. (Pl.'s Br. at 5, Ex. D.) In addition, WCCCA's Call Taking Manual instructs WCCCA call takers to refers calls to the County's Crisis Line if someone is experiencing a mental health crisis. (*Id.* at 5.) Thus, WCCCA has the option of dispatching police, fire, or emergency medical services when an emergency call is made to 911 or referring the emergency call to a Mental Health Responder. (*See* Def.'s Br. at 6, acknowledging that WCCCA "is responsible for" "the transfer of 911 calls" "to the Multnomah County Crisis line if certain criteria are met"; O'Kasey Decl. Ex. 2 at 3, the Memorandum of Understanding between the County, WCCCA, and the Call Center provides that "WCCCA will be responsible for referring to [the Call Center] individuals that may benefit from behavioral health intervention/assessment" and "WCCCA agrees to transfer 9-1-1 . . . calls to [the Call Center] for individuals who meet criteria according to WCCCA's standard operating procedures and Mental Health/Suicide Protocol.") DRO correctly points out that these relevant intergovernmental agreements and documents reflect WCCCA's direct referral of emergency calls to Mental Health Responders as part of the County's emergency communications system. (Pl.'s Br. at 5.)

The County argues that WCCCA's transfer of calls is not relevant because WCCCA does not directly dispatch any service providers to those transferred calls (Def.'s Br. at 6), but the Court's definition of the relevant service is not so limited. Whether or not WCCCA directly dispatches a Mental Health Responder following a 911 emergency call, Defendants' triage of the emergency call to an appropriate emergency response is central to DRO's discrimination claims. (*See* Am. Compl. 2, ECF No. 54, "When someone in the County suffers a physical health crisis,

PAGE 3 – DISCOVERY ORDER

such as a heart attack or allergic reaction, they can call Defendants for emergency help and Defendants respond with qualified health professionals, who are specifically trained to assess an emergent health issue, offer stabilization and treatment at the point of contact, and if necessary, transport them to a specialized treatment facility. However, when someone in Washington County experiences a mental health crisis and they call Defendants for emergency help, Defendants respond to their health emergency in the same manner and means they would a crime or a public safety threat—sending tactically-trained and armed law enforcement officers who are more likely to exacerbate, rather than resolve, the mental health crisis they were sent to address."; F&R at 45, "[T]he 911 dispatch is not a service limited to people with physical health emergencies. Instead, anyone suffering from a health emergency, or any other emergency, is eligible. Defendants dispatch agencies to ameliorate the danger.")

For these reasons, the Court stands by its definition of the service at issue in this case (i.e., "the provision of consistent access to emergency medical service through the emergency communications system when an emergency call is made to 911") and finds that discovery relating to WCCCA's referrals of 911 emergency calls to Mental Health Responders (or lack of referrals) is relevant to evaluating whether Defendants are providing equal access to emergency medical services through the County's emergency communications system.

The Court further finds that even if WCCCA has rarely or never referred 911 calls to Mental Health Responders, DRO seeks a permanent injunction ensuring that mental health professionals are the default emergency response for typical mental health emergencies. (Am. Compl. at 58-59.) Defendants have asserted affirmative defenses that DRO's requested remedies are a fundamental alteration of services, an undue burden, a direct threat to mental health workers, and an unreasonable accommodation. (Def. Wash. Cnty.'s Ans. ¶¶ 25-28, ECF No. 59;

PAGE 4 – DISCOVERY ORDER

Def. WCCCA's Ans. ¶¶ 70-74, ECF No. 62 ) At the very least, the discovery DRO seeks relating to Mental Health Responders is relevant to the County's affirmative defenses. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case[.]") (emphasis added). For the same reasons, DRO's discovery requests relating to the County's Ambulance Service Provider(s) are relevant to DRO's claims and Defendants' affirmative defenses because the information will allow for the evaluation and comparison of available responses to emergency calls involving physical and mental health emergencies.

With this guidance on the scope of the relevant service at issue, the parties shall continue to confer regarding DRO's pending discovery requests and agree to deadlines to exchange responsive discovery materials prior to the May 27, 2026, judicial settlement conference.

**IT IS SO ORDERED.**

DATED this 29th day of April, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 5 – DISCOVERY ORDER